**FILED & ENTERED**

**JUN 27 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| In re: | Case No. 2:15-bk-25283-RK |
|---|---|
| ARTURO GONZALEZ, | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION AFTER TRIAL ON CONTESTED MATTER OF THE CHAPTER 7 TRUSTEE'S MOTION OBJECTING TO THE DEBTOR'S CLAIMED HOMESTEAD EXEMPTION IN REAL PROPERTY LOCATED AT 329 HAWAIIAN AVENUE, WILMINGTON, CA** |

Pending before the court is the Motion of Wesley H. Avery, the Chapter 7 Trustee ("Trustee") Objecting to the Debtor's Claimed Homestead Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington, California ("Motion") filed on June 8, 2016. Electronic Case Filing Number ("ECF") 96. Debtor Arturo Gonzalez ("Debtor") filed a written opposition to the Motion on June 24, 2016, ECF 113, and Trustee filed a reply thereto on June 30, 2016, ECF 115.

The Motion initially came on for hearing before the undersigned United States Bankruptcy Judge on July 7, 2016. At this hearing, the court determined that since the Motion raised disputed factual and legal issues, it would treat the Motion as a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure.

On August 17, 2016, the court conducted an evidentiary hearing on this contested matter.  Brett B. Curlee of the Law Offices of Brett Curlee, appeared for Trustee, and Anerio V. Altman, of Lake Forest Bankruptcy Law Office, appeared for Debtor.  Following the evidentiary hearing, the court ordered the parties to file supplemental briefs addressing the issue of whether Debtor is barred by the doctrines of judicial estoppel and/or collateral estoppel from switching from exemptions claimed under California Code of Civil Procedure ("C.C.P.") § 703.140 to exemptions claimed under C.C.P. § 704.010 *et seq.*, and C.C.P. § 704.730 after a final judgment had been entered allowing the previously claimed C.C.P. § 703.140 exemptions.  *Order after Hearing on Motion by the Chapter 7 Trustee Objecting to the Debtor's Claimed Homestead Exemption,* ECF 145, filed and entered on August 23, 2016.  The court ordered Debtor to file a supplemental brief by November 4, 2016, and Trustee to file a supplemental brief by November 18, 2016.  Following the supplemental briefing, the court authorized Debtor to file a reply to Trustee's supplemental brief by November 30, 2016, and thereafter the matter would be deemed under submission.  *Id.*  On November 4, 2016, Debtor through counsel filed his supplemental brief, ECF 156, and filed a request for judicial notice in support thereof, ECF 157.  On November 30, 2016, Trustee filed his supplemental reply brief.  ECF 163.

On November 6, 2016, Debtor filed a substitution of attorney substituting himself for his counsel, ECF 158.  At a status conference in a related adversary proceeding, on November 15, 2016, Debtor requested that the court extend the deadline for Debtor to file his reply brief in response to the Trustee's supplemental brief, and at this hearing, Trustee consented to the extension of time allowing Debtor's reply to be filed by January 31, 2017.  *See Amended Order on Motion by the Chapter 7 Trustee Objecting to the Debtor's Claimed Homestead Exemption in Real Property*, ECF 161, filed and entered on November 18, 2016.   Debtor failed to file the reply brief by this deadline, so the matter was deemed submitted as of February 1, 2017.

2

1  Having considered the moving and opposing papers, the exhibits and declarations

2  attached therein, the evidence admitted at the evidentiary hearing, the oral and written

3  arguments of the parties, the parties' supplemental briefs, and the record before the

4  court, the court hereby sets forth its findings of fact and conclusions of law pursuant to

5  Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal

6  Rules of Civil Procedure in this memorandum decision.

7  **I. FACTS**

8  On October 5, 2015, Debtor filed a voluntary petition for relief under Chapter 7 of

9  the Bankruptcy Code, 11 U.S.C., commencing this bankruptcy case, *In re Arturo*

10  *Gonzalez, dba Long Beach Realty, Inc.; dba South Bay Realty; dba Mindset; aka Art*

11  *Gonzalez; aka Art Gonzalez, Jr.*, No. 2:15-bk-25283-RN.  *Chapter 7 Voluntary Petition*,

12  ECF 1, filed on October 5, 2015, *Trustee's Trial Exhibit 115*.  In Debtor's Schedule A-

13  Real Property, Debtor listed the real property located at 329 Hawaiian Avenue,

14  Wilmington, CA (the "Hawaiian Avenue property") which he owned in fee simple with a

15  value of $275,000.  *Chapter 7 Voluntary Petition, Schedule A-Real Property,* ECF 1 at 11,

16  *Trustee's Trial Exhibit 115.*

17  Debtor's initial Schedule B-Personal Property identified his business, Long Beach

18  Realty, Inc. ("Long Beach Realty") as an estate asset.  *Chapter 7 Voluntary Petition,*

19  *Schedule B-Personal Property,* ECF 1 at 13, *Trustee's Trial Exhibit 115.*   Debtor on his

20  Schedule I-Your Income identified his occupation as a real estate broker and indicated

21  that he has been working in that occupation for five years at his business, Long Beach

22  Realty, Inc.  *Chapter 7 Voluntary Petition, Schedule I-Your Income,* ECF 1 at 28,

23  *Trustee's Trial Exhibit 115.*  Debtor on his Schedule B-Personal Property referred to Long

24  Beach Realty, Inc., as a "California Subchapter 'S' Corporation," having the following

25  assets: a bank account holding $1,100, accounts receivable of $9,500, and business

26  equipment valued at $400.  *Id.*  On his Schedule C-Property Claimed as Exempt, Debtor

27  claimed a C.C.P. § 703.140(b)(5) exemption in the amount of $10,600 representing the

28  3

value of Long Beach Realty's bank account and accounts receivable.  *Chapter 7*

*Voluntary Petition, Schedule C-Property Claimed as Exempt,* ECF 1 at 17, *Trustee's Trial*

*Exhibit 115*.  Debtor further claimed a $400 exemption in the business equipment of Long

Beach Realty pursuant to C.C.P. § 703.140(b)(6).  *Id.*  Debtor did not claim a homestead

exemption in the Hawaiian Avenue property pursuant to C.C.P. § 704 on his first

Schedule C-Property Claimed as Exempt, filed on October 5, 2015, and he chose only

exemptions in personal property assets pursuant to C.C.P. § 703.140 in the amount of

$34,650.  *Id.*

On December 14, 2015, one day before Debtor's first continued meeting of

creditors under 11 U.S.C. § 341(a), Debtor filed first amended bankruptcy schedules,

including an amended Schedule B-Personal Property and an amended Schedule C-

Property Claimed as Exempt, listing the assets of Long Beach Realty, including a bank

account valued at $1,100 and business equipment valued at $400.  *[First] Amended*

*Schedule(s), Schedule B-Personal Property and Schedule C-Property Claimed as*

*Exempt*, ECF 18 at 3 and 7, *Trustee's Trial Exhibit 2*.  On his Amended Schedule B-

Personal Property, Debtor added an item called "Contingent Interests at time of filing" to

the list of assets of Long Beach Realty, which stated a total value of $44,303 referring to

the sales of three different properties, the "W.L. Street Sale", the "Banning Sale" and the

Oce[a]nside Sale".  *[First] Amended Schedule(s), Schedule B-Personal Property,* ECF 18

at 3, *Trustee's Trial Exhibit 2*.  (These "Contingent Interests at time of filing" referred to

real estate commissions on the sales of these three properties that Debtor had earned

prepetition, which were the subject of the litigation involving Trustee's objection to

Debtor's claimed exemption in these commissions under C.C.P. § 703.140 and are

referred to herein as "Commissions".  *Id.; Declaration of Wesley T. Avery attached to the*

*Motion ("Avery Motion Declaration"),* filed on May 13, 2016, ECF 96 at 15 (document

page 14), ¶5, *Trustee's Trial Exhibit 126* (this declaration of Trustee in support of the

Motion was received as his further trial declaration at trial)).  Again, in his First Amended

4

Schedules, filed on December 14, 2015, Debtor did not claim a homestead exemption pursuant to C.C.P. § 704 and only claimed C.C.P. § 703.140 exemptions in personal property assets in the amount of $25,150.  *[First] Amended Schedule(s), Schedule C-Property Claimed as Exempt,* ECF 18 at 7, *Trustee's Trial Exhibit 2.*  However, Debtor did not claim the value of the "Contingent Interests at time of filing" valued at $44,303, as exempt on the Amended Schedule C-Property Claimed as Exempt, though this item was listed as an asset on this amended exemption schedule, the Amended Schedule C.  *Id.*

At the meeting of creditors in this case on December 15, 2015, the day after Debtor filed his Amended Schedules, Trustee questioned Debtor.  *Avery Motion Declaration,* ECF 96 at 15 (document page 14), ¶6, *Trustee's Trial Exhibit 126.*  According to Trustee, at this meeting of creditors, Debtor testified that there were no errors or omissions in his schedules, that he signed his schedules after he read them and that they were true and correct, and Debtor also acknowledged that he had filed the first Amended Schedules one day earlier on December 14, 2015.  *Id.*  According to Trustee, at this meeting of creditors, he discussed Debtor's right to make an election regarding the assets that he could exempt in bankruptcy and advised Debtor, with counsel present, that he had an election to make, that Debtor could either exempt the Commissions or the Hawaiian Avenue property, but not both.  *Id.* at 16 (document page 15), ¶ 6.  At this meeting of creditors, Trustee further advised Debtor that he was only entitled to an exemption of $1,500.00 in the assets of Long Beach Realty and that the rest of the assets of Long Beach Realty were not exempt and belonged to the bankruptcy estate. *Id.*  According to Trustee, Debtor stated on the record that he agreed, Trustee instructed Debtor not to dissipate any of the assets of Long Beach Realty.  *Id.*  Although Trustee did not offer into evidence a transcript of the proceedings at this meeting of creditors, Trustee's account of his colloquy between him and Debtor at the meeting of creditors as recited in the Avery Motion Declaration is credible and is not disputed by Debtor as

5

Debtor raised no objections to Trustee's Declaration or any other of Trustee's trial exhibits.

On January 15, 2016, Debtor's counsel, Anerio V. Altman, informed Trustee's counsel, Brett B. Curlee, that Debtor had received "some" of the Commissions and was using "some" to pay living expenses and was holding the rest to, among other things, pay the mortgage or home loan on the Hawaiian Avenue property for when the case was converted to one under Chapter 13 of the Bankruptcy Code. *Declaration of Brett B. Curlee attached to the Motion ("Curlee Motion Declaration"),* filed on May 13, 2016, ECF 96 at 24 (document page 22), ¶3, *Trustee's Trial Exhibit 126* (this declaration of Trustee's counsel in support of the Motion was received as his further trial declaration at trial). After this telephone conversation, on the same day, Trustee's counsel sent an email to Debtor's counsel demanding that Debtor not spend the Commissions which belonged to the bankruptcy estate and instructing that Debtor not use the Commissions to pay for post-bankruptcy living expenses, and within 90 minutes, Debtor's counsel sent an email to Trustee's counsel, responding that Debtor would not comply with the Trustee's requests in light of Debtor's pending motion to convert the case to one under Chapter 13 of the Bankruptcy Code. *Id.* at 25 (document page 23), ¶¶4-5, and Exhibit 15 attached thereto. According to an analysis by Trustee's accountant of the bank account of Debtor's business, Long Beach Realty, Debtor made disbursements totaling $33,883.52 from this account from the petition date of October 5, 2015 to January 15, 2016, which included $21,178.00 derived from two checks for commissions for the Banning Sale deposited on December 3, 2015 and January 7, 2016. *Declaration of John J. Menchaca attached to the Motion ("Menchaca Motion Declaration"),* filed on May 13, 2016, ECF 96 at 28-29 (document pages 25-26), ¶¶2-4, *Trustee's Trial Exhibit 126* (this declaration of Trustee's accountant in support of the Motion was received as his further trial declaration at trial). In a letter to Trustee's counsel, Mr. Curlee, emailed on February 11, 2016, Debtor's counsel, Mr. Altman, confirmed that Debtor cashed two checks from the

6

1   Banning Sale in the amount of $20,178.00 on December 3, 2015 and January 6, 2016.

2   *Curlee Motion Declaration*, ECF 96 at 24 (document page 22), ¶3 and ECF 96-1 at 6-

3   8,*Trustee's Trial Exhibit 126.*

4          On January 21, 2016, Trustee initiated the adversary action against Debtor entitled

5   *Wesley H. Avery v. Arturo Gonzalez, dba Long Beach Realty, Inc.; dba South Bay Realty;*

6   *dba Mindset; aka Art Gonzalez; aka Gonzalez Jr.*, Adv. No. 2:16-ap-01037-RK

7   ("Adversary Proceeding") in order to seek turnover of these spent Commissions to the

8   bankruptcy estate.   In this Adversary Proceeding for turnover, Trustee filed a motion for

9   temporary restraining order, turnover, and an application for an order shortening time on

10  such motion.  *Motion by the Plaintiff and Chapter 7 Trustee for Turnover of Funds,*

11  *Accounting, Temporary Restraining Order, and Preliminary Injunction* and *Application for*

12  *Order Setting Hearing on Shortened Notice*, Adversary Proceeding ECF 2 and 3, filed on

13  January 22, 2016.  Trustee filed this motion because he learned that Debtor had received

14  the money for the Commissions and had spent the portion of this money belonged to the

15  bankruptcy estate.  *Avery Motion Declaration,* ECF 96 at 17-18 (document pages 16-17),

16  ¶10-13,*Trustee's Trial Exhibit 126.*  The court granted Trustee's request for a temporary

17  restraining order by an order entered on January 25, 2016, and the court set a hearing on

18  Trustee's request for issuance of a preliminary injunction and turnover.  *Order on (1) Ex*

19  *Parte Motion by Chapter 7 Trustee Without Notice for Turnover of Funds, Accounting,*

20  *and Temporary Restraining Order . . . and (2) Setting Hearing*, *Trustee's Trial Exhibit 3*;

21  Adversary Proceeding ECF 5, filed and entered on January 25, 2016.

22         On February 3, 2016, Debtor filed his opposition to Trustee's turnover motion, and

23  stated: "The debtor will turnover nonexempt funds described as 'real estate commissions'

24  less **those amounts retained as an exemption pursuant to the Debtor's**

25  **amendments to be filed on February 4ᵗʰ, 2016** . . . . The Debtor requests a court ruling

26  on whether the 'exempted' funds also need to be turned over to the Trustee pending

27  resolution of the Adversary Proceeding."  *Response to the Trustee's Request for*

28

7

*Injunctive Relief*, Adversary Proceeding ECF 14, filed on February 3, 2016 at 2, *Trustee's Trial Exhibit 4* (emphasis added).  In other words, Debtor was retaining the funds from the Commissions that he was claiming as exempt on his amended schedules to be filed the next day on February 4, 2016, which was under C.C.P. § 703.140.

On February 4, 2016, Debtor further amended his Schedule B-Personal Property and Schedule C-Property Claimed as Exempt, also only claiming exemptions in personal property assets under C.C.P. § 703.140.  *Summary of Amended Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)], Schedule B-Personal Property and Schedule C-Property Claimed as Exempt*, ECF 45 at 3-9, *Trustee's Trial Exhibit 5*.  On these Second Amended Schedules, Debtor claimed as exempt a total of $28,750 in the Commissions from Long Beach Realty, of which $21,125 was claimed exempt pursuant to C.C.P. § 703.140(b)(5) and $7,625 was claimed as exempt pursuant to C.C.P. § 703.140(b)(6), the "tool of the trade" exemption, which funds were deposited in Long Beach Realty's bank account.  *Summary of Amended Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)], Schedule C-Property Claimed as Exempt*, ECF 45 at 8, *Trustee's Trial Exhibit 5*.  On these second amended bankruptcy schedules, Debtor again did not claim a homestead exemption in the Hawaiian Avenue property pursuant to C.C.P. § 704 as he only chose C.C.P. § 703.140 exemptions in personal property assets in the amount of $37,900, including the Commissions.  *Id.* at 8-9.

On February 10, 2016, Trustee filed his reply to this opposition and acknowledged Debtor's right to exempt some Commissions, but objected to any amount in excess of the allowed exemption amount of $20,200 pursuant to C.C.P. § 703.140(b)(5).  *Reply to the Debtor's Response to the Trustee's Request for Injunctive Relief*, Adversary Proceeding ECF 16, filed on February 10, 2016, *Trustee's Trial Exhibit 6.*

On February 17, 2016, the court conducted an evidentiary hearing on Trustee's Motion for Preliminary Injunction and Turnover in the Adversary Proceeding.   The parties, Trustee and Debtor, stated their agreement on the merits of the turnover motion

8

1   on the record that out of the $44,804 in Commissions listed on Debtor's amended

2   bankruptcy schedules, $16,054 was not exempt and should be turned over to Trustee

3   and that $20,200 was exempt, which Debtor need not turn over, and the parties disputed

4   whether Debtor could claim the remaining amount of $8,550 in Long Beach Realty's bank

5   account under a "tool of the trade" exemption pursuant to C.C.P. § 703.140(b)(6), and

6   based on this agreement, on February 19, 2016, the court entered an order granting the

7   preliminary injunction motion in part and denying it in part, which required Debtor to turn

8   over $16,054 to Trustee and to turn over to his counsel, Mr. Altman, to hold the remaining

9   disputed amount of $8,550 pending further order of the court.  *Order on Motion by the*

10  *Plaintiff and Chapter 7 Trustee for Turnover of Brokerage Commissions and for*

11  *Preliminary Injunction Pending Disposition of Litigation*, Adversary Proceeding ECF 20,

12  filed on February 19, 2016, *Trustee's Trial Exhibit 7*.

13         On February 24, 2016, Trustee conducted a second meeting of creditors in this

14  case under 11 U.S.C. § 341(a).  Debtor appeared, was questioned and gave testimony,

15  *Avery Motion Declaration,* ECF 96 at 20 (document page 19), ¶18, *Trustee's Trial Exhibit*

16  *126.*  According to Trustee, at this meeting of creditors, Debtor advised that he had

17  received all of the Commissions, including receivables for the "W.L. Street Sale" of

18  $9,500.00, the "Banning Sale" for $20,178.00 and the "Oceanside Sale" for $14,625.00,

19  and Debtor further testified that after turning over the $16,054.00 in non-exempt

20  Commissions to Trustee and depositing the $8,500.00 with his attorney pursuant to the

21  court's turnover amount to be determined in the litigation of his exemption claim under

22  C.C.P. § 703.140, he had spent the remaining amount of $20,200.00 that he had claimed

23  as exempt under C.C.P. § 703.140 and that the parties had so agreed in that litigation.

24  *Avery Motion Declaration,* ECF 96 at 20-21 (document pages 19-20), ¶¶18-19, *Trustee's*

25  *Trial Exhibit 126.*  This testimony of Trustee recounting the proceedings at the second

26  meeting of creditors is not disputed by Debtor and is otherwise credible.

27

28
                                                    9

1    At a subsequent hearing on March 8, 2016 on Trustee's Objection to Debtor's

2   Exemption in the Commissions in the main bankruptcy case, the parties, Trustee and

3   Debtor, stated their agreement on the merits of the turnover motion on the record that out

4   of the $44,804 in Commissions listed on Debtor's amended bankruptcy schedules,

5   $16,054 was not exempt, $20,200 was exempt, and the only dispute the parties was

6   whether Debtor could claim the remaining amount of $8,550 in Long Beach Realty's bank

7   account under a "tool of the trade" exemption pursuant to C.C.P. § 703.140(b)(6).  The

8   parties also stated their agreement that there were no disputed facts or genuine issues of

9   material fact for trial.  The court then took the matter of Trustee's Objection to Debtor's

10  Exemption in the Commissions under submission.

11    On March 9, 2016, Trustee filed an application to employ a real estate broker to

12  sell the Hawaiian Avenue property.  *Application to Employ Aaron Juarez, as the Chapter*

13  *7 Trustee's Real Estate Agent as of 2/23/2016 to Sell the Real Property Commonly*

14  *Known as 329 Hawaiian Avenue, Wilmington, CA 90744, and Notice of Motion*, ECF 61

15  and 62, *Trustee's Trial Exhibit 17*.  In this application, Trustee represented that there was

16  "no less than $67,339.03 in equity in the Property that [could] be used to benefit the

17  bankruptcy estate after paying secured claims, real estate commissions, and sale costs."

18  *Id.* at ¶ 6.  Trustee served this application to employ the real estate broker on Debtor,

19  who did not object to the application.   *Id.*   On June 1, 2016, the court filed and entered

20  an order approving the application.  ECF 93, filed and entered on June 1, 2016.

21    On May 9, 2016, about two months later, Debtor further amended his bankruptcy

22  schedules, including his Schedule A-Real Property, Schedule B-Personal Property,

23  Schedule C-Property Claimed as Exempt, and Schedule D-Creditors Holding Secured

24  Claims. *Summary of Amended Schedules, Master Mailing List, and/or Statements [LBR*

25  *1007-1(c)]*, ECF 85 and 85-1, *Trustee's Trial Exhibit 11*.   Debtor in his further amended

26  Schedule A-Real Property listed the value of the Hawaiian Avenue property at $320,000

27  with the amount of secured claims of $287,766.98, and in his further amended Schedule

28

10

C-Property Claimed as Exempt, he claimed a homestead exemption of $75,000 pursuant to C.C.P. § 704.730.  *Summary of Amended Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)], Amended Schedule A-Real Property* and *Amended Schedule C-Property Claimed as Exempt,* ECF 85-1 at 1 and 7, *Trustee's Trial Exhibit 11.*  Additionally, Debtor asserted a $7,625 "tool of the trade" exemption in the Commissions valued at $44,303, but under C.C.P. § 704.060(a)(1) rather than under C.C.P. § 703.140(b)(6) as claimed in a prior Schedule C.  *Id.,* ECF 85-1 at 7.  However, Debtor did not claim any exemption for the Commissions.  *Id.*  In this further amended Schedule C, Debtor claimed total exemptions under C.C.P. § 704 in the amount of $85,975, including $75,000 as a homestead exemption in the Hawaiian Avenue property.  *Id.,* ECF 85-1 at 7-8.

According to Debtor, he and his counsel, Mr. Altman, "talked about changing exemptions in or around April 2016" and "[t]he purpose of discussing the changing of the exemptions was related to our legal position regarding proposing a viable Chapter 13 case."  *Trial Declaration of Arturo Gonzales,* ECF 131 at 3, ¶¶14-15, filed on July 22, 2016, *Debtor's Exhibit A.*

On June 8, 2016, Trustee filed his Motion objecting to the Debtor's further amended exemptions, including the exemptions claimed in the Hawaiian Avenue property and the Commissions.  *Motion,* ECF 96, *Trustee's Trial Exhibit 126.*  The court held an initial hearing on the Motion on July 7, 2016, where the court continued the matter in order for Debtor and Trustee to consider whether an evidentiary hearing was necessary.  At the continued hearing on July 15, 2016, Debtor argued that an evidentiary hearing was necessary in order to present evidence regarding Debtor's intent, and the court agreed and scheduled the evidentiary hearing to take testimony and receive other evidence.

On June 16, 2016, Trustee filed a motion to sell the Hawaiian Avenue property.  *Motion by the Chapter 7 Trustee for Order Approving (1) Real Property Sale . . . (2) Overbid Procedure; (3) Real Estate Agent Compensation*, *Trustee's Trial Exhibit 128*,

1  ECF 100.  At the hearing on the sale motion on July 19, 2016, the court approved the

2  sale of the Hawaiian Avenue property with a sales price of $367,000.00, yielding

3  approximately $74,532.86 in net equity to the estate after paying off the existing liens and

4  costs of sale.  *Order after Hearing on Motion by Chapter 7 Trustee to Approve: (1) Real*

5  *Property Sale (329 Hawaiian Avenue, Wilmington, CA 90744) Free and Clear of Liens*

6  *and Interests; (2) Overbid Procedure; Real Estate Agent Compensation; (4) Directing*

7  *Turnover of Real Property; and (5) Distribution of Sale Proceeds*, ECF 135, filed and

8  entered on July 29, 2016.  This order provided that Trustee was authorized to pay the

9  broker's six percent commission directly from escrow, but that Trustee was not to pay any

10  homestead exemption or tax liens pending the resolution of this Motion.  *Id.* at ¶ ¶ 10-11.

11      On July 12, 2016, the court filed and entered its order granting in part and denying

12  in part Trustee's motion objecting to Debtor's claimed exemption in certain personal

13  property assets, namely, the Commissions, with accompanying finding of facts and

14  conclusions of law.   *Order on Chapter 7 Trustee's Motion Objecting to the Debtor's*

15  *Claimed Exemption in Certain Personal Property Assets*, ECF 118;  *Findings of Facts*

16  *and Conclusions of Law re: Motion by the Chapter 7 Trustee Objecting to the Debtor's*

17  *Claimed Exemption for Certain Personal Property Assets*, ECF 119.  In its findings of fact

18  and conclusions of law, the court held that Debtor was entitled to his claimed personal

19  property asset exemption under C.C.P. § 703.140 claimed in Debtor's second amended

20  schedules, ECF 45, but only in the previously agreed and allowed exempt amount of

21  $20,200, and ordered Debtor to turn over the disputed amount of $8,550 from the

22  Commissions that was being held by Debtor's counsel pending.  *Id.*   The court held that

23  the Commissions, although arguably working capital, could not be considered a "tool of

24  the trade" pursuant to C.C.P. § 703.140(b)(6).  *Id.*  Debtor did not appeal the court's final

25  order allowing in part and disallowing in part his claimed exemptions in the Commissions

26  under C.C.P. § 703.140, which was entered pursuant to Federal Rules of Bankruptcy

27

28

1    Procedure 9014 and 7054 and Federal Rule of Civil Procedure 54, making the order a

2    final non-appealable order.

3            According to Trustee, as of July 29, 2016, administrative claims against the

4    bankruptcy estate in this case for professional fees total $131,760.19, including

5    $63,186.76 owed to Trustee's counsel, Mr. Curlee, $26,973.20 owed to Trustee's

6    accountant, Menchaca & Company, LLP, $22,020.00 owed to the real estate agent and

7    the buyer's real estate agent pursuant to the motion to sell real property and the order

8    entered thereon, and $19,580.20 owed to the Trustee, if approved by the court under 11

9    U.S.C. § 326 incurred as a result of the "heavy litigation regarding Debtor's claimed

10   exemptions in the Commissions, Debtor's opposition to the motion to sell the Hawaiian

11   Avenue property, and in the contested matter of Trustee's motion objecting to Debtor's

12   claimed homestead exemption and in other proceedings.  *Trustee's Reply to the Trial*

13   *Declaration of Arturo Gonzales in Support of His Opposition to the Trustee's Objection to*

14   *the Debtor's Exemption Filed as Docket #113, Supplemental Declaration of Wesley H.*

15   *Avery*, ECF 133, filed on July 29, 2016 at 12-13, ¶¶ 7-8.  There is an unsecured

16   nonpriority claim against the bankruptcy estate for $10,345.75, for $142,105.94 in total

17   administrative expenses and nonpriority unsecured claims.  "The Estate will be

18   substantially prejudiced by reducing the funds available to pay creditors from $99,136.86

19   (before the offset is taken into account against the IRS secured claim, Claim No. 3-1 in

20   the Claims Register for $32,926.98 under 11 U.S.C. § 507(a)(1)-(7) and 11 U.S.C. §§

21   724(b)(2) [*In re Bankruptcy Estate of Mark Air, Inc.*, 308 F.3d 1057, 1061-1062 (9th Cir.

22   2002)]) to only $44,804.00 thereby eliminating the Estate's ability to pay even a

23   substantial portion of the administrative claims in full."  *Id*. at ¶ 8.  Also attached to this

24   reply, were the Declarations of John Menchaca and Brett Curlee also confirming the

25   amounts of these expenses.

26

27

28
                                            13

1

## II. DISCUSSION

2      The court holds that the California state law doctrine of equitable estoppel under

3  the facts of this case bars Debtor from changing his election from exemptions under

4  C.C.P. § 703.140 to exemptions under C.C.P. §§ 704.730, 704.020, and 704.060(a)(1).

5  For the following reasons, the court grants Trustee's Motion Objecting to Debtor's

6  Homestead Exemption and disallows Debtor's claimed homestead exemption.

7      ### A.  California State Law Exemptions

8      California is an "opt-out" state meaning that a debtor may only claim exemptions

9  California law allows.  C.C.P. § 703.140(a) and (b); C.C.P. § 704.010 et seq.; *see also In*

10  *re Applebaum*, 422 B.R. 684, 688 (9th Cir. BAP 2009).  "California debtors may choose

11  between two sets of state law exemptions, the regular nonbankruptcy exemptions (Calif.

12  C.C.P. § 704.010 seq.) or the bankruptcy-like set of exemptions (Calif. C.C.P. §

13  703.140(b)).  They may *not* use the exemptions contained in the Bankruptcy Code (11

14  USC § 522)."  1 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶

15  2:601 at 2-84 (2016) (emphasis in original), *citing,* 11 U.S.C. § 522.  "[W]hen a debtor

16  claims a *state-created* exemption, the exemption's scope is determined by state law,

17  which may provide that certain types of debtor misconduct warrant denial of the

18  exemption."  *Law v. Siegel*, 571 U.S. __, 134 S. Ct. 1188, 1196-1197 (2014) (emphasis in

19  original); *accord, In re Lua*, 529 B.R. 766, 772 (Bankr. C.D. Cal. 2015), *affirmed*, 551 B.R.

20  448, 452 (C.D. Cal. 2015), *appeal pending*, No. 15-56814 (9th Cir., notice of appeal filed

21  on November 24, 2015).

22      In this case, Debtor claimed exemptions under C.C.P. § 703.140 in his initial

23  Schedule C-Property Claimed as Exempt filed on October 5, 2015, and in his next two

24  amended Schedule Cs filed on December 15, 2015 and February 4, 2016.  It was not

25  until after Debtor litigated to trial the matter of Trustee's objection to his claim of

26  exemption in the Commissions pursuant to C.C.P. § 703.140(b)(6) for which there is now

27  a final non-appealable order deciding that Debtor was not entitled to the "tool of the trade"

28

14

1  exemption under that provision did he amend and file a further amended Schedule C-

2  Property Claimed as Exempt on May 9, 2016 claiming instead different exemptions,

3  including a homestead exemption under C.C.P. § 704.730.  Thus, Debtor consistently

4  took the position as reflected in his bankruptcy schedules and in litigation proceedings

5  before this court that he was claiming exemptions only in personal property assets,

6  namely, the Long Beach real estate commissions, pursuant to C.C.P. § 703.140 for

7  approximately eight months before he amended his schedules to choose different

8  exemptions under C.C.P. § 704, including a homestead exemption for the first time.

9  Furthermore, Debtor increased his total amount of claimed exemption by $48,075 from

10  his second amended Schedule C-Property Claimed as Exempt to his third amended

11  Schedule C-Property Claimed as Exempt.

12       Debtor argues that he "has a right to amend his exemptions from one exemption

13  scheme to the other as long as the case remains open."  *Debtor's Brief per Court Order*

14  *#145*, ECF 156 at 5, filed on November 4, 2016.  Federal Rule of Bankruptcy Procedure

15  1009 provides that debtors may amend their bankruptcy schedules "as a matter of course

16  at any time before the case is closed."  "But amending Schedule C to *claim* an exemption

17  is separate from the question whether the exemption is *allowable*; creditors and parties in

18  interest may object to exemptions added by amendment."  2 March, Ahart and Shapiro,

19  *California Practice Guide: Bankruptcy*, ¶ 7:223 at 7-28 (emphasis in original) (referring

20  readers to ¶ 7:255, *infra,* which cites to Federal Rule of Bankruptcy Procedure

21  4003(b)(1)).  While Debtor may amend his bankruptcy schedules, simply amending the

22  schedules does not necessarily mean that the amendments are allowable.  *Id.; see also,*

23  *In re Lua, supra.*

24       Debtor argues that although there is a final non-appealable order determining

25  Debtor's exemptions under C.C.P. § 703.140, "[n]o issues were reviewed or resolved

26  concerning the Debtor's future ability to amend his exemptions, or whether he could or

27  could not exempt value in his House."  *Debtor's Brief per Court Order,* ECF 156 at 9, filed

28

1  and entered on November 4, 2016.  This argument misses the point of equitable

2  estoppel.  Debtor repeatedly asserted his exemption rights under C.C.P. § 703.140 over

3  an eight month period of time, inducing Trustee in reliance to incur administrative

4  expenses to sell the Hawaiian Avenue property to realize the value of the net equity for

5  the benefit of the estate's creditors as well as litigating to judgment Debtor's claimed

6  exemptions in personal property assets under that provision.  It is unreasonable for

7  Debtor to have claimed a set of exemptions under C.C.P. § 703, inducing Trustee to have

8  litigated to judgment this claimed set of exemptions, only to have Debtor switch his claim

9  of exemptions after not getting the result he wanted in this litigation of his C.C.P. § 703

10  claim and then claiming a different set of exemptions under C.C.P. § 704.

11       Trustee would not have had to incur considerable administrative expense in

12  litigating Debtor's exemption claims under C.C.P. § 703 if Debtor had chosen the C.C.P.

13  704 exemption claims in the first instance.  Trustee would not have sold the Hawaiian

14  Avenue property if Debtor had claimed a homestead exemption under C.C.P. § 704

15  because there would have been no realizable net equity for the estate to pay creditors

16  accounting for Debtor's homestead exemption.

17       Because Debtor had not claimed any homestead exemption under his various

18  amended bankruptcy schedules at the time that Trustee filed the application to employ

19  the real estate broker and the motion to sell the Hawaiian Avenue property, Trustee

20  believed that the sale would bring in net sales proceeds of around $67,000 to pay

21  creditors, which is $8,000 less than Debtor's $75,000 homestead exemption.  *See,*

22  *Declaration of Aaron Juarez,* ECF 61 at ¶6, filed on March 9, 2016, *Trustee's Trial Exhibit*

23  *17.*  The evidence shows that Trustee told Debtor that he could either keep through

24  exemptions the Commissions or the Hawaiian Avenue property, but not both, and Debtor

25  consciously and conspicuously chose the former, the Commissions, as indicated by

26  Trustee's testimony regarding the first meeting of creditors and Debtor's pleadings

27  opposing Trustee's turnover motion for the Commissions and Debtor's continued

28

1  possession of the Commissions of $20,200 he previously claimed as exempt under

2  C.C.P. § 703.140, which exceeds the amount of $7,625 of the Commissions which he

3  now claims as exempt under C.C.P. § 704.060(a)(1).

4  **B. Equitable Estoppel**

5  Under California law, five elements must be present for the doctrine of equitable

6  estoppel to apply:

7  (a)  a representation or concealment of material facts;
   (b)  made with knowledge, actual or virtual, of the facts;
8  (c)  to a party ignorant, actually and permissibly, of the truth;
   (d)  with the intention, actual or virtual, that the ignorant party act on it; and
9  (e)  that party was induced to act on it.

10

11 *Simmons v. Ghaderi*, 44 Cal.4th 570, 584 (2008), *citing* 13 Witkin, *Summary of California*

12 *Law, Equity*, § 191 at 527-528 (10th ed. 2005); *accord, In re Lua*, 551 B.R. at 453, *citing,*

13 *Simmons v. Ghaderi,* 44 Cal.4th at 584.  Trustee as the party asserting equitable estoppel

14 has the burden of proof.  *Busching v. Superior Court*, 12 Cal.3d 44, 53 (1974) ("Unless

15 the record affirmatively discloses the existence of a sufficient excuse or the basis of an

16 estoppel, the burden rests on plaintiff to prove it.")(citations omitted).  The court finds

17 Trustee has met the burden of proof by a preponderance of the evidence that equitable

18 estoppel applies to this case.

19 **1.  Representation or Concealment of Material Fact**

20 The party against whom equitable estoppel is sought must have represented or

21 concealed a material fact.  *Simmons v. Ghaderi*, 44 Cal.4th at 584; *see also, In re Lua*,

22 551 B.R. at 453 (citation omitted).  For this purpose, the court finds that  Debtor's

23 bankruptcy schedules filed on October 5, 2015, December 14, 2015, and February 4,

24 2016 claiming exemptions under C.C.P. § 703.140(b), were representations of material

25 fact made by him.  The court finds that each of these schedules constitutes a

26 representation by Debtor to the court, Trustee and creditors that he had elected personal

27

28

17

property exemptions pursuant to C.C.P. § 703.010 *et seq*.  *See In re Lua*, 551 B.R. at 453.

Additionally, the court finds that Debtor's specific representations made to Trustee in the form of statements made under oath directly from Debtor to Trustee at the meeting of creditors, constitute representations to the Trustee for equitable estoppel purposes. For example, at Debtor's December 15, 2015 meeting of creditors, Debtor testified that there were no errors or omissions in his schedules.  Having acknowledged that he had filed the first amended schedules one day earlier, which claimed only personal property exemptions under C.C.P. § 703.140, Debtor represented to Trustee that his intentions were truly and accurately reflected in the first amended schedules to elect personal property exemptions pursuant to C.C.P. § 703.140.  In seeking court approval of the employment applications of counsel and a real estate broker in January and March 2016, Trustee also communicated to Debtor that if Debtor claimed exemptions in the Commissions rather than a homestead exemption, Trustee intended to liquidate the real property for the benefit of the bankruptcy estate and creditors.

Similarly, at the Debtor's second meeting of creditors held on February 24, 2016, Debtor testified that he had received all of the Commissions, and spent the remaining $20,200 that he had claimed as exempt under C.C.P. § 703.140.  The fact that Debtor told Trustee that his schedules were still true and accurate in addition to the fact that Debtor spent the money he claimed as exempt, represented to the Trustee that Debtor was satisfied with his election of exemptions and had no intention of switching his election from personal property exemptions under C.C.P. § 703.140 to the other statutory set of exemptions under C.C.P. § 704.  Thus, Debtor's representations at the meetings of creditors on December 15, 2015 and February 24, 2016 represented to Trustee that Debtor was only electing personal property exemptions pursuant to C.C.P § 703.140 and no homestead exemption in the Hawaiian Avenue property pursuant to C.C.P. § 704.

The court also finds that Debtor's arguments advanced in his written pleadings filed in this case constitute representations to the Trustee for equitable estoppel purposes.  On February 23, 2016, Debtor filed his Opposition to the Trustee's Motion Objecting to the Debtor's Exemption in Personal Property, arguing that it was Debtor's right to claim the cash in Long Beach Realty's bank account as a "tool of the trade" pursuant to C.C.P. § 703.140(b)(6).  *See Opposition to the Trustee's Motion Objecting to the Debtor's Exemption in Personal Property*, ECF 57, filed and entered on February 23, 2016, *Trustee's Trial Exhibit 121*, at 3-4.  Specifically, Debtor argued that he "should be given the benefit of the doubt in any question as to whether an exemption is legitimately chosen."  *Id.* at page 5.  This opposition of Debtor strongly asserts his elections of personal property exemptions under C.C.P. § 703.140.  The court held a hearing on Trustee's Motion Objecting to the Debtor's Exemption in Personal Property on March 8, 2016.  Debtor maintained this position throughout that hearing and beyond, allowing the court to take the matter under submission and eventually issue its findings of facts and conclusions of law deciding the issue.  It was not until May 9, 2016, did Debtor file his further amended Schedule C-Property Claimed as Exempt claiming exemptions under C.C.P. §§ 704.730 and 704.060(a)(1).  Thus, Debtor's arguments in the case represented to Trustee that Debtor's choice was personal property exemptions pursuant to C.C.P. § 703.140 rather than a homestead exemption in his real property pursuant to C.C.P. § 704.

The court finds that Debtor's representations were material.  First, Trustee incurred administrative expenses of $131,760.19 in reliance of Debtor's repeated representations that he was entitled to C.C.P. § 703.140 personal property exemptions. *Supplemental Declaration of Wesley H. Avery* attached as exhibit to Trustee's *Reply to the Trial Declaration of Arturo Gonzalez in Support of His Opposition to the Trustee's Objection to the Debtor's Exemption Filed as Docket # 113*, ECF 133, filed and entered on July 29, 2016, at 12-13 ¶¶ 7-8.  These administrative expenses consist of Trustee's

19

costs of litigation in attorneys' fees incurred by him and the bankruptcy estate objecting to

Debtor's election of personal property exemptions in excess of the allowable amount

under C.C.P. § 703.140, the Adversary Proceeding commenced to recover the

Commissions that Debtor received and not entitled to claim as exempt, and for the sale of

the Hawaiian Avenue property.

Second, there is a final non-appealable order from this court holding that Debtor

was entitled to C.C.P. § 703.140 personal property exemptions.  Although the court

entered its decision and order after Debtor filed his third amended schedules to change

Debtor's election from C.C.P. § 703 to § 704 exemptions, the court made specific findings

for the order to which Debtor did not appeal.  As previously mentioned, the court

determined in its decision and order that Debtor was entitled to exemptions of $400 under

C.C.P. § 703.140(b)(6) for Long Beach Realty's business equipment, and $20,200 under

C.C.P. § 703.140(b)(5) in Commissions.  In its order, the court required Debtor to turn

over to the Trustee $8,550 in disputed Commissions that the attorney for Debtor was

holding pursuant to the Turnover Order in the Adversary Proceeding.  *Order on Chapter 7*

*Trustee's Motion Objecting to the Debtor's Claimed Exemption in Certain Personal*

*Property*, ECF 118, filed and entered on July 12, 2016.

Third, Debtor's amended homestead exemption, if allowed, would eliminate the

amount of equity available to pay administrative expenses and claims of creditors of the

estate.  *See In re Lua*, 529 B.R. at 776.  If Debtor's $75,000 homestead exemption is

allowed, there would be no net equity (around $66,804) that Trustee received from the

sale of the Hawaiian Avenue property.  As a result, Trustee would be forced to absorb

almost all of the administrative expenses incurred in the case, and there would be no

dividend for creditors.  *Supplemental Declaration of Wesley H. Avery* attached as exhibit

to Trustee's *Reply to the Trial Declaration of Arturo Gonzalez in Support of His*

*Opposition to the Trustee's Objection to the Debtor's Exemption Filed as Docket # 113*,

ECF 133, filed and entered on July 29, 2016, at page 13 ¶ 8 ("The Estate will be

substantially prejudiced by reducing the funds available to pay creditors from $99,136.86 . . . to only $44,804.00 thereby eliminating the Estate's ability to pay even a substantial portion of the administrative claims in full.").

Fourth, the representations were material because Debtor did not file the third amended schedule until May 2016 after Debtor received and spent his C.C.P. § 703.140 exemptions and after Trustee was induced to sell the Hawaiian Avenue property to realize value for the estate and creditors by retaining counsel and a real estate broker. The timing of the representations is material because Debtor's exemption elections determined how Trustee administered the estate in this case.  Had Debtor not elected to exempt the Commissions, not spent those Commissions, and not engaged in litigation regarding his C.C.P. § 703 exemptions, Trustee would not have been induced to sell the Hawaiian Avenue property and incur administrative expenses in litigating these exemptions and selling the real property.  Trustee stated that:

> I relied on the Debtor's representations in pleadings and declaration that he filed with the Court that he was exempting the Commissions . . . .  I had no notice that the Debtor intended to switch exemptions to claim a homestead exemption until after I had arranged for the sale of Hawaiian [Avenue], when the Debtor filed the  amended schedules on May 9, 2016.  If the Debtor is allowed to claim an exception in Hawaiian [Avenue] now, it will substantially and adversely affect and    damage the Estate.  The Estate will not be able to pay its creditors.

*Supplemental Declaration of Wesley H. Avery,* attached as exhibit to *Trustee's Reply to the Trial Declaration of Arturo Gonzalez in Support of His Opposition to the Trustee's Objection to the Debtor's Exemption Filed as Docket # 113*, ECF 133, filed and entered on July 29, 2016, at 12, ¶6.

Accordingly, the court determines that Trustee has proven by a preponderance of the evidence that the first element of equitable estoppel, representation or concealment of material fact, is met.

### 2. Made with Knowledge of the Materiality of Debtor's Acts

The party against whom estoppel is sought must have had knowledge of the facts. *Simmons v. Ghaderi*, 44 Cal.4[th] at 584; *accord, In re Lua*, 551 B.R. at 453.

In this case, Trustee testified that he informed Debtor at the meeting of creditors on December 15, 2015 that he (Debtor) was only entitled to choose exemptions under C.C.P. § 703 or § 704, but not both. *Avery Motion Declaration,* ECF 96 at 14-15, ¶6, *Trustee's Trial Exhibit 126.* The court finds this testimony to be credible, and is not disputed by Debtor. Thus, Debtor was aware of his exemption rights and was being represented by counsel throughout the most of the relevant proceedings pertaining to his claim of exemptions. This indicates that Debtor's prior personal property exemption elections under C.C.P. § 703 were made with knowledge of the facts and with the intent to keep his Commissions and other Long Beach Realty assets through these exemption elections. Debtor stated to his attorney through email communications on January 29, 2016 after the initial meeting of creditors, "By the way, I am curious, when I went to the hearing the Trustee said, let's make a deal because I couldn't keep both the home and the money from the corporation. My understanding was that I had to let go of 1." *Email Communications attached to Debtor's Trial Exhibit A, Debtor's Trial Sub-Exhibit A.* Considering the circumstances, the court determines that Debtor was talking about his choice of exemptions as to the Hawaiian Avenue property and the Commissions that he had claimed as exempt the day before the meeting of creditors in December 2015. This statement shows that Debtor was aware that Debtor had to make a choice between exempting the Commissions or the Hawaiian Avenue property, thus, corroborating Trustee's testimony recounting that he had informed Debtor of this choice of exemptions in the December 2015 meeting of creditors. Thus, Debtor was aware of the materiality of the representations he made by electing personal property exemptions pursuant to C.C.P. § 703.140 and electing not to claim a homestead exemption under C.C.P. § 704.

1        Furthermore, Debtor testified at the second meeting of creditors on February 24,

2    2016 that he had received the Commissions and spent funds of $20,200 claimed as

3    exempt pursuant to C.C.P. § 703.140.  *Avery Motion Declaration,* ECF 96 at 21

4    (document page 20), ¶ 19, *Trustee's Trial Exhibit 126.*   At this time, Debtor chose not to

5    claim a homestead exemption or any other exemption pursuant to C.C.P. § 704.  Rather,

6    Debtor knowingly and strategically elected an exemption pursuant to C.C.P. § 703 in

7    order to keep the Commissions and Long Beach Realty assets, namely because Debtor

8    had already spent the money from the Commissions, or had planned to, prior to filing his

9    first amended schedules, Debtor's First Amended Schedule B-Personal Property and

10    Amended Schedule C-Property Claimed as Exempt, when he first disclosed the

11    Commissions on his bankruptcy documents on December 14, 2015 and being examined

12    by Trustee and creditors at the first meeting of creditors on December 15, 2015.

13        Accordingly, the court determines that the Trustee has proven by a preponderance

14    of the evidence that the second element of equitable estoppel, made with knowledge of

15    the facts, is met.

16                **3.  To a Party Ignorant of the Truth**

17        To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

18    Trustee was "ignorant, actually and permissibly, of the truth."  *Simmons v. Ghaderi*, 44

19    Cal.4[th] at 584; *accord, In re Lua*, 551 B.R. at 454.  In this case, Trustee filed an objection

20    to Debtor's claimed exemptions and also filed an adversary proceeding against Debtor

21    based on Debtor's personal property exemptions under C.C.P. § 703.  The evidence

22    indicates that at no time before the filing of Debtor's third amended schedules in May

23    2016 was Trustee made aware of Debtor's intention to claim a homestead exemption

24    under C.C.P. § 704.  *Avery Motion Declaration,* ECF 96 at 20-21, ¶¶22-24, *Trustee's Trial*

25    *Exhibit 126.*   The court finds this testimony to be credible and corroborated by Debtor's

26    repeated objections to Trustee's objections to Debtor's exemption elections under C.C.P.

27    § 703.140.

28

1    Trustee was ignorant of Debtor's intent to change his elections to claim a

2  homestead exemption because Debtor repeatedly asserted his intent to claim personal

3  property exemptions pursuant to C.C.P. § 703.140 on his bankruptcy schedules, in his

4  statements at meetings of creditors and in litigation in this case.  *Avery Motion*

5  *Declaration,* ECF 96 at 15-21 (document pages 14-20), ¶¶5-19, *Trustee's Trial Exhibit*

6  *126.*  For example, Debtor argued that he had the right to claim an additional personal

7  property exemption in $8,550 of Commissions under C.C.P. § 703.140(b)(6) because he

8  needed cash to run his business.  *Opposition to Trustee's Motion Objecting to the*

9  *Debtor's Exemption in Personal Property Exemption*, ECF 57, filed on February 23, 2016,

10  *Trustee's Trial Exhibit 12.*  Debtor further argued in this document referring to this

11  personal property exemption that the court should not disturb his choice of exemptions

12  because "Debtor should be given the benefit of the doubt in any question as to whether

13  an exemption is legitimately chose[n]."  *Id.* at 5, *Trustee's Trial Exhibit 12.*

14    Debtor never claimed any exemption under C.C.P. § 704 or a homestead

15  exemption until Trustee filed a motion to employ a real estate agent to sell the Hawaiian

16  Avenue property, which was filed on May 9, 2016 (eight months after Debtor filed his

17  bankruptcy petition).  As evidenced by the litigation proceedings, including numerous

18  hearings, regarding Debtor's election of personal property exemptions under C.C.P. §

19  703, Trustee's objections thereto, and Trustee's Adversary Proceeding for turnover of the

20  Commissions, Debtor was aware that he had elected personal property exemptions

21  under C.C.P. § 703 rather than a homestead exemption under C.C.P. § 704.  As the

22  evidence indicates, Debtor knew that he could not elect both sets of exemptions, and

23  Debtor failed to give Trustee any reason to anticipate or believe that Debtor intended to

24  retract his election of the personal property exemptions under C.C.P. § 703.140.

25    Accordingly, the court determines that Trustee has proven by a preponderance of

26  the evidence that the third element of equitable estoppel, to a party ignorant of the truth,

27  is met.

28
24

### 4.  With the Intention that the Ignorant Party Act on it

To invoke equitable estoppel against Debtor, Trustee must also demonstrate that Debtor made a representation "with the intention, actual or virtual, that the ignorant party act on it." *Simmons v. Ghaderi*, 44 Cal.4th at 584; *accord, In re Lua*, 551 B.R. at 454. Although equitable estoppel requires a finding of intent, Trustee need not prove that the debtor intended to deceive him to create an equitable estoppel since:

> To create an equitable estoppel, it is enough if the party has been induced to refrain from using such  means  or  taking  such action  as  lay  in  his power, by which he might  have  retrieved his  position and saved himself from loss . . . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as defense.

*Lantzy v. Centex Homes*, 31 Cal.4th 363, 384 (2003), *quoting, Vu v. Prudential Property & Casualty Insurance Company*, 26 Cal.4th 1142, 1152-1153 (2001); *accord, In re Lua*, 529 B.R. at 777.  An "estoppel may arise although there was no designed fraud on the part of the person sought to be estopped."  *Lantzy v. Centex Homes*, 31 Cal.4th at 384, *quoting Vu v. Prudential Property & Casualty Insurance Company*, 26 Cal.4th at 1152; *see also, Crestline Mobile Homes Manufacturing Co. v. Pacific Finance Corp.*, 54 Cal.2d 773, 778-779 (1960) ("Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel.").  Silence may be used as evidence of fraudulent intent.  *In re Lua*, 529 B.R. at 777, *citing R.D. Reeder Lathing Company, Inc. v. Allen*, 66 Cal.2d 373, 378 (1967).

The preponderance of the evidence shows that Debtor intended to induce Trustee to rely on his personal property exemption elections under C.C.P. § 703 when he filed three different Schedule Cs electing C.C.P. § 703 exemptions on October 5, 2015, December 14, 2015 and February 4, 2016.  The preponderance of the evidence also shows that Debtor intended that the Trustee act on these representations made by opposing and litigating his claim that he was entitled to the remaining Commissions in dispute under the "tool of the trade exemption" of C.C.P. § 703.140(b)(6).  The court finds

1  that Debtor also intended Trustee act on these representations because Debtor had

2  already spent the amount of $20,200 in the Commissions that he received and claimed

3  were exempt under C.C.P. § 703.140 and induced Trustee to agree that these funds were

4  so exempt.  This evidence shows that Debtor intended that Trustee act on his

5  representations that he was claiming personal property exemptions under C.C.P. §

6  703.140 to concede the Debtor's right to an exemption in the value of the Commissions of

7  $20,200 in value and to have to object to the remaining amount not exempt, and to sell

8  the Hawaiian Avenue property for the benefit of the estate.

9         It was inequitable for Debtor to repeatedly claim personal property exemptions

10  under C.C.P. § 703.140, inducing Trustee to litigate them to judgment, and then for

11  Debtor claim a different set of exemptions under C.C.P. § 704 for a homestead

12  exemption, after litigating the first set of exemptions, and not getting the results he

13  wanted, and resulting in incurring of administrative expenses by Trustee and in

14  administrative insolvency of the estate since there would be insufficient assets to cover

15  such expenses.

16         Accordingly, the court determines that Trustee has proven by a preponderance of

17  the evidence that the fourth element of equitable estoppel, with the intention that the

18  ignorant party act on it, is met.

19              **5.  That Party Was Induced to Act on it**

20         To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

21  Debtor made a representation which "that party [i.e., the ignorant or other party] was

22  inducted to act on it." *Simmons v. Ghaderi*, 44 Cal.4[th] at 584; *accord, In re Lua*, 551 B.R.

23  at 454.  This element of reliance requires that Trustee change his position in reliance on

24  something said or done by Debtor, resulting in detriment or prejudice to Trustee.  *In re*

25  *Lua*, 551 B.R. at 455, *citing, State Compensation Insurance Fund v. Workers'*

26  *Compensation Appeals Board*, 40 Cal.3d 5, 15 (1985).

27

28                                    26

1    As previously discussed, Trustee was unaware that Debtor would amend his

2    schedules to elect exemptions under a different set of exemptions and claim a

3    homestead exemption.  Debtor was aware of Trustee's intent to sell the Hawaiian Avenue

4    property from January 15, 2016 when Trustee filed his application to employ the Law

5    Offices of Brett Curlee for the specific purpose of evaluating the equity and value of the

6    Hawaiian Avenue property.  *Application of the Chapter 7 Trustee to Employ the Law*

7    *Offices of Brett Curlee as of 1/11/2016 as Counsel to the Chapter 7 Trustee,* ECF 29 at 3,

8    ¶6, *Trustee's Trial Exhibit 18*.  Trustee specifically stated in the Application that "Trustee

9    is informed and believes that there may be equity available in the Wilmington Property

10   [i.e., the Hawaiian Avenue property] that he can administer. . . . The Trustee therefore

11   intends to administer the real property of the Debtor, including but not limited to,

12   Wilmington and the assets of Long Beach Realty, Inc."  *Id.*  Debtor did not file an

13   objection to Trustee's application to employ counsel for these purposes.

14       Debtor repeatedly elected to exempt the Commissions under the personal

15   property exemptions under C.C.P. § 703.140 and concededly spent some of this money

16   based on these exemptions.  Relying on Debtor's representations claiming personal

17   property exemptions and actions spending money only exempt under the personal

18   property exemptions, Trustee was induced to believe that he could administer the

19   bankruptcy estate by selling the Hawaiian Avenue property, not claimed as exempt,

20   which would bring into the estate around $66,000 in net equity ($9,000 less than Debtor's

21   claimed homestead exemption).  Trustee would not have incurred administrative expense

22   in selling the Hawaiian Avenue property if Debtor had initially claimed a homestead

23   exemption because the homestead exemption would have wiped out any equity for the

24   estate (and would have administered the Commissions instead).  Thus, Trustee relied on

25   Debtor's repeated representations that he was electing personal property exemptions

26   under C.C.P. § 703.140, inducing him to incur significant administrative expenses,

27

28

1   including $91,000 for litigation of Debtor's C.C.P. § 703 exemptions and turnover of the

2   Commissions and for the sale of the Hawaiian Avenue property.

3         Debtor's argument in opposition to application of equitable estoppel here is that

4   the change in election of exemptions was part of a good faith legal strategy in support of

5   his motion to convert the case to one under Chapter 13 of the Bankruptcy Code.

6   *Debtor's Opposition to the Objection of the Chapter 7 Trustee to the Debtor's Claimed*

7   *Homestead Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington,*

8   *CA*, ECF 113, filed on June 24, 2016, at 4-8.  Debtor argues that as to the second and

9   third equitable estoppel factors of knowledge of the fact that Trustee had the superior

10  knowledge because Trustee conducted the sale of the property "with the knowledge that

11  the Debtor's Motion to Convert was still in play."  *Id.* at 5.  Debtor further argues: "If

12  approved, the Motion to Convert would supersede and obviate the sale" and "The

13  Trustee knew this was in play and should not have relied upon his own prognostication

14  as to the results of the Motion to Convert."  *Id.*   This argument lacks merit since the

15  evidence indicates as discussed above, Trustee was induced to litigate Debtor's personal

16  property exemption claims under C.C.P. § 703.140 regardless of the pending motion to

17  convert, which Trustee was also forced to litigate at great expense to the estate and

18  which lacked merit since Debtor did not offer admissible and credible evidence of

19  eligibility to convert to Chapter 13 based on regular income.   *See Memorandum Decision*

20  *and Order Denying Debtor's Motion to Convert Case,* ECF 127, filed and entered on July

21  19, 2016.  Until Debtor's motion to convert was litigated and determined by the court, the

22  parties asserted their respective positions on Debtor's claimed exemptions as described

23  herein, which was irrespective of the outcome of the motion to convert and does not

24  change the court's analysis of Trustee's equitable estoppel claim.

25        Accordingly, the court determines that Trustee has proven by a preponderance of

26  the evidence that the fifth element of equitable estoppel, that party was induced to act on

27  it, is met.

28

### III. CONCLUSION

Because the court finds that all five elements of equitable estoppel are shown on this evidentiary record as discussed above, the court hereby grants Trustee's Motion objecting to Debtor's claimed homestead exemption of $75,000.00 in the real property located at 329 Hawaiian Avenue, Wilmington, California claimed on his amended bankruptcy schedules filed on May 9, 2016 pursuant to C.C.P. § 704.730.  A separate order is being filed and entered concurrently.

As to Debtor's claim of exemption in the sales commissions in the amount of $7,625.00 set forth on his amended bankruptcy schedules filed on May 9, 2016 pursuant to C.C.P. § 704.060(a)(1), the court will issue a separate memorandum decision and order thereon to follow.

IT IS SO ORDERED.

###

Date: June 27, 2017

_____

Robert Kwan
United States Bankruptcy Judge