FILED & ENTERED

MAR 27 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:15-bk-25283-RK |
| ARTURO GONZALEZ, | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION AMENDING PRIOR DECISIONS AFTER TRIAL ON CONTESTED MATTER OF THE CHAPTER 7 TRUSTEE'S MOTION OBJECTING TO THE DEBTOR'S CLAIMED HOMESTEAD EXEMPTION IN REAL PROPERTY LOCATED AT 329 HAWAIIAN AVENUE, WILMINGTON, CA AND RULING ON CONTESTED MATTER OF CHAPTER 7 TRUSTEE'S MOTION OBJECTING TO DEBTOR'S AMENDED CLAIMED HOMESTEAD EXEMPTION ON SAME PROPERTY AND TOOLS OF THE TRADE EXEMPTION** |

Pending before the court are: (1) the Motion of Wesley H. Avery, the Chapter 7

Trustee ("Trustee") Objecting to the Debtor's Claimed Homestead Exemption in Real

Property Located at 329 Hawaiian Avenue, Wilmington, California ("Original Objection

Motion"), Electronic Case Filing Number ("ECF") 96, filed on June 8, 2016; and

(2) Trustee's Motion Objecting to Debtor's Amended Schedules filed December 12, 2017

to Claim a Homestead Exemption in Real Property at 329 Hawaiian Avenue, Wilmington,

California, and to Claim a Tools of the Trade Exemption in Commissions ("Amended

Objection Motion"), ECF 241, filed on January 8, 2018.

Debtor Arturo Gonzalez ("Debtor") filed a written opposition to the Original

Objection Motion on June 24, 2016, ECF 113, and Trustee filed a reply thereto on June

30, 2016, ECF 115.  The Original Objection Motion initially came on for hearing before

the undersigned United States Bankruptcy Judge on July 7, 2016.  At that hearing, the

court determined that since the Original Objection Motion raised disputed factual and

legal issues, it would treat it as a contested matter under Rule 9014 of the Federal Rules

of Bankruptcy Procedure.  On August 17, 2016, the court conducted an evidentiary

hearing on this contested matter.  Brett B. Curlee, of the Law Offices of Brett Curlee,

appeared for Trustee, and Anerio V. Altman, of Lake Forest Bankruptcy Law Office,

appeared for Debtor.  Following the evidentiary hearing, the court ordered the parties to

file supplemental briefs addressing the issue of whether Debtor is barred by the doctrines

of judicial estoppel and/or collateral estoppel from switching from the so-called

"bankruptcy-like" exemptions claimed under California Code of Civil Procedure ("C.C.P.")

§ 703.140(b) to regular California non-bankruptcy exemptions claimed under C.C.P.

§ 704.010 *et seq.*, and C.C.P. § 704.730 after a final judgment had been entered allowing

the previously claimed C.C.P. § 703.140(b) exemptions.  *See Order after Hearing on

Motion by the Chapter 7 Trustee Objecting to the Debtor's Claimed Homestead

Exemption,* ECF 145, filed and entered on August 23, 2016; *see also* 1 March, Ahart and

Shapiro, *California Practice Guide: Bankruptcy*, ¶ 2:601 at 2-84 (2018) ("California

debtors may choose between two sets of state law exemptions, the regular

nonbankruptcy exemptions (Calif. C.C.P. § 704.010 seq.) or the bankruptcy-like set of

exemptions (Calif. C.C.P. § 703.140(b)).  They may *not* use the exemptions contained in

the Bankruptcy Code (11 USC § 522).") (emphasis in original), *citing,* 11 U.S.C. § 522; 11

U.S.C. § 522(b)(1); C.C.P. § 703.140(a) and (b).  The court ordered Debtor to file a

supplemental brief by November 4, 2016 and Trustee to file a supplemental brief by

November 18, 2016.  Following the supplemental briefing, the court authorized Debtor to

1    file a reply to Trustee's supplemental brief by November 30, 2016, and thereafter the

2    matter would be deemed under submission. *Id.* On November 4, 2016, Debtor through

3    counsel filed his supplemental brief, ECF 156, and filed a request for judicial notice in

4    support thereof, ECF 157. On November 30, 2016, Trustee filed his supplemental reply

5    brief. ECF 163.

6        On November 6, 2016, Debtor filed a substitution of attorney substituting himself

7    for his counsel, ECF 158. At a status conference in a related adversary proceeding on

8    November 15, 2016, Debtor requested that the court extend the deadline for Debtor to file

9    his reply brief in response to the Trustee's supplemental brief, and at this hearing Trustee

10    consented to the extension of time allowing Debtor to file his reply by January 31, 2017.

11    *See Amended Order on Motion by the Chapter 7 Trustee Objecting to the Debtor's*

12    *Claimed Homestead Exemption in Real Property*, ECF 161, filed and entered on

13    November 18, 2016. Debtor failed to file the reply brief by this deadline, so the matter

14    was deemed submitted as of February 1, 2017.

15        On June 27, 2017, the court issued two memorandum decisions and two orders on

16    the Chapter 7 Trustee's original motions objecting to Debtor's claimed homestead

17    exemption and "tools of the trade" exemption. ECF 202-205. The court ruled that Debtor

18    was not entitled to claim a homestead exemption under C.C.P. § 704 based on equitable

19    estoppel principles. The court also ruled that Debtor was not entitled to claim a "tools of

20    the trade" exemption with respect to his real estate sales commissions under C.C.P.

21    § 704.

22        On July 11, 2017, Debtor filed his motion for reconsideration of the orders granting

23    Trustee's motions disallowing the claimed homestead exemption and "tools of the trade"

24    exemption. ECF 210. On August 1, 2017, Trustee filed his opposition to Debtor's motion

25    for reconsideration. ECF 212. On August 2, 2017, the court filed and entered its order

26    granting Debtor's motion for reconsideration, staying the prior orders pending

27    reconsideration in light of the opinion of the United States Court of Appeals for the Ninth

28    Circuit in *In re Lua*, 692 Fed. Appx. 851 (9th Cir. 2017), which reversed the orders of the

1  lower courts upon which this court had cited in its memorandum decisions disallowing

2  Debtor's exemptions.  In this order, the court set a schedule of further briefing from the

3  parties regarding the impact of the Ninth Circuit's opinion in *Lua*.

4         By order filed and entered on September 27, 2017, the court granted Debtor's

5  request to extend time to file his supplemental brief.  ECF 218.  On November 7, 2017,

6  Debtor filed his supplemental brief on his right to claim a homestead exemption.  ECF

7  222.

8         On December 12, 2017, Debtor filed an amended Schedule C: The Property You

9  Claimed as Exempt (Official Form 106C) to claim a homestead exemption of $100,000,

10 ECF 229, amending his claim of exemptions to increase the homestead exemption from

11 the $75,000 claimed on his amended Schedule C filed in May 2016, *see* ECF 85.  On

12 December 15, 2017, Debtor filed a motion requesting that the court's rulings denying his

13 homestead exemption be set aside pursuant to *In re Lua* and based on misconduct of

14 Trustee for failing to object to untimely creditor claims in light of the May 2017 decision of

15 the United States Supreme Court in *Midland Funding, LLC v. Johnson*. 137 S. Ct. 1407

16 (2017).  ECF 231.  On December 22, 2017, Debtor filed another supplemental brief on

17 his right to claim a homestead exemption.  ECF 233.  On December 29, 2017, Debtor

18 filed a motion to amend his supplemental brief on his right to claim a homestead

19 exemption.  ECF 238.  On January 7, 2018, Trustee filed his opposition to Debtor's

20 motion to amend his supplemental brief.  ECF 240.

21        On January 8, 2018, Trustee filed the Amended Objection Motion objecting to

22 Debtor's amended schedules filed on December 12, 2017, claiming the increased

23 homestead exemption of $100,000 and a "tools of the trade" exemption.  ECF 241.

24        On January 9, 2018, Debtor filed an amended responsive brief regarding his right

25 to claim a homestead exemption.  ECF 246.  On January 17, 2018, the court filed and

26 entered an order on Debtor's motion to amend his responsive brief on his claimed

27 homestead exemption, granting his request to amend his brief and granting additional

28

1   time for Trustee to respond.  ECF 248.  On January 31, 2018, Trustee filed his brief in

2   response to Debtor's amended responsive brief.  ECF 253.

3          On February 1, 2018, Debtor filed a second motion to amend his responsive brief

4   regarding his claimed homestead exemption.  ECF 254.  On February 12, 2018, Trustee

5   filed his opposition to Debtor's second motion to amend his responsive brief.  ECF 257.

6   On February 21, 2018, Debtor filed a motion to reopen discovery on the dispute

7   regarding his claimed homestead exemption and to extend time to file a reply to Trustee's

8   opposition to his second motion to amend his responsive brief.  ECF 263.  This motion

9   was refiled on February 23, 2018 due to a noticing defect.  ECF 264.  On February 27,

10  2018, Trustee filed an opposition to Debtor's motion to reopen discovery.  ECF 266.  On

11  February 28, 2018, the court filed and entered an order granting Debtor's second motion

12  to amend his responsive brief regarding his claimed homestead exemption.  ECF 270.

13  On March 6, 2018, Debtor filed his responsive brief regarding his right to amend his

14  bankruptcy schedules to increase his claimed homestead exemption from $75,000 to

15  $100,000.  ECF 274.   Also on March 6, 2018, Debtor filed his amended responsive brief

16  regarding his right to amend his bankruptcy schedules to increase his claimed

17  homestead exemption from $75,000 to $100,000.  ECF 275.  On March 6, 2018, Debtor

18  also filed an amended motion to reopen discovery regarding the dispute over his claimed

19  homestead exemption.  ECF 278.  On March 29, 2018, the court filed and entered its

20  order granting Debtor's motion to reopen discovery on his claimed homestead exemption,

21  setting a deadline for completing discovery by May 31, 2018 and setting a briefing

22  schedule for Trustee's motion objecting to Debtor's amended homestead exemption

23  claim.  ECF 286.  This order set a deadline for further briefing and evidence to be filed by

24  Debtor by June 29, 2018, with a hearing on August 29, 2018.  *Id.*  On June 22, 2018, the

25  court filed and entered an order denying Debtor's motion to continue the hearing on the

26  claimed homestead exemption on August 29, 2018 due to alleged lack of compliance

27  with discovery subpoenas.  ECF 312.

28

On September 5, 2018, the court filed and entered an order after the hearing on Trustee's motion objecting to Debtor's amended schedules claiming an increased homestead exemption and a "tools of the trade" exemption, which provided that the parties could file opening supplemental briefs by September 19, 2018 and file reply supplemental briefs by October 3, 2018.  ECF 334.  On September 19, 2018, Debtor and Trustee filed opening supplemental briefs on Debtor's claim of a homestead exemption.  ECF 340 and 342.   Also on September 19, 2018, Debtor filed a motion to extend time to file a further opening supplemental brief.  ECF 341.   On September 28, 2018, the court filed and entered an order granting Debtor's request for additional time to file an opening supplemental brief and extended the time for reply supplemental briefs to October 17, 2018.  ECF 346.  On September 26, 2018 and October 3, 2018, Debtor filed two additional supplemental briefs on his claim for a homestead exemption.  ECF 345 and 349.  On October 17, 2018, Debtor and Trustee filed opening supplemental briefs on Debtor's claim of a homestead exemption.  ECF 351 and 352.   On November 9, 2018, Debtor filed an amended supplemental brief on his claim to a homestead exemption.  ECF 362.

Having considered the moving and opposing papers on the Original Objection Motion and the Amended Objection Motion, the exhibits and declarations attached thereto, the evidence admitted at the evidentiary hearing, the oral and written arguments of the parties, the parties' supplemental briefs, and the record before the court, the court, in this amended memorandum decision, hereby sets forth its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable here by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## I. FACTS

On October 5, 2015, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., commencing this bankruptcy case, *In re Arturo Gonzalez, dba Long Beach Realty, Inc.; dba South Bay Realty; dba Mindset; aka Art Gonzalez; aka Art Gonzalez, Jr.*, Case No. 2:15-bk-25283-RN.  *Chapter 7 Voluntary*

*Petition*, ECF 1, filed on October 5, 2015, *Trustee's Trial Exhibit 115*.  In Debtor's

Schedule A-Real Property, Debtor listed the real property located at 329 Hawaiian

Avenue, Wilmington, CA (the "Hawaiian Avenue property") which he owned in fee simple

with a value of $275,000.  *Chapter 7 Voluntary Petition, Schedule A-Real Property,* ECF

1 at 11, *Trustee's Trial Exhibit 115*.

Debtor's initial Schedule B-Personal Property identified his business, Long Beach

Realty, Inc. ("Long Beach Realty") as an estate asset.  *Chapter 7 Voluntary Petition,*

*Schedule B-Personal Property,* ECF 1 at 13, *Trustee's Trial Exhibit 115*.  Debtor on his

Schedule I-Your Income identified his occupation as a real estate broker and indicated

that he has been working in that occupation for five years at his business, Long Beach

Realty.  *Chapter 7 Voluntary Petition, Schedule I-Your Income,* ECF 1 at 28, *Trustee's*

*Trial Exhibit 115*.  Debtor on his Schedule B-Personal Property referred to Long Beach

Realty, as a "California Subchapter 'S' Corporation," having the following assets: a bank

account holding $1,100, accounts receivable of $9,500, and business equipment valued

at $400.  *Chapter 7 Voluntary Petition, Schedule B-Personal Property*, ECF 1 at 13,

*Trustee's Trial Exhibit 115*.  On his Schedule C-Property Claimed as Exempt, Debtor

claimed a C.C.P. § 703.140(b)(5) exemption in the amount of $10,600 representing the

value of Long Beach Realty's bank account and accounts receivable.  *Chapter 7*

*Voluntary Petition, Schedule C-Property Claimed as Exempt,* ECF 1 at 17, *Trustee's Trial*

*Exhibit 115*.  Debtor further claimed a $400 exemption in the business equipment of Long

Beach Realty pursuant to C.C.P. § 703.140(b)(6).  *Id.*  Debtor did not claim a homestead

exemption in the Hawaiian Avenue property pursuant to the regular nonbankruptcy

California set of exemptions of C.C.P. § 704 on his first Schedule C-Property Claimed as

Exempt, filed on October 5, 2015, on which he chose only exemptions in personal

property assets pursuant to the California bankruptcy-like set of exemptions of C.C.P.

§ 703.140(b) in the amount of $34,650.  *Id.* at 18.

On December 14, 2015, one day before Debtor's first continued meeting of

creditors pursuant to 11 U.S.C. § 341(a), Debtor filed his first amended bankruptcy

schedules, including an amended Schedule B-Personal Property and an amended

Schedule C-Property Claimed as Exempt, listing the assets of Long Beach Realty,

including a bank account valued at $1,100 and business equipment valued at $400.

*[First] Amended Schedule(s), Schedule B-Personal Property and Schedule C-Property*

*Claimed as Exempt*, ECF 18 at 3 and 7, *Trustee's Request for Judicial Notice, Exhibit 2,*

ECF 244, filed on January 8, 2018.  On his Amended Schedule B-Personal Property,

Debtor added an item called "Contingent Interests at time of filing" to the list of assets of

Long Beach Realty, which stated a total value of $44,303 referring to the sales of three

different properties, the "W. L[.] Street Sale", the "Banning Sale" and the "Oce[a]nside

Sale".  *[First] Amended Schedule(s), Schedule B-Personal Property,* ECF 18 at 3,

*Trustee's Trial Exhibit 2.*[1]  Again, in his First Amended Schedules, filed on December 14,

2015, Debtor did not claim a homestead exemption pursuant to regular California

nonbankruptcy set of exemptions of C.C.P. § 704 and only claimed the bankruptcy-like

C.C.P. § 703.140(b) exemptions in personal property assets in the amount of $25,150.

*[First] Amended Schedule(s), Schedule C-Property Claimed as Exempt,* ECF 18 at 7,

*Trustee's Request for Judicial Notice, Exhibit 2,* ECF 244, filed on January 8, 2018.

However, Debtor did not claim the value of the "Contingent Interests at time of filing"

valued at $44,303, as exempt on the Amended Schedule C-Property Claimed as Exempt,

though this item was listed as an asset on this amended exemption schedule, the

Amended Schedule C.  *Id.*  Debtor claimed exemptions in other personal property assets

under C.C.P. § 703.140(b)  *Id.*

      At the meeting of creditors in this case on December 15, 2015, the day after

Debtor filed his first amended schedules, Trustee examined Debtor under oath.  *Avery*

*Motion Declaration,* ECF 96 at 15 (document page 14), ¶ 6, *Trustee's Request for*

---

[1] "Contingent Interests at time of filing" referred to real estate commissions on the sales of these three
properties that Debtor had earned prepetition, which were the subject of the litigation involving Trustee's
objection to Debtor's claimed exemption in these commissions under C.C.P. § 703.140(b) and are referred
to herein as "Commissions." *See Declaration of Wesley T. Avery attached to the Motion ("Avery Motion*
*Declaration"),* filed on May 13, 2016, ECF 96 at 15 (document page 14), ¶ 5, Trustee's Request for Judicial
Notice, ECF 111, filed on June 20, 2016, Exhibit Z1, *Trustee's Trial Exhibit 126* (this declaration of Trustee
in support of the Motion was received as his further trial declaration at trial).

*Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trial Exhibit 126.* According to Trustee, at this meeting of creditors Debtor testified that there were no errors or omissions in his schedules, that he signed his schedules after he read them and that they were true and correct, and Debtor also acknowledged that he had filed the first amended schedules one day earlier on December 14, 2015. *Id.* According to Trustee, at this meeting of creditors he discussed Debtor's right to make an election regarding the assets that he could exempt in bankruptcy and advised Debtor, with counsel present, that he had an election to make, that Debtor could either exempt the Commissions or the Hawaiian Avenue property, but not both. *Id.* at 16 (document page 15), ¶ 6. At this meeting of creditors, Trustee further advised Debtor that he was only entitled to an exemption of $1,500.00 in the assets of Long Beach Realty and that the rest of the assets of Long Beach Realty were not exempt and belonged to the bankruptcy estate. *Id.* According to Trustee, Debtor stated on the record that he agreed, and Trustee instructed Debtor not to dissipate any of the assets of Long Beach Realty. *Id.* Although Trustee did not offer into evidence a transcript of the proceedings at this meeting of creditors, Trustee's account of his colloquy between him and Debtor at the meeting of creditors as recited in the Avery Motion Declaration is credible and is not disputed by Debtor as Debtor at trial raised no objections to Trustee's Declaration or any other of Trustee's trial exhibits.

On January 15, 2016, Debtor's bankruptcy attorney, Anerio V. Altman, informed Trustee's counsel, Brett B. Curlee, that Debtor had received "some" of the Commissions and was using "some" to pay living expenses and was holding the rest to, among other things, pay the mortgage or home loan on the Hawaiian Avenue property for when the case was converted to one under Chapter 13 of the Bankruptcy Code. *Declaration of Brett B. Curlee attached to the Motion ("Curlee Motion Declaration"),* filed on May 13, 2016, ECF 96 at 24 (document page 22), ¶ 3, *Trustee's Request for Judicial Notice,* ECF

111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial Exhibit 126*.[2]  After this telephone

conversation, on the same day, Trustee's counsel sent an email to Debtor's counsel

demanding that Debtor not spend the Commissions which belonged to the bankruptcy

estate and instructing that Debtor not use the Commissions to pay for post-bankruptcy

living expenses, and within 90 minutes, Debtor's counsel sent an email to Trustee's

counsel, responding that Debtor would not comply with the Trustee's requests in light of

Debtor's pending motion to convert the case to one under Chapter 13 of the Bankruptcy

Code.  *Id.* at 25 (document page 23), ¶¶ 4-5, and Exhibit 15 attached thereto.  According

to an analysis by Trustee's accountant of the bank account of Debtor's business, Long

Beach Realty, Debtor made disbursements totaling $33,883.52 from this account from

the petition date of October 5, 2015 to January 15, 2016, which included $21,178.00

derived from two checks for commissions for the Banning Sale deposited on December

3, 2015 and January 7, 2016.  *Declaration of John J. Menchaca attached to the Motion*

*("Menchaca Motion Declaration"),* filed on May 13, 2016, ECF 96 at 28-29 (document

pages 25-26), ¶¶ 2-4, *Trustee's Request for Judicial Notice,* ECF 111, filed on June 20,

2016, *Exhibit Z1, Trustee's Trial Exhibit 126*.[3]  In a letter to Trustee's counsel (Mr. Curlee)

emailed on February 11, 2016, Debtor's counsel (Mr. Altman) confirmed that Debtor

cashed two checks from sales commissions from the Banning Sale in the amount of

$20,178.00 on December 3, 2015 and January 6, 2016. *Curlee Motion Declaration*, ECF

96 at 24 (document page 22), ¶ 3 and ECF 96-1 at 6-8, *Trustee's Trial Exhibit 126.*

On January 21, 2016, Trustee initiated the adversary proceeding against Debtor

entitled *Wesley H. Avery v. Arturo Gonzalez, dba Long Beach Realty, Inc.; dba South*

*Bay Realty; dba Mindset; aka Art Gonzalez; aka Gonzalez Jr.*, Adv. No. 2:16-ap-01037-

RK ("Adversary Proceeding") seeking turnover of these Commissions to the bankruptcy

estate.  In the Adversary Proceeding for turnover, Trustee filed a motion for temporary

---

[2] This declaration of Trustee's counsel in support of the Motion was received as his further trial declaration at trial.

[3] This declaration of Trustee's accountant in support of the Motion was received as his further trial declaration at trial.

restraining order, turnover, and an application for an order shortening time on such

motion. *Motion by the Plaintiff and Chapter 7 Trustee for Turnover of Funds, Accounting,*

*Temporary Restraining Order, and Preliminary Injunction* and *Application for Order*

*Setting Hearing on Shortened Notice*, Adversary Proceeding ECF 2 and 3, filed on

January 22, 2016.  Trustee filed this motion because he learned that Debtor had received

the money for the Commissions and had spent the portion of this money belonging to the

bankruptcy estate.  *Avery Motion Declaration,* ECF 96 at 17-18 (document pages 16-17),

¶¶ 10-13, *Trustee's Request for Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit*

*Z1, Trustee's Trial Exhibit 126.*  The court granted Trustee's request for a temporary

restraining order by an order entered on January 25, 2016, and the court set a hearing on

Trustee's request for issuance of a preliminary injunction and turnover on February 17,

2016.  *Order on (1) Ex Parte Motion by Chapter 7 Trustee Without Notice for Turnover of*

*Funds, Accounting, and Temporary Restraining Order . . . and (2) Setting Hearing*,

Adversary Proceeding ECF 5, filed and entered on January 25, 2016, *Trustee's Request*

*for Judicial Notice, Exhibit 3*, ECF 244, filed and entered on January 8, 2016.

On February 3, 2016, Debtor filed his opposition to Trustee's turnover motion,

referring to "Exhibit A" attached to the opposition, which consisted of draft amended

bankruptcy schedules to be filed on February 4, 2016, and stating, "The debtor will

turnover nonexempt funds described as 'real estate commissions' less **those amounts**

**retained as an exemption pursuant to the Debtor's amendments to be filed on**

**February 4th, 2016** . . . .  The Debtor requests a court ruling on whether the 'exempted'

funds also need to be turned over to the Trustee pending resolution of the Adversary

Proceeding."  *Response to the Trustee's Request for Injunctive Relief*, Adversary

Proceeding ECF 14, filed on February 3, 2016 at 2, *Trustee's Request for Judicial Notice,*

*Exhibit 4,* ECF 244, filed on January 8, 2018 (emphasis added). Part of Exhibit A

attached to Debtor's response to Trustee's turnover motion was a draft Schedule C –

Property Claimed as Exempt, claiming an exemption of $21,125 in real estate

commissions pursuant to C.C.P. § 703.140(b)(5).  *Id.,* Exhibit A attached thereto.  In

1  other words, Debtor represented in his filed opposition to Trustee's turnover motion that

2  he was claiming, retaining, and not turning over, personal property assets, namely, his

3  real estate commissions as exempt pursuant to C.C.P. § 703.140(b)(5) on his proposed

4  second amended bankruptcy schedules to be filed the next day on February 4, 2016.  *Id.*

5         On February 4, 2016, Debtor further amended his Schedule B-Personal Property

6  and Schedule C-Property Claimed as Exempt, also only claiming exemptions in personal

7  property assets pursuant to the California bankruptcy-like set of exemptions under C.C.P.

8  § 703.140(b)(5) and (6).  *Summary of Amended Schedules, Master Mailing List, and/or*

9  *Statements [LBR 1007-1(c)], Schedule B-Personal Property and Schedule C-Property*

10 *Claimed as Exempt*, ECF 45 at 3-9, *Trustee's Request for Judicial Notice, Exhibit 5,* ECF

11 244, filed on January 8, 2018.  On these Second Amended Schedules, Debtor claimed as

12 exempt a total of $28,750 in the Commissions from Long Beach Realty, of which $21,125

13 was claimed exempt pursuant to C.C.P. § 703.140(b)(5) and $7,625 was claimed as

14 exempt pursuant to C.C.P. § 703.140(b)(6), the "tool of the trade" exemption, which funds

15 were deposited in Long Beach Realty's bank account.   *Summary of Amended*

16 *Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)], Schedule C-Property*

17 *Claimed as Exempt*, ECF 45 at 8, *Trustee's Request for Judicial Notice, Exhibit 5,* ECF

18 244, filed on January 8, 2018.  On these second amended bankruptcy schedules, Debtor

19 again did not claim a homestead exemption in the Hawaiian Avenue property pursuant to

20 the regular California nonbankruptcy set of exemptions of C.C.P. § 704 as he only chose

21 the alternative set of bankruptcy-like exemptions of C.C.P. § 703.140(b) in personal

22 property assets in the amount of $37,900, including the Commissions.  *Id.* at 8-9.

23        On February 10, 2016, Trustee filed his reply to this opposition and acknowledged

24 Debtor's right to exempt some Commissions, but objected to any amount in excess of the

25 allowed exemption amount of $20,200 pursuant to C.C.P. § 703.140(b)(5).  *Reply to the*

26 *Debtor's Response to the Trustee's Request for Injunctive Relief*, Adversary Proceeding

27 ECF 16, filed on February 10, 2016, *Trustee's Request for Judicial Notice, Exhibit 6,* ECF

28 244, filed on January 8, 2018.

1    On February 11, 2016, Trustee filed his motion objecting to Debtor's claimed

2  exemption for certain property assets, specifically, the exemptions claimed by Debtor in

3  the assets of Long Beach Realty, Inc., pursuant to C.C.P. §§ 703.140(b)(5) and (b)(6) in

4  Debtor's second amended bankruptcy schedules filed on February 4, 2016.  *Motion by*

5  *the Chapter 7 Trustee Objecting to the Debtor's Claimed Exemption for Certain Personal*

6  *Property Assets; Memorandum of Points and Authorities; Declaration of Brett B. Curlee in*

7  *Support Thereof,* ECF 48, filed on February 11, 2016, *Trustee's Request for Judicial*

8  *Notice, Exhibit 9,* filed on January 8, 2018.  In this motion, Trustee argued that Debtor's

9  exemption under C.C.P. § 703.140(b)(6) is limited to $400.00 for business equipment in

10  Long Beach Realty, Inc.; that Debtor's exemption under C.C.P. § 703.140(b)(5) is limited

11  to $20,200.00 in real estate sales commissions valued at $44,303.00, of which $28,700

12  was claimed by Debtor as exempt on his second amended schedules; and that the

13  balance of the real estate sales commissions of $24,103.00 should be administered by

14  Trustee for the benefit of the bankruptcy estate.  *Id.* at 6.

15    On February 17, 2016, the court conducted an evidentiary hearing on Trustee's

16  Motion for Preliminary Injunction and Turnover in the Adversary Proceeding.  *Transcript*

17  *of Hearing re: Motion by the Plaintiff and Chapter 7 Trustee for Turnover of Funds,*

18  *Accounting, Temporary Restraining Order, and Preliminary Injunction against the*

19  *Defendant Pending Noticed Hearing on Preliminary Injunction and Disposition of*

20  *Litigation, Trustee's Request for Judicial Notice, Exhibit 8,* ECF 244, filed on January 8,

21  2018.  At this hearing, the parties, Trustee and Debtor, stated their agreement on the

22  merits of the turnover motion on the record that out of the $44,804 in Commissions listed

23  on Debtor's amended bankruptcy schedules, $16,054 was not exempt and should be

24  turned over to Trustee, but that the parties disputed whether Debtor could claim the

25  remaining amount of $8,550 in Long Beach Realty's bank account under a "tool of the

26  trade" exemption pursuant to C.C.P. § 703.140(b)(6), and based on this agreement, on

27  February 19, 2016, the court entered an order granting the preliminary injunction motion

28  in part and denying it in part, which required Debtor to turn over $16,054 to Trustee and

to turn over to his counsel, Mr. Altman, the remaining disputed amount of $8,550 to hold

pending further order of the court on Debtor's claim of exemption as to those funds.  *Id.*

*Order on Motion by the Plaintiff and Chapter 7 Trustee for Turnover of Brokerage*

*Commissions and for Preliminary Injunction Pending Disposition of Litigation*, Adversary

Proceeding ECF 20, filed on February 19, 2016, *Trustee's Request for Judicial Notice,*

*Exhibit 7,* ECF 244, filed on January 8, 2018.

On February 23, 2016, Debtor filed his opposition to Trustee's motion objecting to

Debtor's claimed exemption in certain personal property assets.  *Opposition to the*

*Trustee's Motion Objecting to the Debtor's Exemption in Personal Property,* ECF 57, filed

on February 23, 2016, *Trustee's Request for Judicial Notice, Exhibit 10,* ECF 244, filed

on January 8, 2018.  In his opposition to Trustee's motion objecting to the claimed

exemption in certain personal property assets, Debtor argued that he "has a right to claim

the exemption [for tools of the trade] under C.C.[P.] 703.140(b)(6)" in "business cash

assets" in the amount of $7,625.00 and that "Debtor's election of this exemption is

permissible under case law."  *Id.* at 4.  Debtor further argued that he "should be given the

benefit of the doubt in any question whether an exemption is legitimately chosen" and

that "[u]nless the Debtor chooses an exemption to which the Debtor blatantly has no right

to claim, where the Debtor has lawfully elected an exemption, and has not exceeded the

limits of that exemption amount, the exemption should stand absent evidence to the

contrary."  *Id.* at 5 (citations omitted).  Debtor further noted that the actual value of his

business, Long Beach Realty, should have been $45,082.62 and that he had a

"remaining claimed wildcard" exemption of $20,920.38 in his Long Beach Realty assets.

*Id.* at 6.  It appears that Debtor meant to argue that the court should overrule Debtor's

claimed exemption of $21,125 on his second amended schedules pursuant to C.C.P.

§ 703.140(b)(5) in addition to his "tools of the trade" exemption of $7,625 pursuant to

C.C.P. § 703.140(b)(6).  *Summary of Amended Schedules, Master Mailing List, and/or*

*Statements [LBR 1007-1(c)], Schedule C-Property Claimed as Exempt*, ECF 45 at 8,

*Trustee's Request for Judicial Notice, Exhibit 5,* ECF 244, filed on January 8, 2018.  That

1  is, Debtor in his opposition did not concede the objection as to the claimed exemption

2  under C.C.P. § 703.140(b)(5) as Debtor further argued in conclusion that the court should

3  overrule Trustee's objection. *Id.* at 6.

4       On February 24, 2016, Trustee conducted a second meeting of creditors in this

5  case pursuant to 11 U.S.C. § 341(a). Debtor appeared, was questioned and gave

6  testimony, *Avery Motion Declaration,* ECF 96 at 20 (document page 19), ¶ 18, *Trustee's*

7  *Request for Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial*

8  *Exhibit 126.* According to Trustee, at this meeting of creditors, Debtor advised that he

9  had received all of the Commissions, including receivables for the "W. L. Street Sale" for

10  $9,500.00, the "Banning Sale" for $20,178.00 and the "Oceanside Sale" for $14,625.00,

11  and Debtor further testified that after turning over, pursuant to the court's turnover order,

12  the $16,054.00 in non-exempt Commissions to Trustee and depositing the $8,500.00 with

13  his attorney the amount to be determined in the litigation of his exemption claim under the

14  California bankruptcy-like set of exemptions of C.C.P. § 703.140(b), he had spent the

15  remaining amount of $20,200.00 that he had claimed as exempt under C.C.P.

16  § 703.140(b) and that the parties had so agreed in that litigation. *Avery Motion*

17  *Declaration,* ECF 96 at 20-21 (document pages 19-20), ¶¶ 18-19, *Trustee's Request for*

18  *Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial Exhibit 126.*

19  This testimony of Trustee recounting the proceedings at the second meeting of creditors

20  is not disputed by Debtor and is otherwise credible.

21       At the hearing on March 8, 2016 on Trustee's motion objecting to Debtor's

22  exemption in certain personal property assets (i.e., cash and commissions of Long Beach

23  Realty) under CCP § 703.140(b)(5) and (6) in the main bankruptcy case, counsel for the

24  parties, Trustee and Debtor, based on the hearing on February 17, 2016 in the related

25  adversary proceeding, stated their agreement on the merits of the turnover motion on the

26  record that out of the $44,804 in Commissions listed on Debtor's amended bankruptcy

27  schedules, $16,054 was not exempt and had to be turned over to Trustee, $20,200 was

28  exempt and the only dispute between the parties was whether Debtor could claim the

1    remaining amount of $8,550 in cash of Long Beach Realty under a "tool of the trade"

2    exemption pursuant to C.C.P. § 703.140(b)(6).  *Transcript of Hearing re: Motion by the*

3    *Chapter 7 Trustee Objecting to the Debtor's Claimed Exemption for Certain Personal*

4    *Property Assets, March 8, 2016, Trustee's Request for Judicial Notice, Exhibit 11,* ECF

5    244, filed on January 8, 2018.  At the hearing on Trustee's motion objecting to Debtor's

6    exemption in certain personal property assets on March 8, 2016, the parties also stated

7    their agreement that there were no disputed facts or genuine issues of material fact for

8    trial on Trustee's motion objecting to Debtor's exemption in certain personal property

9    assets.  *Id.*  Based on Debtor's request that the court issue findings of fact and

10   conclusions of law, the court then requested the parties to lodge proposed findings of fact

11   and conclusions of law and afterwards took the matter of Trustee's Objection to Debtor's

12   Exemption in the Commissions under submission.  *Id.*

13        On March 9, 2016, Trustee filed an application to employ a real estate broker to

14   sell the Hawaiian Avenue property.  *Application to Employ Aaron Juarez, as the Chapter*

15   *7 Trustee's Real Estate Agent as of 2/23/2016 to Sell the Real Property Commonly*

16   *Known as 329 Hawaiian Avenue, Wilmington, CA 90744, and Notice of Motion*, ECF 61

17   and 62, *Trustee's Request for Judicial Notice, Exhibit 15,* ECF 244, filed on January 8,

18   2018.  In this application, Trustee represented that there was "no less than $67,339.03 in

19   equity in the Property that [could] be used to benefit the bankruptcy estate after paying

20   secured claims, real estate commissions, and sale costs."  *Id.* at ¶ 6.  Trustee served this

21   application to employ the real estate broker on Debtor, who did not object to the

22   application.  *Id.*  On June 1, 2016, the court filed and entered an order approving the

23   application.  ECF 93, filed and entered on June 1, 2016.

24        On May 9, 2016, Debtor filed further amended his bankruptcy schedules, including

25   his Schedule A-Real Property, Schedule B-Personal Property, Schedule C-Property

26   Claimed as Exempt, and Schedule D-Creditors Holding Secured Claims.  *Summary of*

27   *Amended Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)],* ECF 85

28   and 85-1, *Trustee's Request for Judicial Notice, Exhibit 16,* ECF 244, filed on January 8,

2018. Debtor in his further amended Schedule A-Real Property listed the value of the Hawaiian Avenue property at $320,000 with the amount of secured claims of $287,766.98, and in his further amended Schedule C-Property Claimed as Exempt, he claimed a homestead exemption of $75,000 pursuant to the regular California nonbankruptcy exemptions of C.C.P. § 704.730. *Summary of Amended Schedules, Master Mailing List, and/or Statements [LBR 1007-1(c)], Amended Schedule A-Real Property* and *Amended Schedule C-Property Claimed as Exempt,* ECF 85-1 at 1 and 7, *Trustee's Request for Judicial Notice, Exhibit 16,* ECF 244, filed on January 8, 2018. Additionally, Debtor asserted a $7,625 "tool of the trade" exemption in the Commissions valued at $44,303, but under the regular California nonbankruptcy exemption of C.C.P. § 704.060(a)(1), rather than under the alternate bankruptcy-like exemption of C.C.P. § 703.140(b)(6) as claimed in Schedule C of his prior bankruptcy schedules. *Id.,* ECF 85-1 at 7. However, Debtor did not claim any exemption for the Commissions. *Id.* In this further amended Schedule C, Debtor claimed total exemptions under the regular California nonbankruptcy exemptions of C.C.P. § 704 in the amount of $85,975, including $75,000 as a homestead exemption in the Hawaiian Avenue property. *Id.,* ECF 85-1 at 7-8.

According to Debtor, he and his counsel, Mr. Altman, "talked about changing exemptions in or around April 2016" and "[t]he purpose of discussing the changing of the exemptions was related to our legal position regarding proposing a viable Chapter 13 case." *Trial Declaration of Arturo Gonzalez,* ECF 131 at 3, ¶¶ 14-15, filed on July 22, 2016, *Debtor's Exhibit A.*

As previously noted, on June 8, 2016, Trustee filed his Motion objecting to Debtor's further amended exemptions on the amended schedules filed on May 9, 2016, including the exemptions claimed in the Hawaiian Avenue property and the Commissions pursuant to the regular California nonbankuptcy exemptions of C.C.P. § 704. *Motion,* ECF 96, *Trustee's Request for Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial Exhibit 126.*

1    Debtor filed his written opposition to the Motion on June 24, 2016, ECF 113, and

2  Trustee filed a reply thereto on June 30, 2016, ECF 115.  The court held an initial hearing

3  on the Motion on July 7, 2016, where the court continued the matter in order for Debtor

4  and Trustee to consider whether an evidentiary hearing was necessary.  At the continued

5  hearing on July 15, 2016, Debtor argued that an evidentiary hearing was necessary in

6  order to present evidence regarding Debtor's intent, and the court agreed and scheduled

7  the evidentiary hearing to take testimony and receive other evidence.

8    On June 16, 2016, Trustee filed a motion to sell the Hawaiian Avenue property.

9  *Motion by the Chapter 7 Trustee for Order Approving (1) Real Property Sale . . . (2)*

10  *Overbid Procedure; (3) Real Estate Agent Compensation*, *Trustee's Trial Exhibit 128*,

11  ECF 100.  At the hearing on the sale motion on July 19, 2016, the court approved the

12  sale of the Hawaiian Avenue property with a sales price of $367,000.00, yielding

13  approximately $74,532.86 in net equity to the estate after paying off the existing liens and

14  costs of sale.  *Order after Hearing on Motion by Chapter 7 Trustee to Approve: (1) Real*

15  *Property Sale (329 Hawaiian Avenue, Wilmington, CA 90744) Free and Clear of Liens*

16  *and Interests; (2) Overbid Procedure; Real Estate Agent Compensation; (4) Directing*

17  *Turnover of Real Property; and (5) Distribution of Sale Proceeds*, ECF 135, filed and

18  entered on July 29, 2016.  This order provided that Trustee was authorized to pay the

19  broker's six percent commission directly from escrow, but that Trustee was not to pay any

20  homestead exemption or tax liens pending the resolution of this Motion.  *Id.* at ¶¶ 10-11.

21    On July 12, 2016, the court filed and entered its order granting in part and denying

22  in part Trustee's motion objecting to Debtor's claimed exemption in certain personal

23  property assets, namely, the Commissions, with accompanying findings of fact and

24  conclusions of law.  *Order on Chapter 7 Trustee's Motion Objecting to the Debtor's*

25  *Claimed Exemption in Certain Personal Property Assets*, ECF 118;  *Findings of Fact and*

26  *Conclusions of Law re: Motion by the Chapter 7 Trustee Objecting to the Debtor's*

27  *Claimed Exemption for Certain Personal Property Assets*, ECF 119.  In its order, the

28  court held that "[b]ased on the agreement of the parties, Debtor's claimed personal

1  property asset exemption under the California bankruptcy-like set of exemptions of

2  C.C.P. § 703.140(b) claimed in Debtor's second amended schedules, ECF 45, was

3  allowed in part and disallowed in part, that is, the exemption was allowed only in the

4  previously agreed and allowed exempt amount of $20,200, and the court ordered Debtor

5  to turn over the disputed amount of $8,550 from the Commissions that was being held by

6  Debtor's counsel pending further order of the court.  *Id.*   The court held that the

7  Commissions, although arguably working capital, could not be considered a "tool of the

8  trade" pursuant to C.C.P. § 703.140(b)(6).  *Id.*  Debtor did not appeal the court's final

9  order allowing in part and disallowing in part his claimed exemptions in the Commissions

10  under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b), which was entered

11  pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7054 and Federal Rule of

12  Civil Procedure 54, making the order a final non-appealable order.

13          According to Trustee, as of July 29, 2016, administrative claims against the

14  bankruptcy estate in this case for professional fees total $131,760.19, including

15  $63,186.76 owed to Trustee's counsel, Mr. Curlee, $26,973.20 owed to Trustee's

16  accountant, Menchaca & Company, LLP, $22,020.00 owed to the real estate agent and

17  the buyer's real estate agent pursuant to the motion to sell real property and the order

18  entered thereon, and $19,580.20 owed to the Trustee, if approved by the court under 11

19  U.S.C. § 326.. *Trustee's Reply to the Trial Declaration of Arturo Gonzalez in Support of*

20  *His Opposition to the Trustee's Objection to the Debtor's Exemption Filed as Docket*

21  *#113, Supplemental Declaration of Wesley H. Avery*, ECF 133, filed on July 29, 2016 at

22  12-13, ¶¶ 7-8.  The Trustee testified that these administrative expenses were incurred

23  "[a]s a result of the heavy litigation regarding Debtor's claimed exemptions in the

24  Commissions, [Debtor's opposition] to the motion to sell [the Hawaiian Avenue property],"

25  and in the contested matter of Trustee's motion objecting to Debtor's claimed homestead

26  exemption and in other proceedings.  *Id.*  There is an unsecured nonpriority claim against

27  the bankruptcy estate for $10,345.75, for $142,105.94 in total administrative expenses

28  and nonpriority unsecured claims.  *Id.*  "The Estate will be substantially prejudiced by

1  reducing the funds available to pay creditors from $99,136.86 (before the offset is taken

2  into account against the IRS secured claim, Claim No. 3-1 in the Claims Register for

3  $32,926.98 under 11 U.S.C. § 507(a)(1)-(7) and 11 U.S.C. §§ 724(b)(2) [*In re Bankruptcy*

4  *Estate of Mark Air, Inc.*, 308 F.3d 1057, 1061-1062 (9th Cir. 2002)]) to only $44,804.00

5  thereby eliminating the Estate's ability to pay even a substantial portion of the

6  administrative claims in full."  *Id.* at ¶ 8.  Also attached to this reply, were the Declarations

7  of John Menchaca and Brett Curlee also confirming the amounts of these expenses.

8  **II. DISCUSSION**

9        As discussed below, the court holds that the California state law doctrine of

10  equitable estoppel under the facts of this case bars Debtor from changing his election

11  from exemptions under the California bankruptcy-like exemptions of C.C.P. § 703.140(b)

12  to exemptions under the alternate regular California nonbankruptcy set of exemptions of

13  C.C.P. §§ 704.730, 704.020, and 704.060(a)(1).  For the following reasons, the court

14  grants Trustee's Motion Objecting to Debtor's Homestead Exemption and disallows

15  Debtor's claimed homestead exemption.

16      **A.  California State Law Exemptions**

17        California is an "opt-out" state, meaning that a debtor may only claim exemptions

18  allowed under California law.  C.C.P. § 703.140(a) and (b); C.C.P. § 704.010 *et seq*.; *see*

19  *also In re Applebaum*, 422 B.R. 684, 688 (9th Cir. BAP 2009).  "California debtors may

20  choose between two sets of state law exemptions, the regular nonbankruptcy exemptions

21  (Calif. C.C.P. § 704.010 seq.) or the bankruptcy-like set of exemptions (Calif. C.C.P.

22  § 703.140(b)).  They may *not* use the exemptions contained in the Bankruptcy Code (11

23  USC § 522)."  1 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*,

24  ¶ 2:601 at 2-84 (2018) (emphasis in original) (citing 11 U.S.C. § 522); *see also* 11 U.S.C.

25  § 522(b)(1); C.C.P. § 703.140(a) and (b); *Flinn v. Morris (In re Steward),* 227 B.R. 895,

26  898 (9th Cir. BAP 1998).  "[W]hen a debtor claims a *state-created* exemption, the

27  exemption's scope is determined by state law, which may provide that certain types of

28

1  debtor misconduct warrant denial of the exemption."  *Law v. Siegel*, 571 U.S. 415, 134 S.

2  Ct. 1188, 1196-1197 (2014) (emphasis in original).

3      In this case, Debtor claimed exemptions under the California bankruptcy-like set of

4  exemptions of C.C.P. § 703.140(b) in his initial Schedule C-Property Claimed as Exempt

5  filed on October 5, 2015, and in his next two amended Schedule Cs filed on December

6  15, 2015 and February 4, 2016.  It was not until after Debtor litigated to trial the matter of

7  Trustee's objection to his claim of exemption in the Commissions pursuant to C.C.P.

8  § 703.140(b)(6), for which there is now a final non-appealable order deciding that Debtor

9  was not entitled to the "tool of the trade" exemption under that provision, that he

10  amended and filed a further amended Schedule C-Property Claimed as Exempt on May

11  9, 2016 claiming instead different exemptions, including a homestead exemption under

12  the regular California nonbankruptcy exemption of C.C.P. § 704.730.  Thus, Debtor

13  consistently took the position, as reflected in his bankruptcy schedules and in litigation

14  proceedings before this court, that he was claiming exemptions only in personal property

15  assets, namely, the real estate sales commissions, pursuant to the California bankruptcy-

16  like set of exemptions of C.C.P. § 703.140(b) for approximately eight months before he

17  amended his schedules to choose different exemptions under the regular California

18  nonbankruptcy exemptions of C.C.P. § 704, including a homestead exemption for the first

19  time.  Furthermore, Debtor increased his total amount of claimed exemptions by $48,075

20  from his second amended Schedule C-Property Claimed as Exempt to his third amended

21  Schedule C-Property Claimed as Exempt.

22      Debtor argues that he "has a right to amend his exemptions from one exemption

23  scheme to the other as long as the case remains open."  *Debtor's Brief per Court Order*

24  *#145*, ECF 156 at 5, filed on November 4, 2016.  Federal Rule of Bankruptcy Procedure

25  1009 provides that debtors may amend their bankruptcy schedules "as a matter of course

26  at any time before the case is closed."  "But amending Schedule C to *claim* an exemption

27  is separate from the question whether the exemption is *allowable*; creditors and parties in

28  interest may object to exemptions added by amendment."  2 March, Ahart and Shapiro,

1  *California Practice Guide: Bankruptcy*, ¶ 7:223 at 7-28 (emphasis in original) (referring

2  readers to ¶ 7:255, *infra,* which cites to Federal Rule of Bankruptcy Procedure

3  4003(b)(1)).  While Debtor may amend his bankruptcy schedules, simply amending the

4  schedules does not necessarily mean that the amendments are allowable.  *Id.*  Rule

5  4003(b)(3) explicitly recognizes that creditors may file an objection to the list of property

6  claimed as exempt within 30 days after any amendment.  *Id.; see also In re Bernard,* 40

7  F.3d 1028, 1030-1032 (9th Cir. 1994).

8          Debtor argues that although there is a final non-appealable order determining

9  Debtor's claims of exemptions under the California bankruptcy-like set of exemptions of

10 C.C.P. § 703.140(b), "[n]o issues were reviewed or resolved concerning the Debtor's

11 future ability to amend his exemptions, or whether he could or could not exempt value in

12 his House."  *Debtor's Brief per Court Order,* ECF 156 at 9, filed and entered on

13 November 4, 2016.  This argument misses the point of equitable estoppel.  Debtor

14 repeatedly asserted his exemption rights under the California bankruptcy-like set of

15 exemptions of C.C.P. § 703.140(b) over an eight-month period of time, inducing Trustee

16 in reliance to incur administrative expenses to litigate Debtor's claimed exemptions in

17 personal property assets pursuant to C.C.P. § 703.140(b) and to sell the Hawaiian

18 Avenue property to realize the value of the net equity for the benefit of the estate's

19 creditors based on Debtor's litigated selection of these exemptions under that provision.

20 It is unreasonable for Debtor to have claimed the California bankruptcy-like set of

21 exemptions under C.C.P. § 703.140(b), inducing Trustee to have litigated in contested

22 evidentiary proceedings this claimed set of exemptions, only to have Debtor switch his

23 claim of exemptions after not getting the result he wanted in this litigation of his C.C.P.

24 § 703.140(b) bankruptcy-like exemption claims and then claiming a different set of

25 exemptions under the regular California nonbankruptcy set of exemptions of C.C.P.

26 § 704.

27          Trustee would not have had to incur considerable administrative expense in

28 litigating Debtor's exemption claims under the California bankruptcy-like set of

-22-

1    exemptions of C.C.P. § 703.140(b) if Debtor had chosen to claim the regular California

2    nonbankruptcy set of exemptions of C.C.P. 704 in the first instance.  Trustee would not

3    have sold the Hawaiian Avenue property if Debtor had claimed a homestead exemption

4    under C.C.P. § 704 because there would have been no realizable net equity for the

5    estate to pay creditors accounting for Debtor's homestead exemption.  Because Debtor

6    had not claimed any homestead exemption under his various amended bankruptcy

7    schedules at the time that Trustee filed the application to employ the real estate broker

8    and the motion to sell the Hawaiian Avenue property, Trustee believed that the sale

9    would bring in net sales proceeds of around $67,000 to pay creditors, which is $8,000

10   less than Debtor's $75,000 homestead exemption.  *See, Declaration of Aaron Juarez,*

11   ECF 61 at ¶ 6, filed on March 9, 2016, *Trustee's Trial Exhibit 17*.  The evidence shows

12   that at the meeting of creditors on December 15, 2015, Trustee told Debtor that he could

13   either keep through exemptions the Commissions or the Hawaiian Avenue property, but

14   not both, and Debtor consciously and conspicuously chose the former, the Commissions,

15   as indicated by Trustee's testimony regarding the first meeting of creditors and Debtor's

16   pleadings opposing Trustee's turnover motion for the Commissions in the adversary

17   proceeding and Trustee's motion objecting to Debtor's claimed exemptions pursuant to

18   C.C.P. §703.140(b) on his February 4, 2016 amended schedules and Debtor's continued

19   possession of the Commissions of $20,200 he previously claimed as exempt under

20   C.C.P. § 703.140(b), which exceeds the amount of $7,625 of the Commissions which he

21   now claims as exempt under C.C.P. § 704.060(a)(1).

22       **B.  Equitable Estoppel**

23       Under California law, five elements must be present for the doctrine of equitable

24   estoppel to apply:

25       (a)  a representation or concealment of material facts;
         (b)  made with knowledge, actual or virtual, of the facts;
26       (c)  to a party ignorant, actually and permissibly, of the truth;
         (d)  with the intention, actual or virtual, that the ignorant party act on it; and
27       (e)  that party was induced to act on it.

28

1  *Simmons v. Ghaderi*, 44 Cal.4th 570, 584 (2008) (citing 13 Witkin, *Summary of California*

2  *Law, Equity*, § 191 at 527-528 (10th ed. 2005)); *accord In re Lua*, 692 Fed. Appx. 851,

3  852 (9th Cir. 2017) (citing *Behnke v. State Farm General Insurance Co.,* 196 Cal.App.4th

4  1443, 1462 (2011)).  "Estoppel will not be found unless all elements are satisfied."  *In re*

5  *Lua*, 692 Fed. Appx. at 852 (citing *Moore v. State Board of Control,* 112 Cal.App.4th 371,

6  384 (2003)).  As the party asserting equitable estoppel, Trustee has the burden of proof.

7  *Busching v. Superior Court*, 12 Cal.3d 44, 53 (1974) ("Unless the record affirmatively

8  discloses the existence of a sufficient excuse or the basis of an estoppel, the burden

9  rests on plaintiff to prove it.") (citations omitted).  The court finds that Trustee has met the

10  burden of proof by a preponderance of the evidence that equitable estoppel applies to

11  this case.

12                    **1.    Representation or Concealment of Material Fact**

13        The party against whom equitable estoppel is sought must have represented or

14  concealed a material fact.  *Simmons v. Ghaderi*, 44 Cal.4th at 584; *see also In re Lua*,

15  692 Fed. Appx. at 852 (citing *Behnke v. State Farm General Insurance Co.,* 196

16  Cal.App.4th at 1462).  For this purpose, the court finds that Debtor's bankruptcy

17  schedules filed on October 5, 2015, December 14, 2015, and February 4, 2016 claiming

18  the California bankruptcy-like exemptions of C.C.P. § 703.140(b), were representations of

19  material fact made by him that he selected this set of exemptions rather than the

20  alternate set of regular California nonbankruptcy exemptions of C.C.P. § 704.  The court

21  finds that in addition to the representations by Debtor in these bankruptcy schedules to

22  the court, Trustee, and creditors (that he had elected personal property exemptions

23  pursuant to the bankruptcy-like exemptions of C.C.P. § 703.140(b)), Debtor also made

24  specific representations to Trustee in the form of statements made under oath directly

25  from Debtor to Trustee at the meeting of creditors, which constitute representations to

26  Trustee for equitable estoppel purposes.  For example, at Debtor's December 15, 2015

27  meeting of creditors, Debtor testified that there were no errors or omissions in his

28  schedules.  Having acknowledged that he had filed the first amended schedules one day

-24-

earlier, which claimed only personal property exemptions under the California

bankruptcy-like set of exemptions of C.C.P. § 703.140(b), Debtor represented to Trustee

that his intentions were truly and accurately reflected in the first amended schedules to

elect personal property exemptions pursuant to C.C.P. § 703.140(b).  In seeking court

approval of the employment applications of counsel and a real estate broker in January

and March 2016, Trustee also communicated to Debtor that if Debtor claimed exemptions

in the Commissions rather than a homestead exemption, Trustee intended to liquidate

the real property for the benefit of the bankruptcy estate and creditors.

Similarly, at the meeting of creditors held on February 24, 2016, Debtor made

additional representations to Trustee when Debtor testified that he had received all of the

Commissions and spent the remaining $20,200 that he had claimed as exempt under the

California bankruptcy-like set of exemptions of C.C.P. § 703.140(b).  The fact that Debtor

told Trustee that his schedules claiming the bankruptcy-like exemptions of C.C.P. §

703.140(b) were still true and accurate in addition to the fact that Debtor spent the money

he claimed as exempt, represented to the Trustee that Debtor was satisfied with his

election of exemptions and had no intention of switching his election from personal

property exemptions under the bankruptcy-like exemptions of C.C.P. § 703.140(b) to the

other statutory set of regular California nonbankruptcy exemptions under C.C.P. § 704.

Thus, Debtor's representations at the meetings of creditors on December 15, 2015 and

February 24, 2016 represented to Trustee that Debtor was only electing personal

property exemptions pursuant to C.C.P. § 703.140(b) and no homestead exemption in

the Hawaiian Avenue property pursuant to C.C.P. § 704.

The court also finds that Debtor's representations made in his written pleadings

and oral arguments in litigation proceedings in this case constitute representations to the

Trustee for equitable estoppel purposes.  As stated previously, on February 3, 2016,

Debtor filed his opposition to Trustee's motion for preliminary injunctive relief for turnover

of the sales commissions in the adversary proceeding, stating that he would turn over

nonexempt funds described as "real estate commissions" less those amounts retained as

1  an exemption pursuant to the Debtor's amended schedules to be filed the next day on

2  February 4, 2016, which claimed exemption in the commissions under C.C.P.

3  § 703.140(b), not C.C.P. § 704, and requesting the court to rule on whether Debtor needs

4  to turn over any remaining funds that he still claims as exempt pending resolution of the

5  adversary proceeding.  *Response to the Trustee's Request for Injunctive Relief*,

6  Adversary Proceeding ECF 14, filed on February 3, 2016 at 2, *Trustee's Request for*

7  *Judicial Notice, Exhibit 4,* ECF 244, filed on January 8, 2018.  In other words, Debtor

8  represented to Trustee in this pleading that he made his choice to claim exemptions of

9  his personal property assets (the sales commissions) pursuant to C.C.P. § 703.140(b)

10  and was defending such choice in opposing Trustee's motion for preliminary injunction for

11  turnover.  Debtor further represented to Trustee in this pleading that he was retaining the

12  sales commission in his possession that he claimed as exempt under C.C.P.

13  § 703.140(b) and that he was asking the court whether he had to turn over the funds that

14  he was so claiming as exempt to Trustee pending litigation of the adversary proceeding.

15          Also, as previously noted, on February 23, 2016, Debtor filed his Opposition to the

16  Trustee's Motion Objecting to the Debtor's Exemption in Personal Property, expressly

17  arguing that Trustee's objection to Debtor's claimed exemptions to the Long Beach

18  Realty assets of $7,625 pursuant to C.C.P. § 703.140(b)(6) and of $21,125.00 pursuant

19  to C.C.P. § 703.140(b)(5) on the second amended schedules should be overruled.

20  *Opposition to the Trustee's Motion Objecting to the Debtor's Exemption in Personal*

21  *Property*, ECF 57, filed and entered on February 23, 2016, *Trustee's Trial Exhibit 121*, at

22  3-4.  Specifically, Debtor argued that it was his right to claim the business cash assets of

23  Long Beach Realty of $7,625.00 as a "tool of the trade" pursuant to C.C.P.

24  § 703.140(b)(6) and that he "should be given the benefit of the doubt in any question as

25  to whether an exemption is legitimately chosen."  *Id.* at 5.  Debtor further argued that

26  Trustee's objection to his claimed personal property asset exemptions in Long Beach

27  Realty should be overruled, which include his claimed exemption under C.C.P.

28  § 703.140(b)(5).  In other words, Debtor represented in this pleading to Trustee that he

1    made a choice of his claimed exemptions in his personal property assets of Long Beach

2    Realty pursuant to the California bankruptcy-like exemptions of C.C.P. § 703.140(b) on

3    the second amended schedules and was defending that choice in opposing Trustee's

4    motion objecting to these exemption claims.

5           As also previously noted, on March 8, 2016, the court held a hearing on Trustee's

6    motion objecting to Debtor's claimed exemptions in the Long Beach Realty personal

7    property assets wherein counsel for the parties, Trustee and Debtor, stated that the

8    parties agreed that $16,054 was not exempt and had to be turned over to Trustee,

9    $20,200 was exempt as claimed by Debtor, the only dispute between the parties was

10   whether Debtor could claim the remaining amount of $8,550 in cash of Long Beach

11   Realty under a "tool of the trade" exemption pursuant to C.C.P. § 703.140(b)(6), and the

12   parties agreed that the court could decide this remaining unresolved claim of exemption

13   of Debtor without further evidentiary hearing.  *Transcript of Hearing re: Motion by the*

14   *Chapter 7 Trustee Objecting to the Debtor's Claimed Exemption for Certain Personal*

15   *Property Assets, March 8, 2016, Trustee's Request for Judicial Notice, Exhibit 11,* ECF

16   244, filed on January 8, 2018.   In other words, at this hearing, Debtor was still

17   representing to Trustee that he was still choosing and litigating his claimed exemptions in

18   his personal property assets of Long Beach Realty pursuant to the California bankruptcy-

19   like set of exemptions of C.C.P. § 703.140(b) on the second amended schedules by

20   continuing his opposition to Trustee's motion objecting to these exemption claims and

21   allowing the court to take the matter under submission because he was still pressing his

22   choice of the personal property exemptions under C.C.P. § 703.140(b).

23          As previously noted, on February 24, 2016, Trustee conducted a second meeting

24   of creditors in this case pursuant to 11 U.S.C. § 341(a) wherein Debtor appeared, was

25   questioned and gave testimony, stating that he received all of the prepetition sales

26   commissions for Long Beach Realty, that after turning over the $16,054 in nonexempt

27   commissions to Trustee as agreed by the parties and ordered by the court and depositing

28   the $8,550 claimed as exempt under the tools of the trade exemption pursuant to C.C.P.

-27-

§ 703.140(b)(6), he had spent the remaining $20,200.00 which he had claimed as exempt under C.C.P. § 703.140(b)(5), which based on the agreement of the parties he was not required to turn over to Trustee. *Avery Motion Declaration,* ECF 96 at 20-21 (document page 19-20), ¶¶ 18-19, Trustee's Request for Judicial Notice, ECF 111, filed on June 20, 2016, Exhibit Z1, *Trustee's Trial Exhibit 126.*

It was not until May 9, 2016, that Debtor filed his further amended Schedule C-Property Claimed as Exempt claiming exemptions under the alternate regular California nonbankruptcy set of exemptions of C.C.P. §§ 704.730 and 704.060(a)(1). Thus, until this date, Debtor's representations to Trustee as reflected in the proceedings in this case, including Debtor's bankruptcy petition and schedules as amended twice on December 15, 2015 and February 4, 2016, Debtor's statements at the meetings of creditors on December 15, 2015 and February 24, 2016 and in Debtor's pleadings in opposition to Trustee's motions for turnover in the adversary proceeding and objecting to Debtor's claimed exemptions of C.C.P. § 703.140(b) on the second amended schedules represented to Trustee that Debtor's choice was to claim personal property exemptions pursuant to C.C.P. § 703.140(b), rather than a homestead exemption in his real property pursuant to C.C.P. § 704.

The court finds that Debtor's representations that he was choosing and litigating his right to claim exemptions in the personal property assets pursuant to the California bankruptcy-like exemptions of C.C.P. § 703.140(b), rather than the regular California nonbankruptcy exemptions of C.C.P. § 704 exemptions, were material. First, Trustee incurred administrative expenses of $131,760.19 in reliance on Debtor's repeated representations during this case in his schedules, his pleadings, and at meetings of creditors and hearings that he was entitled to C.C.P. § 703.140(b) personal property exemptions. *Supplemental Declaration of Wesley H. Avery* attached as exhibit to Trustee's *Reply to the Trial Declaration of Arturo Gonzalez in Support of His Opposition to the Trustee's Objection to the Debtor's Exemption Filed at Docket # 113*, ECF 133, filed on July 29, 2016, at 12-13 ¶¶ 7-8. These administrative expenses consist of

Trustee's costs of litigation in attorneys' fees incurred by him and the bankruptcy estate objecting to Debtor's election of personal property exemptions in excess of the allowable amount under C.C.P. § 703.140(b), the Adversary Proceeding commenced to recover the Commissions that Debtor received and claimed as exempt pursuant to C.C.P. § 703.140(b), and for the sale of the Hawaiian Avenue property.

Second, there is a final non-appealable order from this court holding that Debtor was entitled to claim C.C.P. § 703.140(b) personal property exemptions.  Although the court entered its decision and order after Debtor filed his third amended schedules to change Debtor's election from the bankruptcy-like exemptions of C.C.P. § 703.140(b) to alternate regular nonbankruptcy exemptions of C.C.P. § 704, the court made specific findings of fact supporting the order which Debtor did not appeal.  As previously mentioned, the court determined in its decision and order that Debtor was entitled to exemptions of $400 under C.C.P. § 703.140(b)(6) for Long Beach Realty's business equipment, and $20,200 under C.C.P. § 703.140(b)(5) in Commissions.  In its order, the court required Debtor to turn over to the Trustee $8,550 in disputed sales commissions that the attorney for Debtor was holding pursuant to the turnover order in the Adversary Proceeding.  *Order on Chapter 7 Trustee's Motion Objecting to the Debtor's Claimed Exemption in Certain Personal Property*, ECF 118, filed and entered on July 12, 2016. Debtor's filing of amended schedules changing his claim of exemptions to the regular California nonbankruptcy exemptions of C.C.P. § 704 on May 9, 2016 did not moot Trustee's pending motion objecting to Debtor's claimed exemptions under the bankruptcy-like exemptions of C.C.P. § 703.140(b) because Trustee timely filed a motion objecting to Debtor's amended schedules choosing new exemptions on June 8, 2016, which is this pending litigation.  *See* 11 U.S.C. § 522(l) (providing in pertinent part that unless a party in interest objects, the property claimed as exempt is exempt); Federal Rule of Bankruptcy Procedure 4003(b) (a party in interest has 30 days to object to any amendment of exemption); *Seror v. Kahan (In re Kahan),* 28 F.3d 79, 81-82 (9th Cir. 1994).

1    Third, Debtor's amended homestead exemption, if allowed, would eliminate the

2  amount of equity from the sale of the Hawaiian Avenue property available to pay

3  administrative expenses and claims of creditors of the estate.  If Debtor's $75,000

4  homestead exemption is allowed, there would be no net equity (around $66,804) that

5  Trustee realized from the sale of the Hawaiian Avenue property available to pay

6  administrative expenses of the estate and claims of creditors.  As a result, Trustee would

7  be forced to absorb almost all of the administrative expenses incurred in the case, and

8  there would be no dividend for creditors.  *Supplemental Declaration of Wesley H. Avery*

9  attached as exhibit to Trustee's *Reply to the Trial Declaration of Arturo Gonzalez in*

10  *Support of His Opposition to the Trustee's Objection to the Debtor's Exemption Filed as*

11  *Docket # 113*, ECF 133, filed and entered on July 29, 2016, at page 13 ¶ 8 ("The Estate

12  will be substantially prejudiced by reducing the funds available to pay creditors from

13  $99,136.86 . . . to only $44,804.00 thereby eliminating the Estate's ability to pay even a

14  substantial portion of the administrative claims in full.").

15    Fourth, Debtor's representations that he was claiming the personal property

16  exemptions pursuant to the California bankruptcy-like exemptions of C.C.P. § 703.140(b)

17  were material because he did not file his third amended bankruptcy schedules claiming

18  the alternate exemptions under C.C.P. § 704 for the first time until May 2016 after he was

19  allowed to retain and spend personal property assets based on his claimed C.C.P.

20  § 703.140(b) exemptions and after Trustee was induced to litigate Debtor's choice of the

21  C.C.P. § 703.140(b) exemptions when Trustee sought turnover of the personal property

22  assets claimed as exempt and to sell the Hawaiian Avenue property to realize value for

23  the bankruptcy estate and creditors by retaining counsel and a real estate broker.  The

24  timing of Debtor's representations was material because his exemption elections

25  determined how Trustee administered the bankruptcy estate in this case.  Had Debtor not

26  elected to claim exemptions for the personal property assets in the sales commissions

27  under the bankruptcy-like exemptions of C.C.P. § 703.140(b), not spent those assets,

28  and not engaged in litigation over his right to claim the C.C.P. § 703.140(b) exemptions,

1   Trustee would not have been induced to sell the Hawaiian Avenue property and incur

2   administrative expenses in litigating these exemptions and selling the real property.

3   Trustee stated as follows:

4           I relied on the Debtor's representations in pleadings and declaration that he
        filed with the Court that he was exempting the Commissions . . . .  I had no
5           notice that the Debtor intended to switch exemptions to claim a homestead
        exemption until after I had arranged for the sale of Hawaiian [Avenue], when
6           the Debtor filed the amended schedules on May 9, 2016.  If the Debtor is
        allowed to claim an exception in Hawaiian [Avenue] now, it will substantially
7           and adversely affect and damage the Estate.  The Estate will not be able to pay
        its creditors.

8

9   *Supplemental Declaration of Wesley H. Avery,* attached as exhibit to *Trustee's Reply to*

10  *the Trial Declaration of Arturo Gonzalez in Support of His Opposition to the Trustee's*

11  *Objection to the Debtor's Exemption Filed as Docket # 113*, ECF 133, filed on July 29,

12  2016, at 12, ¶ 6.

13          Accordingly, the court determines that Trustee has proven by a preponderance of

14  the evidence that the first element of equitable estoppel, representation or concealment

15  of material fact, is met.

16                  **2.  Made with Knowledge of the Materiality of Debtor's Acts**

17          The party against whom estoppel is sought must have had knowledge of the facts.

18  *Simmons v. Ghaderi*, 44 Cal.4th at 584; *accord In re Lua*, 692 Fed. Appx. at 852 (citing

19  *Behnke v. State Farm General Insurance Co.,* 196 Cal.App.4th at 1462).

20          In this case, Trustee testified that he informed Debtor at the meeting of creditors

21  on December 15, 2015 that Debtor was only entitled to choose exemptions under C.C.P.

22  § 703 or § 704, but not both.  *Avery Motion Declaration,* ECF 96 at 14-15, ¶ 6, *Trustee's*

23  *Request for Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial*

24  *Exhibit 126.*  The court finds this testimony to be credible, and this testimony is not

25  disputed by Debtor.  Thus, Debtor was aware of his exemption rights under both sets of

26  exemptions under C.C.P. § 703.140(b) and § 704 and was being represented by counsel

27  throughout most of the proceedings in this case relevant to his claims of exemptions.

28  This indicates that Debtor's prior personal property exemption elections under the

1   bankruptcy-like set of exemptions of C.C.P. § 703.140(b) were made with knowledge of

2   the facts and with the intent to keep and use his sales commissions and other Long

3   Beach Realty assets through these exemption elections.  Debtor stated to his attorney

4   through email communications on January 29, 2016 after the initial meeting of creditors,

5   "By the way, I am curious, when I went to the hearing the Trustee said, let's make a deal

6   because I couldn't keep both the home and the money from the corporation.  My

7   understanding was that I had to let go of 1."  *Email Communications attached to Debtor's*

8   *Trial Exhibit A, Debtor's Trial Sub-Exhibit A*.  Considering the circumstances in this case,

9   the court determines that Debtor was talking about his choice of exemptions as to the

10  Hawaiian Avenue real property and the personal property sales commissions that he had

11  claimed as exempt the day before the meeting of creditors on December 15, 2015.  This

12  statement shows that Debtor was aware that Debtor had to make a choice between

13  exempting the personal property sales commissions or the Hawaiian Avenue real

14  property, thus corroborating Trustee's testimony recounting that Trustee had informed

15  Debtor of this choice of exemptions at the December 15, 2015 meeting of creditors.

16  Thus, Debtor was aware of the materiality of the representations that he made by electing

17  personal property exemptions pursuant to the bankruptcy-like set of exemptions of C.C.P.

18  § 703.140 and electing not to claim a homestead exemption under the regular

19  nonbankruptcy set of exemptions of C.C.P. § 704.

20       Furthermore, Debtor testified at the further meeting of creditors on February 24,

21  2016 that he had received the funds from the personal property sales commissions and

22  spent these funds in the amount of $20,200 which he had claimed as exempt pursuant to

23  C.C.P. § 703.140(b).  *Avery Motion Declaration,* ECF 96 at 21 (document page 20), ¶ 19,

24  *Trustee's Request for Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1,*

25  *Trustee's Trial Exhibit 126.*  At this time, as reflected on his bankruptcy schedules as

26  amended and in his representations to Trustee in his pleadings filed in this case, in his

27  testimony at the meetings of creditors and in his arguments at hearing in this case,

28  Debtor chose not to claim a homestead exemption or any other exemption pursuant to

1    C.C.P. § 704.  Rather, Debtor knowingly and strategically elected an exemption pursuant

2    to the bankruptcy-like exemptions of C.C.P. § 703.140(b) in order to keep the sales

3    commissions and other Long Beach Realty assets for himself, namely because Debtor

4    had already spent the money from the sales commissions, or had planned to do so, prior

5    to his filing the first amended schedules on December 14, 2015, Debtor's First Amended

6    Schedule B-Personal Property and Amended Schedule C-Property Claimed as Exempt,

7    when he first disclosed additional sales commissions on his amended bankruptcy

8    documents on December 14, 2015 (i.e., the Oceanside and Banning sales commissions

9    not previously disclosed) and being examined by Trustee and creditors at the first

10    meeting of creditors on December 15, 2015.

11        Accordingly, the court determines that Trustee has proven by a preponderance of

12    the evidence that the second element of equitable estoppel, made with knowledge of the

13    facts, is met.

14                **3.  To a Party Ignorant of the Truth**

15        To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

16    Trustee was "ignorant, actually and permissibly, of the truth."  *Simmons v. Ghaderi*, 44

17    Cal.4th at 584; *accord In re Lua*, 692 Fed. Appx. at 852 (citing *Behnke v. State Farm*

18    *General Insurance Co.,* 196 Cal.App.4th at 1462).  In this case, Trustee filed an objection

19    to Debtor's exemptions claimed pursuant to C.C.P. § 703.140(b) and also filed an

20    adversary proceeding against Debtor contesting Debtor's personal property exemptions

21    claimed pursuant to C.C.P. § 703.140(b).  The evidence indicates that at no time before

22    the filing of Debtor's third amended schedules in May 2016 was Trustee made aware of

23    Debtor's intention to claim a homestead exemption under C.C.P. § 704.  *Avery Motion*

24    *Declaration,* ECF 96 at 20-21 (document pages 19-20), ¶¶ 22-24, *Trustee's Request for*

25    *Judicial Notice,* ECF 111, filed on June 20, 2016, *Exhibit Z1, Trustee's Trial Exhibit 126.*

26    The court finds this testimony of Trustee to be credible and corroborated by Debtor's

27    repeated arguments in opposition to Trustee's objections to Debtor's elections of

28    exemptions pursuant to C.C.P. § 703.140(b).

1      Trustee was ignorant of Debtor's intent to change his elections to claim a

2  homestead exemption because Debtor repeatedly asserted his right to claim personal

3  property exemptions pursuant to the bankruptcy-like set of exemptions of C.C.P.

4  § 703.140(b) that Debtor chose on his petition and bankruptcy schedules, in his

5  testimony at meetings of creditors, in his pleadings and oral arguments in litigation

6  proceedings in this case.  *Avery Motion Declaration,* ECF 96 at 15-21 (document pages

7  14-20), ¶¶ 5-19, *Trustee's Request for Judicial Notice,* ECF 111, filed on June 20, 2016,

8  *Exhibit Z1, Trustee's Trial Exhibit 126.*  On January 15, 2016, in his application to employ

9  Brett Curlee as counsel, Trustee referenced Debtor's assertion to claim personal property

10  exemptions pursuant to C.C.P. § 703.  *Application of the Chapter 7 Trustee to Employ*

11  *the Law Offices of Brett Curlee as of 1/11/2016 as Counsel to the Chapter 7 Trustee,*

12  ECF 29 at 2, ¶ 4, *Trustee's Trial Exhibit 18* ("The Debtor claimed a California Code of

13  Civil Procedure § 703.140(b)(5) exemption of $10,600.00 in the value of the bank

14  account and in the accounts receivable.").  On February 3, 2016, Debtor filed his

15  opposition to Trustee's motion for preliminary injunction and turnover of the sales

16  commissions, asserting that Debtor was still claiming the C.C.P. § 703.140(b) exemptions

17  as would be indicated on Debtor's amended schedules to be filed the day afterwards on

18  February 4, 2016, that Debtor would only turn over assets not exempt under those

19  exemptions and that Debtor requested the court to rule on whether he (Debtor) had to

20  turn over to Trustee the remaining funds that Debtor was claiming as exempt pursuant to

21  C.C.P. § 703.140(b) as claimed on his further amended schedules.  On February 10,

22  2016, Trustee in his reply to this pleading acknowledged Debtor's right to some

23  exemption under C.C.P. § 703.140(b) but objected to any amount over $20,200 pursuant

24  to C.C.P. § 703.140(b)(5).  On February 11, 2016, Trustee filed his motion specifically

25  objecting to Debtor's claimed personal property exemptions pursuant to C.C.P.

26  § 703.140(b), arguing that the exemption is limited to $20,200 while the balance of

27  $24,103 should be turned over to Trustee for the benefit of the estate.  On February 17,

28  2016, at the hearing on Trustee's motion for preliminary injunction and turnover, Debtor

1  and Trustee agreed that of the $44,804 of sales commissions listed on the amended

2  schedules filed on February 4, 2016, $16,054 was not exempt and should be turned over

3  to Trustee, $20,200 would not be required to be turned over based on Debtor's claimed

4  exemption pursuant to C.C.P. § 703.140(b)(5) claimed on the amended schedules filed

5  on February 4, 2016, and the amount of $8,550 claimed as exempt on the amended

6  schedules pursuant to the "tools of the trade" under C.C.P. § 703.140(b)(6) remained in

7  dispute, but Altman as counsel for Debtor would hold such funds pending further order of

8  the court.  On February 23, 2016, Debtor filed an opposition to Trustee's motion objecting

9  to his claimed personal property exemptions under C.C.P. § 703.140(b), arguing that he

10  had the right to claim an additional personal property exemption in $8,550 of the sales

11  commissions as a "tool of the trade" pursuant to C.C.P. § 703.140(b)(6) because he

12  needed cash to run his business, and that the court should overrule Trustee's objections

13  to the claimed exemptions under C.C.P. § 703.140(b) in the motion.  *Debtor's Opposition*

14  *to Trustee's Motion Objecting to the Debtor's Exemption in Personal Property Exemption*,

15  ECF 57, filed on February 23, 2016, *Trustee's Trial Exhibit 12*.  As Debtor further argued

16  in this pleading referring to the claimed "tools of the trade" personal property exemption

17  pursuant to C.C.P. § 703.140(b)(6), the court should not disturb his choice of exemptions

18  because "Debtor should be given the benefit of the doubt in any question as to whether

19  an exemption is legitimately chose[n]." *Id.* at 5, *Trustee's Trial Exhibit 12*.

20      At the meeting of creditors conducted by Trustee on February 24, 2016, Debtor

21  testified that he received all the sales commissions that he previously listed as contingent

22  and that he already spent the $20,200 in commissions that he claimed as exempt

23  pursuant to C.C.P. § 703.140(b)(5) that Trustee previously agreed that Debtor did not

24  have to turn over.  At the evidentiary hearing on Trustee's motion objecting to Debtor's

25  claimed personal property exemptions under C.C.P. § 703.140(b) on March 8, 2016,

26  based on their agreement at the hearing on February 17, 2016, Debtor and Trustee

27  agreed that $16,054 of the sales commissions was not exempt and had to be turned

28  over, $20,200 was exempt as Debtor claimed on his amended schedules filed on

February 4, 2016 pursuant to C.C.P. § 703.140(b)(5) and that the balance of $8,550 claimed as exempt under the "tools of the trade" exemption of C.C.P. § 703.140(b)(6) remained in dispute, for which Debtor requested the court to issue findings of fact and conclusions of law on this exemption, which the court did on July 12, 2016.

Debtor never claimed any exemption under the regular California nonbankruptcy set of exemptions of C.C.P. § 704 or a homestead exemption until he filed his further amended schedules on May 9, 2016, eight months after Debtor filed his bankruptcy petition and original schedules on October 5, 2015.  As described above, in the eight months before Debtor changed his exemption election to the regular California nonbankruptcy exemptions of C.C.P. § 704, Trustee and Debtor litigated Debtor's rights to claim the alternate bankruptcy-like exemptions of C.C.P. § 703.140(b) in Trustee's adversary proceeding for turnover of the personal property sales commissions and on Trustee's motion objecting to the C.C.P. § 703.140(b) exemptions in personal property assets to conclusion, and Trustee filed a motion to employ a real estate agent to sell the Hawaiian Avenue property.  As evidenced by these litigation proceedings in this case regarding Debtor's election of personal property exemptions under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b), Trustee's objections thereto, and Trustee's Adversary Proceeding for turnover of the sales commissions, Debtor was aware that he had elected personal property exemptions under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b) rather than a homestead exemption under the regular California nonbankruptcy exemptions of C.C.P. § 704.  As the evidence indicates, Debtor knew that he could not elect both sets of exemptions, and Debtor failed to give Trustee any reason to anticipate or believe that Debtor intended to retract his election of the personal property exemptions under C.C.P. § 703.140(b).

Accordingly, the court determines that Trustee has proven by a preponderance of the evidence that the third element of equitable estoppel, to a party ignorant of the truth, is met.

**4.  With the Intention That the Ignorant Party Act on It**

To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

Debtor made a representation "with the intention, actual or virtual, that the ignorant party

act on it."  *Simmons v. Ghaderi*, 44 Cal.4th at 584; *accord In re Lua*, 692 Fed. Appx. at

852 (citing *Behnke v. State Farm General Insurance Co.,* 196 Cal.App.4th at 1462).

Although equitable estoppel requires a finding of intent, Trustee need not prove that the

debtor intended to deceive him to create an equitable estoppel:

> To create an equitable estoppel, it is enough if the party has been induced
> to refrain from using such means or taking such action as lay in his power,
> by which he might have retrieved his position and saved himself from loss.
> . . . Where the delay in commencing action is induced by the conduct of the
> defendant it cannot be availed of by him as defense.

*Lantzy v. Centex Homes*, 31 Cal.4th 363, 384 (2003) (quoting *Vu v. Prudential Property &*

*Casualty Insurance Company*, 26 Cal.4th 1142, 1152-1153 (2001)); *accord In re Lua*, 529

B.R. at 777.  An "estoppel may arise although there was no designed fraud on the part of

the person sought to be estopped."  *Lantzy v. Centex Homes*, 31 Cal.4th at 384 (quoting

*Vu v. Prudential Property & Casualty Insurance Company*, 26 Cal.4th at 1152); *see also*

*Crestline Mobile Homes Manufacturing Co. v. Pacific Finance Corp.*, 54 Cal.2d 773, 778-

779 (1960) ("Negligence that is careless and culpable conduct is, as a matter of law,

equivalent to an intent to deceive and will satisfy the element of fraud necessary to an

estoppel.").  Silence may be used as evidence of fraudulent intent.  *In re Lua*, 529 B.R. at

777 (citing *R.D. Reeder Lathing Company, Inc. v. Allen*, 66 Cal.2d 373, 378 (1967)).

The preponderance of the evidence shows that Debtor intended to induce Trustee

to rely on his personal property exemption elections under the bankruptcy-like set of

exemptions of C.C.P. § 703.140(b) when he filed three different Schedule Cs electing

C.C.P. § 703.140(b) exemptions on October 5, 2015, December 14, 2015 and February

4, 2016.  The preponderance of the evidence also shows that Debtor intended that the

Trustee act on these representations made by opposing and litigating his claim that he

was entitled to the remaining Commissions in dispute under the "tool of the trade

exemption" of C.C.P. § 703.140(b)(6).  The court finds that Debtor also intended that

1  Trustee act on these representations because Debtor had already spent the amount of

2  $20,200 in the Commissions that he received and claimed were exempt under the

3  bankruptcy-like set of exemptions of C.C.P. § 703.140(b) and induced Trustee to agree

4  that these funds were so exempt.  This evidence shows that Debtor intended that Trustee

5  act on his representations that he was claiming personal property exemptions under

6  C.C.P. § 703.140(b) to concede Debtor's right to an exemption in the value of the

7  Commissions of $20,200 in value and to have to object to the remaining amount not

8  exempt, and to sell the Hawaiian Avenue property for the benefit of the estate.

9      It was inequitable for Debtor to repeatedly claim personal property exemptions

10 under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b), inducing Trustee to

11 litigate them to judgment, then for Debtor to claim a different set of exemptions under the

12 regular California nonbankruptcy set of exemptions of C.C.P. § 704 for a homestead

13 exemption, after litigating the first set of exemptions and not getting the results he wanted.

14 Debtor's actions resulted in Trustee incurring additional administrative expenses in

15 litigation and in the administrative insolvency of the estate since there would have been

16 insufficient assets to cover such expenses.

17     Accordingly, the court determines that Trustee has proven by a preponderance of

18 the evidence that the fourth element of equitable estoppel, with the intention that the

19 ignorant party act on it, is met.

20          **5.  That Party Was Induced to Act on it**

21     To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

22 Debtor made a representation on which "that party [i.e., the ignorant or other party] was

23 induced to act."  *Simmons v. Ghaderi*, 44 Cal.4th at 584; *accord In re Lua*, 692 Fed.

24 Appx. at 852 (citing *Behnke v. State Farm General Insurance Co.*, 196 Cal.App.4th at

25 1462).  This element of reliance requires that Trustee change his position in reliance on

26 something said or done by Debtor, resulting in detriment or prejudice to Trustee. *State*

27 *Compensation Insurance Fund v. Workers' Compensation Appeals Board*, 40 Cal.3d 5,

28 15 (1985).

1    As previously discussed, Trustee was unaware that Debtor would amend his

2  schedules to elect exemptions under a different set of exemptions and claim a

3  homestead exemption.  Debtor was aware of Trustee's intent to sell the Hawaiian Avenue

4  property from January 15, 2016 when Trustee filed his application to employ the Law

5  Offices of Brett Curlee for the specific purpose of evaluating the equity and value of the

6  Hawaiian Avenue property.  *Application of the Chapter 7 Trustee to Employ the Law*

7  *Offices of Brett Curlee as of 1/11/2016 as Counsel to the Chapter 7 Trustee,* ECF 29 at

8  3-5, ¶¶ 6-7, *Trustee's Trial Exhibit 18*.  Trustee specifically stated in the Application that

9  "Trustee is informed and believes that there may be equity available in the Wilmington

10  Property [i.e., the Hawaiian Avenue property] that he can administer. . . . The Trustee

11  therefore intends to administer the real property of the Debtor, including but not limited to,

12  Wilmington and the assets of Long Beach Realty, Inc."  *Id.*  Debtor did not file an

13  objection to Trustee's application to employ counsel for these purposes.

14    Debtor repeatedly elected to exempt the Commissions under the personal

15  property exemptions under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b)

16  and concededly spent some of this money based on these exemptions.  Relying on

17  Debtor's representations claiming personal property exemptions and actions spending

18  money only exempt under the personal property exemptions, Trustee was induced to

19  believe that he could administer the bankruptcy estate by selling the Hawaiian Avenue

20  property, not claimed as exempt, which would bring into the estate around $66,000 in net

21  equity ($9,000 less than Debtor's claimed homestead exemption).  Trustee would not

22  have incurred administrative expense in selling the Hawaiian Avenue property if Debtor

23  had initially claimed a homestead exemption because the homestead exemption would

24  have wiped out any equity for the estate (and would have administered the Commissions

25  instead).  Thus, Trustee relied on Debtor's repeated representations that he was electing

26  personal property exemptions under the bankruptcy-like set of exemptions of C.C.P.

27  § 703.140(b), inducing him to incur significant administrative expenses, including $91,000

28

for litigation of Debtor's C.C.P. § 703.140(b) exemptions and turnover of the Commissions and for the sale of the Hawaiian Avenue property.

Debtor's argument in opposition to application of equitable estoppel here is that the change in election of exemptions was part of a good faith legal strategy in support of his motion to convert the case to one under Chapter 13 of the Bankruptcy Code. *Debtor's Opposition to the Objection of the Chapter 7 Trustee to the Debtor's Claimed Homestead Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington, CA*, ECF 113, filed on June 24, 2016, at 4-8. Debtor argues that as to the second and third equitable estoppel factors of knowledge of the fact that Trustee had the superior knowledge because Trustee conducted the sale of the property "with the knowledge that the Debtor's Motion to Convert was still in play." *Id.* at 5. Debtor further argues that "[i]f approved, the Motion to Convert would supersede and obviate the sale," and "[t]he Trustee knew this was in play and should not have relied upon his own prognostication as to the results of the Motion to Convert." *Id.* This argument lacks merit since the evidence indicates, as discussed above, that Trustee was induced to litigate Debtor's personal property exemption claims under the bankruptcy-like set of exemptions of C.C.P. § 703.140(b) regardless of the pending motion to convert, which Trustee was also forced to litigate at great expense to the estate and which lacked merit since Debtor did not offer admissible and credible evidence of eligibility to convert to Chapter 13 based on regular income. *See Memorandum Decision and Order Denying Debtor's Motion to Convert Case,* ECF 127, filed and entered on July 19, 2016. Until Debtor's motion to convert was litigated and determined by the court, the parties asserted their respective positions on Debtor's claimed exemptions as described herein, which was irrespective of the outcome of the motion to convert and does not change the court's analysis of Trustee's equitable estoppel claim.

Accordingly, the court determines that Trustee has proven by a preponderance of the evidence that the fifth element of equitable estoppel, that the other party was induced to act, is met.

**C.  The Impact of *In re Lua***

On June 27, 2017, the United States Court of Appeals for the Ninth Circuit filed its opinion in *In re Lua*, 692 Fed. Appx. 851 (9th Cir. 2017), which reversed the district court's order affirming the bankruptcy court's order sustaining the objection of the Chapter 7 trustee to the bankruptcy debtor's claimed homestead exemption.  *In re Lua*, 692 Fed. Appx. 851 (9th Cir. 2017) (unpublished opinion), *reversing* 551 B.R. 448 (C.D. Cal. 2015), *affirming* 529 B.R. 766 (Bankr. C.D. Cal. 2015).

In *In re Lua*, the debtor, a married woman, filed a Chapter 7 bankruptcy case for herself, listing on her original bankruptcy schedules a 30% interest in the real property where she and her husband resided and a $75,000 homestead exemption in the property pursuant to C.C.P. § 704.730(a)(1).  *In re Lua*, 529 B.R. 766, 768 (Bankr. C.D. Cal. 2015).  The debtor in *Lua* later filed her first amended bankruptcy schedules, removing her claimed homestead exemption, indicating that she had no interest in the property, other than such community property interest that may exist for purposes of a divorce action, and stating that the property was owned by her husband and two other family members.  *Id.* at 769.  Thus, instead of claiming a homestead exemption in property that she then asserted she did not own, the debtor claimed exemptions in additional personal property assets pursuant to C.C.P. § 702.140.  After the Chapter 7 trustee investigated the property and after the debtor deleted her homestead exemption, the trustee concluded that Debtor's interest in the property could be monetized through a settlement with the debtor's husband regarding the possible interest that Debtor had in the property, which would be property of the estate, and the trustee retained counsel to negotiate a settlement or pursue litigation with the husband.  *Id.*   Eventually, after litigation, the trustee and the debtor's husband reached a settlement to sell the property to pay all unsecured creditors in full and to divide the sales proceeds equally between the husband and the bankruptcy estate after payment of liens, property taxes and costs of sale.  *Id.* at 770.  After the trustee incurred costs to retain counsel and establish the estate's interest in the property and to retain a broker to sell the property, the debtor filed second

-41-

amended bankruptcy schedules, again claiming a community property interest in the

property and a homestead exemption in the property pursuant to C.C.P. § 704.730.  *Id.* at

771.  The trustee objected to Debtor's claimed homestead exemption, asserting bad faith,

estoppel, and laches, and the bankruptcy court held that the debtor was equitably

estopped from reasserting her homestead exemption because the trustee detrimentally

relied upon her representations in her first amended bankruptcy schedules that she was

not claiming any homestead exemption in incurring litigation and other costs in

administering the estate.  *Id.* at 775-779.  The district court affirmed the bankruptcy

court's decision.  *In re Lua,* 551 B.R. 448 (C.D. Cal. 2015).  However, on further appeal,

the Ninth Circuit reversed, holding that the debtor was not equitably estoppel from

claiming a homestead exemption in the property based on her failure to claim an

exemption in her first amended bankruptcy schedules.  *In re Lua,* 692 Fed. Appx. at 852-

853.

     In holding that the debtor in *Lua* was not equitably estopped from claiming a

homestead exemption, the Ninth Circuit explained that (1) the debtor's first amended

bankruptcy schedules could not form the basis of an estoppel because the schedules set

forth all the existing facts known to her and that the same facts were readily available to

the trustee who was thus fully aware of these facts because "where the person pleading

estoppel had knowledge of the facts, there is no reliance," 692 Fed. Appx. at 652 (quoting

*Sidebotham v. Robison,* 216 F.2d 816, 829 (9th Cir. 1954)); and (2) nothing in the

debtor's first amended schedules could be deemed a representation by her that she

would not amend her exemptions again if circumstances had changed, and the

circumstances changed when the bankruptcy court entered an order determining that the

property was community property despite title being in the name of the debtor's husband

and two other relatives, and not in the debtor's name, 692 Fed. Appx. at 652-653.  The

existing facts then known to the debtor in *Lua* referred to her stated understanding that

the property was not hers since title was held in her husband and two other relatives, and

thus she would not be claiming a homestead exemption if she did not own an interest in

-42-

the property.  *In re Lua,* 529 B.R. at 769.  The circumstances changed when the

bankruptcy court entered an order in the case determining that the debtor in *Lua* did have

a community interest in the property, and thus she could claim a homestead exemption in

the property.  *Id.,* 529 B.R. at 770; *see also In re Lua,* 692 Fed. Appx. at 853.

The facts in the present case are distinguishable from those in *Lua* for a number of

reasons.  In *Lua,* as the Ninth Circuit observed, the debtor's representations on her first

amended bankruptcy schedules that she was not claiming a homestead exemption by

themselves cannot form the basis of an estoppel because the schedules set forth facts

that were readily available to the trustee in that case, and the trustee was fully aware of

them.  692 Fed. Appx. at 852.  In contrast, in this case, Debtor's representations on his

various bankruptcy schedules that he was claiming only personal property exemptions

under the bankruptcy-like set of exemptions of C.C.P. § 730.140(b) did not set forth the

facts that he would be claiming the alternative regular California nonbankruptcy

exemptions, including a homestead exemption, under C.C.P. § 704, that would be readily

available to Trustee, so that Trustee would have been fully aware of the true facts.  In this

case, Debtor repeatedly represented on his original, first, and second amended

bankruptcy schedules that he was claiming only the personal property exemptions of the

bankruptcy-like set of exemptions of C.C.P. § 703.140(b).  Debtor testified under oath at

the continued meeting of creditors on December 15, 2015 that his statements on his

original and amended bankruptcy schedules were true and correct, including his claim of

the personal property exemptions under C.C.P. § 703.140(b), even though Trustee

advised Debtor that he could use either the personal property exemptions under the

bankruptcy-like exemptions of C.C.P. § 703.140(b) or the alternative exemptions,

including a homestead exemption, under regular California nonbankruptcy exemptions of

C.C.P. § 704, but not both.  Similarly, Debtor or his counsel also made statements in

contested litigation regarding Trustee's adversary complaint for turnover of personal

property assets, monies from Debtor's real estate sales commissions, which complaint

Debtor expressly opposed on grounds that he claimed exemptions in these personal

-43-

property assets under the bankruptcy-like exemptions of C.C.P. § 703.140(b).  In

contesting Trustee's motion for preliminary injunction for turnover of personal property

assets, Debtor argued that these assets should not be turned over to Trustee because

Debtor had a valid claim of exemption in these assets under C.C.P. § 703.140(b), and

based on such arguments, the court denied Trustee's motion in part because Debtor had

a valid claim of exemption to these assets under C.C.P. § 703.140(b) and allowed Debtor

to retain these assets, i.e., monies from real estate sales commissions in the amount of

$20,200, pursuant to this claim of exemption under C.C.P. § 703.140(b).  Debtor still

retains possession of these personal property assets of monies in the amount of $20,200,

which he was allowed to retain pursuant to his claim of exemption under the bankruptcy-

like exemptions of C.C.P. § 703.140(b), even though his amended claim of exemption

under the alternate regular California nonbankruptcy exemptions of C.C.P. § 704 does

not allow him to retain the entire amount.   Debtor, in numerous pleadings, asserted his

right to the exemptions that he claimed under C.C.P. § 703.140(b), which assertion was

to the exclusion of the alternative exemptions under C.C.P. § 704, and Trustee was

ignorant of the truth, a fact corroborated by Trustee's continued litigation against Debtor

based on Debtor's claimed personal property exemptions under C.C.P. § 703.140(b) in

Trustee's adversary proceeding for turnover and in Trustee's contested matter on his

motion objecting to Debtor's claimed personal property exemptions pursuant to C.C.P.

§ 704.140(b).  Thus, unlike in *Lua,* where the debtor only amended schedules without

litigating her right to choose certain exemptions, Debtor in this case litigated his choice of

the bankruptcy-like exemptions of C.C.P. § 703.140(b) to a final, nonappealable order,

which was not rendered moot by his amending his exemptions after litigating his original

choice of exemptions.

In *Lua,* the Ninth Circuit also held that "nothing in Lua's First Amended Schedules

can be deemed a representation by Lua that she would not amend her exemptions again

if circumstances changed."  692 Fed. Appx. at 853.  Here, in this case, Debtor knowingly

and affirmatively represented to Trustee in litigation proceedings between them, and not

1  just on Debtor's schedules, that Debtor had chosen the exemptions under the set of

2  bankruptcy-like exemptions of C.C.P. § 703.140(b) and not chosen the alternate regular

3  California nonbankruptcy exemptions of C.C.P. § 704 as discussed above, and litigated

4  his choice of exemptions in contested litigation proceedings to a final, nonappealable

5  order, and Trustee had to litigate Debtor's choice of exemptions in costly contested

6  litigation.  Debtor argues in this case that he should now be allowed to change his

7  exemptions due to changed circumstances: (1) Debtor originally argued that he and his

8  attorney talked about changing his exemptions in April 2016 because Debtor was

9  changing his legal position in the case in seeking a conversion of the case to Chapter 13,

10  Declaration of Arturo Gonzalez, Defendant's Trial Exhibit A; and (2) after, that is, the

11  postpetition increase in real property prices made his choosing different exemptions more

12  advantageous, *Brief,* filed October 3, 2018, ECF 350 at 20.  As discussed below, these

13  circumstances are not proper changed circumstances within the meaning of *In re Lua.*

### D.  Debtor's Arguments in Support of Amended Claim of Homestead Exemption

16      In support of his claim of a homestead exemption as amended and increased to

17  $100,000, and in opposition to Trustee's objection, Debtor filed several versions of his

18  supplemental briefs, which set forth his arguments.  Because it is unclear which of these

19  briefs is the primary one, the court has considered all versions in determining Debtor's

20  arguments.

21      Debtor first argues that creditors in this case knowingly filed time-barred claims,

22  which is against the Bankruptcy Code, and Trustee failed to perform his statutory duties

23  as the Chapter 7 trustee in not objecting to the time-barred creditor claims, which resulted

24  in "damage" to the case.  *Brief,* filed October 3, 2018, ECF 350 at 9-13.  According to

25  Debtor, the bankruptcy estate in this case was solvent as of January 15, 2016.  *Id.* at 12-

26  13.  Because the case proceeded "in error," Debtor argues that the case should be

27  evaluated based on what "any ordinary ethical professional person would have

28  proceeded."  *Id.* at 13.  In support of this argument, Debtor cites to 11 U.S.C. § 704(a)(5)

and the Trustee Handbook.[4]  The statute cited by Debtor, 11 U.S.C. § 704(a)(5), provides

that a Chapter 7 bankruptcy trustee "if a purpose would be served, [shall] examine proofs

of claim and object to the allowance of any claim that is improper."  11 U.S.C.

§ 704(a)(5).  The Handbook for Chapter 7 Trustees states that "Section 704(a)(5)

requires a trustee to examine proofs of claim and object to the allowance of any claim

that is improper."  Handbook for Chapter 7 Trustees at 4-26.  The Handbook for Chapter

7 Trustees further describes the timeframe for reviewing claims as follows: "The claims

review process commences after the trustee is certain that there will be a distribution to

creditors and as soon as possible following the expiration of the bar date for filing claims.

The trustee may not submit the final report (TFR) for a case prior to completion of the

claims examination and determination process."  *Id.*  Also, with respect to timing of review

of claims, the Handbook for Chapter 7 Trustees further states, "The trustee should

perform a second review for new, tardy, amended or assigned claims prior to distribution.

See, especially, section 726(a)(1) regarding tardily filed priority claims.  Tardily filed

claims may be paid under certain circumstances and should not be barred from payment

on that basis alone."  *Id.* at 4-28.

Debtor lists various reasons why he is entitled to a homestead exemption.  *Brief,*

filed October 3, 2018, ECF 350 at 13-14.  Debtor first argues that when he filed his

motion to convert the case to Chapter 13, he had an absolute right to convert the case

under 11 U.S.C. § 706(a), and Trustee denied Debtor his rights to due process in not

allowing Debtor to repay the only valid unsecured claim of $765.76, the general

unsecured claim of the IRS.  *Id.* at 13-14 (citing *Marrama v. Citizens Bank of*

*Massachusetts,* 549 U.S. 365 (2007) and Senate Report 95-989 and House Report 95-

595).  Whether Debtor is entitled to a homestead exemption is not determined here by

whether he had a right to convert his case to Chapter 13.  In this case, Debtor was

---

[4] The "Trustee Handbook" referred to by Debtor is the Handbook for Chapter 7 Trustees issued by the Executive Office of United States Trustees, United States Department of Justice (October 2012 as revised), which is available on the United States Department of Justice website at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials.

1  ineligible for Chapter 13.  As recognized by the Supreme Court in *Marrama v. Citizens*

2  *Bank of Massachusetts,* a Chapter 7 bankruptcy debtor does not have an absolute right

3  under 11 U.S.C. § 706(a) to convert a case to Chapter 13 if he is not eligible for relief

4  under that chapter.  Here, in this case, after an evidentiary hearing on Debtor's motion to

5  convert, the court determined that it could not grant Debtor's motion to convert and

6  denied the motion because Debtor failed to show that he had regular income to make

7  plan payments in a Chapter 13 case and was thus ineligible for Chapter 13.  *See*

8  *Memorandum Decision and Order Denying Debtor's Motion to Convert Case*, ECF 127,

9  filed and entered on June 19, 2016.

10        Debtor then argues that Trustee was barred from proceeding with administering

11  the case in Chapter 7 because filing his motion to convert the case to Chapter 13 is an

12  order for relief under the Bankruptcy Code, 11 U.S.C. § 348(a), citing *In re Alpine Lumber*

13  *and Nursery*, 13 B.R. 977 (Bankr. S.D. Cal. 1981) and *Anderson v. Fuentes (In re*

14  *Fuentes)*, No. 6:13-bk-15309-MH Chapter 13 (Bankr. C.D. Cal., order converting case

15  from Chapter 7 to 13, filed and entered on October 10, 2013).  *Brief,* filed October 3,

16  2018, ECF 350 at 15-16.  Debtor quotes language from *In re Alpine Lumber and Nursery*

17  that "Section 348(e) of the Code (11 U.S.C. § 348(e)) provides that conversion of a case

18  under [section] 706, 1112, or 1307 of this title terminates the services of any trustee or

19  examiner that is serving in the case before such conversion."  13 B.R. at 978-979.  In *In*

20  *re Fuentes,* in an order that did not state the reasons for its ruling, the bankruptcy court

21  granted the motion of the debtor to convert the case from Chapter 7 to Chapter 13

22  despite the Chapter 7 trustee's objections that the debtor only sought to convert the case

23  after the trustee took actions to liquidate the debtor's real property that was undervalued

24  on the bankruptcy petition and schedules and a tax refund that was wrongfully utilized by

25  the debtor.  Order on Debtor's Motion to Convert Case under 11 U.S.C. §§ 706(a) or

26  1112(a), *In re Fuentes,* No. 6:13-bk-15309-MH Chapter 13 (Bankr. C.D. Cal., order

27  converting case from Chapter 7 to 13, filed and entered on October 10, 2013); Opposition

28  to Debtor's Motion to Convert Case under 11 U.S.C. Section 706(a); Declaration of Karl

T. Anderson, Chapter 7 Trustee, *In re Fuentes,*   No. 6:13-bk-15309-MH Chapter 13

(Bankr. C.D. Cal., filed on August 21, 2013).

In this case, Debtor argues that whether he was qualified to convert to Chapter 13

"is not the point," but that he was denied due process when Trustee proceeded to collect

his real estate sales commissions before the hearing on the motion to convert the case to

Chapter 13 on March 29, 2016.  According to Debtor, by that time, Trustee would have

seen that there were only filed unsecured claims totaling $765.76. *Id.* at 15.  This

argument lacks merit because Debtor's filing of a motion to convert his case is not an

order for relief within the meaning Section 348 of the Bankruptcy Code, 11 U.S.C.,

because conversion of the case upon a debtor's motion to convert from Chapter 7 to

Chapter 13 pursuant to 11 U.S.C. § 706(a) does not legally occur until a motion to

convert is granted pursuant to Federal Rule of Bankruptcy Procedure 1017(f)(2), which

provides: "Conversion or dismissal under [11 U.S.C.] §§ 706(a) . . . shall be on motion

and filed and served as required by Rule 9013 [of the Federal Rules of Bankruptcy

Procedure]."  *See also* Local Bankruptcy Rule 1017-1(a)(4) ("A debtor must request

conversion under 11 U.S.C. § 706(a) to a case under chapter 11, 12 or 13 by motion

which, unless otherwise ordered by the court, may be granted only after notice of

opportunity to request a hearing to the trustee, attorney for the trustee (if any), United

States trustee, and parties in interest, as provided in LBR 9013-1(o)."); *In re Dipalma,* 94

B.R. 546, 549 (Bankr. N.D. Ill. 1988).  The cases cited by Debtor in support of his

argument (*In re Alpine Lumber and Nursery* and *In re Fuentes*) do not support his

argument because here, in this case, there was no conversion to Chapter 13 because

Debtor's motion to convert was denied.

Debtor further argues that Trustee failed to properly investigate Debtor's financial

affairs as required by 11 U.S.C. § 704, and that had Trustee properly investigated his

financial affairs, Trustee would have found that the filed creditor claims were time-barred,

which Trustee had a duty to object to.  *Brief,* filed October 3, 2018, ECF 350 at 15-17.

According to Debtor, Trustee erred in administering this case because he failed to

1 investigate the time-barred claims and failed to object to these claims.  *Id.*  Debtor thus

2 argues that it was unnecessary for Trustee to administer the case in Chapter 7 to collect

3 the real estate commissions and to sell the residence to realize equity to pay claims,

4 given the small amount of allowable unsecured claims.  *Id.*  Debtor argued, "Debtor

5 should be entitled to a Homestead exemption based on the facts and evidence and the

6 events that occur.  Furthermore, trustee made an error in never objecting to time barred

7 claims and this was the start of beginning unnecessary matters including proceeding with

8 the adversary proceeding as the trustee would have known that he was proceeding

9 unnecessarily as trustee didn't need to worry about secured claims in all there was an

10 unsecured claim[] was $765.76 in an unsecured claim that could have easily been paid

11 off."  *Id.* at 21.

12       According to Debtor, Trustee should have objected to the unsecured claims of

13 Discover Bank and Western Federal Credit Union because their claims for contract were

14 barred by statutes of limitation under state law, and disallowance of these claims would

15 have meant that the only allowed unsecured claim would be the IRS claim for $765.76,

16 which means by Debtor's calculations, the estate would have been solvent, and there

17 would have been no need for Trustee to take action against Debtor to collect the personal

18 property assets in the sales commissions and to sell Debtor's homestead property, and

19 such action by Trustee was in error.  *Id.* at 9-17.

20       In his declaration in support of his supplemental brief filed on September 19, 2018,

21 ECF 340, Trustee addresses this argument of Debtor:

22           22.    The Debtor argues the Trustee should not have continued with

23       litigation after March 21, 2016 because there was only one unsecured claim, the

24       claim of the IRS for $765.56, as of the claims bar date.  Although only one

25       unsecured claim was filed as of March 31, 2016, by the IRS for $765.76, as a

26       result of the Debtor's conduct before the claims bar date, the Trustee incurred

27       $33,400.52 in professional fees and costs as of March 30, 201[6] due to Debtor's

28       refusal to turn over Commissions and $53,768.48 as of June 1, 2016.  Had the

Trustee known that Debtor would attempt to switch his exemptions he would have never agreed to Debtor's exemptions of $20,200 in the Commissions under *C.C.P. § 703.140(b)(5) and (b)(1)* as part of the turnover judgment.

23.  As repeated again and again by the Trustee throughout the course of these proceedings, had Debtor simpl[y] complied with his demand to turn over the Commissions instead of forcing the Trustee to engage in heavy litigation to recover them, there would have been funds to pay creditors 100% on their claims, including, not only the administrative claims of the Trustee and his professionals as of March 31, 2016, but the allowed unsecured claim of the IRS for $765.76 and the allowed FTB [Franchise Tax Board] proof of claim, filed August 18, 2016, which included an allowed unsecured priority claims for $3,926.14 and an allowed unsecured claim of $1,974.03.

24.  Total funds in the Trustee's possession as of March 31, 2016 was $16,054, hardly sufficient to pay $33,400.52 in professional fees and costs as of March 31, 201[6], plus allowed claims of the IRS and the FTB totaling $6,665.93. The Trustee did not receive the other $8,550 until July 22, 2016, when Debtor complied with the order denying his "tools of the trade exemption" [pursuant to C.C.P. § 703.140(b)(6)], which still left the Estate with only $24,604 to pay claims totaling $40,066.45 (presuming attorney fees and costs incurred between March 31, 201[6] and July 18, 2016 are not included).

25.  The Debtor's argument at the hearing that he would have turned over the funds is a matter for speculation.  The facts show the Debtor showed up at the continued 341a creditors meeting on February 24, 2016 and testified that he spent all of the non-exempt pre-bankruptcy Commissions.  All that was left was the $24,604 the Trustee had recovered.

26.  The Court pointed out at the hearing on August  23, 2018 that the FTB did not file its proof of claim until August 19, 2016 and the only allowed proof of claim against the Estate as of the March 21, 2016 claims bar date was the IRS

proof of claim for $765.76.  As a result of Debtor dissipating Commissions and his refusal to cooperate with the Trustee in January of 2016, over 2 months prior to the expiration of the claims bar date, the Trustee was required to proceed with litigation based on unsecured claims listed in Debtor's 'Schedule F-Creditors Holding Unsecured Nonpriority Claims' totaling $97,045, none of which claims were identified as disputed, contingent, or unliquidated prior to the Claims bar date.

27.  The Debtor's argument the FTB had not filed a proof of claim by March 21, 2016 is not persuasive. 'Schedule D-Creditors Holding Secured Claims' shows the FTB held an undisputed unsecured claim for $1,819 and the IRS has an undisputed unsecured claim for $7,966.  [RJN, 2nd Motion, Ex. 1, pp. 45-46]  If there are non-exempt assets available to pay creditor claims, his [i.e., Trustee's] duty is to liquidate Estate assets to pay creditors.  Although the FTB proof of claim was filed in August of 2016, the Estate is no less obligated to honor and pay that proof of claim in accordance with the Bankruptcy Code if sufficient assets are available that can be liquidated to pay that claim.  There is also no case law allowing a chapter 7 trustee to refuse to pay all or part of a proof of claim because he has determined not to pursue non-exempt property or because he chooses not to collect and liquidate assets necessary to pay all the claims when such assets are available as there were here.

28.  What is disingenuous about Debtor's argument, is that he showed up at the February 24, 2016 continued 341a meeting of creditors and stated that all $20,200 of the exempt Commissions he received were spent leaving the Estate with insufficient funds to pay creditors regardless of whether the FTB or IRS claims are counted.  [2nd Motion, Avery Decl., ¶ 20; 1st Motion, Avery Decl., ¶ 19; *See also* 2nd Motion, Declaration of John J. Menchaca, ¶¶ 1-4, Ex "30"]

29.  As a result of Debtor's conduct, he rendered the Estate insolvent at all times during this bankruptcy case.  As of March 31, 2016, the Estate had incurred

1     professional fees and costs totaling $33,400.52, which was for more than the

2     $16,054 the Trustee held on that date or the $24,604 on hand as of July 22, 2016.

3     As of June 1, 2016, the Estate had incurred administrative claims totaled

4     $53,768.48, without including allowed IRS or FTB proofs of claim ver[sus] the

5     estate receiving only $24,604 in funds as of July 22, 2016.  Debtor made his

6     election, received the benefit thereof, and must not be allowed to switch as a result

7     of the damages caused to the Estate.

8 *Avery Declaration, Supplemental Brief of the Chapter 7 Trustee Pursuant to Order of the*

9 *Court Entered September 5, 2018*, ECF 340 at 8-11.

10     In determining whether Debtor has a valid defense to Trustee's equitable estoppel

11 argument based on Trustee's alleged failures of duty under 11 U.S.C. § 704(a)(5) and the

12 Handbook for Chapter 7 Trustees, the evidence supports Trustee's position that he was

13 acting in accordance with his duties under 11 U.S.C. § 704, including 11 U.S.C.

14 § 704(a)(5), and the Handbook for Chapter 7 Trustees.  The evidence indicates that

15 Trustee was acting in performance of his duties under 11 U.S.C. § 704, notably, his duty

16 to collect and reduce to money the property of the estate for which he serves and to close

17 the estate as expeditiously as is compatible with the best interests of parties in interest

18 pursuant to 11 U.S.C. § 704(a)(1).  Trustee examined Debtor at the meeting of creditors

19 on December 15, 2015, at which hearing Debtor testified under oath that his petition and

20 schedules were complete, true, and accurate, including his listing of assets and election

21 of exemptions on his personal property assets pursuant to the bankruptcy-like set of

22 exemptions of C.C.P. § 703.140(b).  However, Trustee learned that as of January 15,

23 2016, Debtor was dissipating funds from sales commissions that he earned prepetition

24 but received postpetition, which were assets of the bankruptcy estate pursuant to 11

25 U.S.C. § 541(a)(1), without Trustee's knowledge and authorization.  Debtor has duties

26 under 11 U.S.C. §§ 521(a)(1), (3) and (4) to completely and accurately list his assets on

27 his bankruptcy schedules, to cooperate with Trustee in the administration of the estate

28 and to surrender estate property and any recorded information relating to estate property,

and Debtor was not complying with those duties because Debtor did not list all of his

prepetition sales commissions on his bankruptcy schedules and was spending and

dissipating these assets.

Trustee's actions to stop Debtor from dissipating the sales commissions were

reasonable and necessary in order for Trustee to comply with his duty to collect and

reduce to money property of the estate in light of his knowledge that the estate had

potential unsecured claims based on Debtor's scheduled unsecured debts of $97,045

listed on his schedules, none of which was listed as unliquidated, contingent or disputed.

Trustee had to act to stop Debtor from dissipating estate assets to protect the interests of

creditors who still had time to file timely proofs of claim because the general claims bar

date was two months later on March 21, 2016.  While it became known later that creditor

claims that were timely filed were far less than the debt that Debtor scheduled on his

petition and schedules, Trustee had no way of knowing that until the claims bar date

passed on March 21, 2016.

Trustee had acted reasonably to request turnover because not all of the

prepetition personal property assets that Debtor possessed and did not turn over to the

estate were claimed as exempt under his claimed personal property exemptions pursuant

to C.C.P. § 703.140(b) on his bankruptcy petition and schedules through March 2016:

(1) Debtor on his petition and schedules filed on October 5, 2015 claimed only a $11,000

exemption in Long Beach Realty assets (including the $9,500.00 commission from the W

L Street sale) pursuant to C.C.P. § 703.140(b)(5) while the Banning commission of

$20,178.00 and the Oceanside commission of $14,625.00 were not listed as assets on

the petition and these schedules; (2) Debtor on his first amended schedules filed on

December 14, 2015 claimed exemptions in his Long Beach Realty assets pursuant to

C.C.P. § 703.140(b)(6), but none of the $44,303.00 in sales commissions for W L Street

($9,500.00), Banning ($20,178.00) and Oceanside ($14,625.00) listed as "contingent"

were claimed as exempt; and (3) Debtor on his amended schedules filed on February 4,

2016 claimed partial exemptions of $21,125.00 and $7,625.00 in the sales commissions

of $44,303.00 pursuant to C.C.P. § 703.140(b)(5) and (6).

Meanwhile, Debtor was spending and dissipating these sales commissions, assets

of the bankruptcy estate, for his personal and business purposes to the detriment of the

estate without claiming them as entirely exempt, prompting Trustee's action to collect and

recover estate property as he has a duty to do pursuant to 11 U.S.C. § 704(a)(1).  As

Trustee argues, because Debtor was acting contrary to his duties under the Bankruptcy

Code to cooperate with Trustee and surrender estate property to Trustee, the evidence

does not support Debtor's argument that Trustee was acting contrary to his duties to

investigate Debtor's financial affairs and examine and object to claims under 11 U.S.C.

§ 704(a)(4) and (5) by not objecting to the claims of Discover Bank and Western Federal

Credit Union.  The estate would not have otherwise been solvent due to the claims

actually filed by the IRS and Franchise Tax Board and the claims arising from the

administrative expenses in litigation incurred by Trustee in taking reasonable and

necessary action to recover estate property from Debtor, which Debtor should have

disclosed and surrendered to Trustee pursuant to 11 U.S.C. § 521(a)(1), (3) and (4).

Debtor argues that because Trustee had filed an adversary proceeding for

turnover of real estate sales commissions, Debtor's attorney amended Debtor's

schedules on February 3, 2016 to claim the commissions as exempt because as of

January 15, 2016, Debtor had not claimed the homestead nor the commissions totaling

$44,303 as exempt.  *Brief,* filed October 3, 2018, ECF 350 at 20.  According to Debtor,

Trustee's turnover action was unnecessary because Debtor had no bona fide creditors

that actually lent him money, and thus Debtor was solvent.  *Id.*  According to Debtor, his

attorney amended the schedules to increase the exemption for the commissions based

on the thinking that there was not enough equity in the residence and that a purchase of

the residence could not be financed by a first-time home buyer through an FHA loan, but

for fraud through a second appraisal of the property.  *Id.*  Debtor argues that like in *In re

Lua*, he should be allowed to "switch" (or amend) exemptions.  *Id.* at 25.  Debtor argues

1  that he should be allowed a homestead exemption under C.C.P. § 704 because of the

2  rapidly increasing value of the residence in the market. *Id.* According to Debtor, the

3  rapidly increasing value of the residence between January and May 2016 reflected in an

4  initial offer of $375,000 from the buyer is a changed circumstance that justifies his

5  amendment of his schedules to claim a homestead exemption where he had not claimed

6  one before. *Id.* at 25-27. Debtor stated that he obtained an appraisal of the residence at

7  $275,000 in September 2015 before he filed for bankruptcy, that Trustee's real estate

8  agent had appraised the property at $355,000 in January 2016, but without noting

9  "Cancer Risks" and that the buyer's first appraiser valued the property at $400,000 with

10  "Cancer Risks." *Id.* at 26. According to Debtor, he had to claim a homestead exemption

11  to minimize his loss of equity in the residence. *Id.* at 27. Debtor argues that previously,

12  he and his attorney did not believe that he needed to exempt the residence because they

13  anticipated that the residence would not be sold since values were not rising and it was

14  unlikely that a first-time buyer would qualify for an FHA loan. *Id.* As discussed above, the

15  circumstances claimed by Debtor to be changed circumstances are unlike those in *Lua*

16  where Debtor did not consider that she had an interest in her residence because it was

17  titled in the name of her husband and two other relatives to claim a homestead exemption

18  and only after litigation brought by the trustee in that case, the court determined that she

19  did have a community property interest in the residence so she could claim a homestead

20  exemption. In this case, Debtor always knew that he had a choice between taking a

21  homestead exemption or not by choosing either the bankruptcy-like exemptions of C.C.P.

22  § 703.140(b) or the regular California nonbankruptcy exemptions of C.C.P. § 704. Debtor

23  chose to litigate his right to the bankruptcy-like exemptions of C.C.P. § 703.140(b), and

24  the evidence indicates that the changed circumstance here is that he did not like the

25  result of the litigation of his right to claim such exemptions, so he attempted to change to

26  the other set. As discussed above, based on principles of equitable estoppel, Debtor

27  may not "switch" exemptions because he had repeatedly represented to Trustee that he

28  was claiming the bankruptcy-like exemptions of C.C.P. § 703.140(b) instead of the C.C.P.

§ 704 regular nonbankruptcy exemptions, which induced Trustee to incur substantial

litigation costs over Debtor's claim of the C.C.P. § 703.140(b) exemptions.

### E.  Debtor's "Tools of the Trade" Exemption

On Debtor's amended schedules filed on May 9, 2016 and December 12, 2017, he

claimed a "tools of the trade" exemption pursuant to C.C.P. § 704.060(a)(1) of the regular

California bankruptcy exemptions of C.C.P. § 704.  Previously, on his amended

schedules filed on February 4, 2016, Debtor claimed a "tools of the trade" exemption

pursuant to C.C.P. § 703.140(b)(6), which is one of the bankruptcy-like exemptions of

C.C.P. § 703.140(b), in the amount of $7,625.00 in his business equipment valued at

$400.00 and in his sales commissions valued at $44.303.00.  Based on Trustee's motion

objecting to Debtor's exemption of certain personal property assets, including the "tools

of the trade" exemption, filed on February 11, 2016, the court disallowed Debtor's

claimed "tools of the trade" under C.C.P. § 703.140(b)(6), setting forth its decision in its

findings of fact and conclusions of law.  *Findings of Fact and Conclusions of Law re:*

*Motion by the Chapter 7 Trustee to the Debtor's Claimed Exemption for Certain Personal*

*Property Assets,* ECF 119, filed on July 12, 2016; *Order on Motion by the Chapter 7*

*Trustee to the Debtor's Claimed Exemption for Certain Personal Property Assets,* ECF

118, filed on July 12, 2016.  Debtor argued that his sales commission funds were working

capital and exempt as "tools of the trade" of the Debtor under C.C.P. § 703.140(b)(6),

and the gist of the court's ruling was that these funds are not exempt because the funds,

though arguably working capital, cannot be considered "tools of the trade" which should

be construed to be "those tools, equipment, and other items of tangible property which

are reasonably necessary and actually used by a judgment debtor in pursuing his

livelihood."  *Id.* (citing *C.F. Nielsen, Inc. v. Stern*, 11 Cal.App.4th Supp. 22 (1992) (holding

funds in a lawyer's business bank account not "tools of the trade" under CCP

704.060(a)); and *Kono v. Meeker*, 196 Cal.App.4th 81 (2011 ) (inventory is not "tools of

the trade" under CCP 704.060 because intent of statute is to protect basic tools and

utensils necessary to aid the debtor in continuing in his means of livelihood)).  Money as

1   a medium of exchange is not within the meaning of tangible personal property to be

2   considered a basic tool, utensil and piece of equipment necessary for a trade.  *Id.*  Thus,

3   the court disallowed Debtor's "tools of the trade" exemption in the sales commissions but

4   allowed the exemption as to the business equipment valued at $400.  *Id.*  The court's

5   order on Debtor's "tools of the trade" exemption claimed on his amended schedules filed

6   on February 4, 2016 pursuant to the bankruptcy-like exemptions of C.C.P.

7   § 703.140(b)(6) is a final, non-appealable order.

8       On his amended schedules filed on May 9, 2016, Debtor claimed a "tools of the

9   trade" exemption pursuant to C.C.P. § 704.060(a)(1), which is one of the regular

10  California nonbankruptcy exemptions of C.C.P. § 704, in the amount of $7,625.00 in his

11  business equipment valued at $400.00 and in his sales commissions valued at

12  $44.303.00.  Based on Trustee's motion objecting to Debtor's exemption of certain

13  personal property assets, including the "tools of the trade" exemption, filed on June 8,

14  2016, the court disallowed Debtor's claimed "tools of the trade" under C.C.P.

15  § 704.060(a)(1), setting forth its reasons in its memorandum decision filed on June 27,

16  2017.  *Memorandum Decision on Debtor's Claim of a "Tools of the Trade" Exemption*

17  *under California Code of Civil Procedure § 704.060(a)(1) Relating to the Contested*

18  *Matter of Chapter 7 Trustee's Motion Objecting to Debtor's Claimed Homestead*

19  *Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington, CA,* ECF 204,

20  filed on June 27, 2017; *Order on Debtor's Claim of a "Tools of the Trade" Exemption*

21  *under California Code of Civil Procedure § 704.060(a)(1) Relating to the Contested*

22  *Matter of Chapter 7 Trustee's Motion Objecting to Debtor's Claimed Homestead*

23  *Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington, CA,* ECF 205,

24  filed on June 27, 2017.  As previously noted, the court granted reconsideration of this

25  order when it granted reconsideration of the order on Debtor's claimed homestead

26  exemption.  Debtor reasserted his claim for a "tools of the trade" exemption pursuant to

27  C.C.P. § 704.060(a)(1) on his amended schedules filed on December 12, 2017.

28

1     In reconsideration of the prior order on Debtor's "tools of the trade" exemption

2  claimed pursuant to C.C.P. § 704.060(a)(1) on his amended schedules filed on May 9,

3  2016 and consideration of Debtor's same claim of exemption on his amended schedules

4  filed on December 12, 2017, the court determines that its prior decision of June 27, 2017

5  on this exemption was correct and readopts that decision as its ruling on Debtor's "tools

6  of the trade" exemption under C.C.P. § 704.060(a)(1) on Debtor's amended schedules

7  filed on May 9, 2016 and on December 12, 2017.  Moreover, the court determines that

8  Debtor may not claim the "tools of the trade" exemption of C.C.P. § 704.060(a)(1) for the

9  same reasons that the court has determined above that he is equitably estopped from

10  claiming the regular California nonbankruptcy exemptions of C.C.P. § 704, including the

11  homestead exemption of C.C.P. § 704.730.  However, the court determines that Debtor

12  may properly claim the "tools of the trade" exemption in his business equipment valued at

13  $400.00 as the court previously determined in its order and findings of fact and

14  conclusions of law of July 12, 2016 on Debtor's "tools of the trade" exemption claimed

15  under C.C.P. § 703.140(b)(5) and will allow the "tools of the trade" exemption in the

16  amount of $400.00.

### III. CONCLUSION

18     Because the court finds that all five elements of equitable estoppel under

19  California law are shown on this evidentiary record as discussed above, the court hereby

20  grants Trustee's Motion objecting to Debtor's claimed homestead exemption in real

21  property located at 329 Hawaiian Avenue, Wilmington, California, and objecting to

22  Debtor's "tools of the trade" exemption and disallows the homestead exemption claimed

23  under C.C.P. § 704.730 and the "tools of the trade" exemption claimed under C.C.P. §

24  704.060(a)(1), except the court denies the Motion in part as to the value of Debtor's

25     ///

26     ///

1  business equipment in the amount of $400.00.  Trustee is hereby ordered to lodge a

2  proposed form of judgment consistent with this memorandum decision.

3      IT IS SO ORDERED.

4                              # # #

Date: March 27, 2019

                                _____
                                Robert Kwan
                                United States Bankruptcy Judge