

FILED & ENTERED

MAY 01 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ARTURO GONZALEZ,<br><br>                                        Debtor. | Case No. 2:15-bk-25283-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON DEBTOR ARTURO GONZALEZ'S MOTIONS TO REMOVE THE CHAPTER 7 TRUSTEE**<br><br>**Vacated Hearing**<br><br>Date:  April 30, 2024<br>Time:  1:30 p.m. |

      Pending before the court are the motions of Debtor Arturo Gonzalez to remove the Chapter 7 Trustee Wesley H. Avery, which are portions of Debtor's motions seeking other relief to recuse the undersigned judge in the above-captioned bankruptcy case (Docket Nos. 798, 801, 807 and 812), filed on October 23 and 24, 2023.[1] The portions of Debtor's motions for recusal of the undersigned judge were transferred to the

---

[1]  Debtor filed multiple documents on October 23 and 24, 2023 for his motion for recusal of the undersigned judge and to remove the trustee.  The documents appear to constitute a single motion consisting of two requests for relief: (1) recusal of the undersigned judge; and (2) removal of the trustee from the case.  However, the documents are separate filings and will be treated as separate motions herein.

Honorable Barry Russell, United States Bankruptcy Judge, who denied the motions for recusal by order filed and entered on January 17, 2024 (Docket No. 847) and who also denied Debtor's motion for reconsideration by order filed on February 20, 2024 (Docket No. 851). Since recusal of the undersigned judge assigned to this case has been denied, the undersigned judge will go forward to consider the unresolved portions of the motions seeking removal of the trustee.

In support of the motions, Debtor filed a 360-page brief asserting why the trustee should be removed (and the judge should be recused). Motion, Docket No. 812, parts 1-19. Debtor's arguments in his voluminous brief are somewhat convoluted and difficult to understand, and most of Debtor's arguments in the motions related to his request for recusal of the undersigned judge. *Id.* However, as to Debtor's motions for removal of the trustee, in summary, citing and quoting his former bankruptcy attorney, whom Debtor also claims to have engaged in improper conduct, [2] Debtor argues that "Trustee does not approach the court asking for equity with clean hands." Motion, Docket No. 812-10 at 1.

Debtor's specific arguments for removal of the trustee in his brief, Docket Nos. 812-1 to 812-19, may be described as follows: The bankruptcy case was an abuse of the Bankruptcy Code and should have been dismissed. Motion, Docket No. 812-1 at 33 (internal page citation at 34) ("In this Gonzalez case, it would be an abuse of the Bankruptcy Code to allow him to stay in a Chapter 7 bankruptcy case when there are no debts to discharge.") Debtor argues that he learned and told his former bankruptcy attorney in an email dated January 29, 2016, and in subsequent emails that according to a credit report and a message from a creditor, the statutes of limitations for collection of his unsecured debts had expired, and thus, in his opinion, there was no purpose to

---

[2] For example, Debtor argues that his former bankruptcy attorney failed to adequately represent him by withholding evidence from the court, Motion, Docket No. 812-18 at 9-29 (internal page citation at 49-69), engaged in fraudulent conduct by claiming fraudulent exemptions on his behalf in the case, Motion, Docket No. 812-4 at 25-40 and Docket No. 812-5 at 1-10 (internal page citation at 145-170), and improperly prevented Debtor from appearing at hearings, Motion, Docket No. 812-6 at 1-5 (internal page citation at 200-204).

the bankruptcy case if he had no unsecured debts to pay.  Motion, Docket Nos. 812-1 at 26-38 and 812-18 at 12-19 (internal page citation at 37-39, 52-59).   Debtor thus argues that he was not eligible for a Chapter 7 bankruptcy case. Motion, Docket No. 812-1 at 33 (internal page citation at 34).   Debtor then argues that the trustee and the court were put on notice of these alleged facts by Debtor's declaration filed in the case on July 22, 2016 (Docket No. 131), and yet the trustee acted improperly by continuing to administer the case despite such notice.  Motion, Docket No. 812-1 at 36-38 (internal page citation at 37-39).  Debtor further argues that the trustee and the court were put on notice of these alleged facts by his declaration filed in support of his motion to convert the case to Chapter 13 on June 3, 2016 and a copy of the credit report which was an exhibit to that declaration (Docket No. 94 at 59-69) and in the brief filed in support of his claim of a homestead exemption filed on November 4, 2016 (Docket No. 157-1 at 17-27), and yet the trustee acted improperly by continuing to administer the case in spite of such notice. Motion, Docket Nos. 812-1 at 38-39 and 812-18 at 1, 4-5, 9-11 (internal page citation at 39-41, 44-45 and 49-51). [3]

Moreover, Debtor argues that the trustee also acted improperly in persisting in administering the case to generate fees after he was "defanged," again citing and quoting his former bankruptcy attorney, when Debtor filed his motion to convert the case on January 15, 2016 (Docket No. 27), *citing, Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007), meaning, in Debtor's view, that authority over the bankruptcy estate went to Debtor from the trustee when the motion to convert was filed. Motion, Docket Nos. 812-4 at 4-25 (internal page citation at 124-145), 812-18 at 10, 25-40 and 812-19 at 1-6 (internal page citation at 51, 65-86).

Debtor additionally argues that the trustee acted improperly by failing to examine

---

[3]  Debtor made similar allegations in his complaint filed in his adversary proceeding against the trustee and Debtor's former bankruptcy attorney, alleging "fraud on the court",  in *Gonzalez v. Avery,* Adv. No. 2:20-ap-01647-RK on October 14, 2020 (Docket No. 1 in that adversary proceeding), which the court dismissed by order filed and entered on March 4, 2021 (Docket No. 34).  Debtor appealed the dismissal to the United States District Court, which dismissed Debtor's appeal on July 21, 2021 for lack of prosecution (Docket No. 63).

1   and object to the time-barred claims.  Motion, Docket No. 812-5 at 30-35 (internal page

2   citation at 190-195).  Citing the case of *In re Mitchell*, 357 B.R. 142 (Bankr. C.D. Cal.

3   2006), Debtor argues that it was obvious that the case "demanded" dismissal on

4   grounds that he had no unsecured debts to pay and the trustee should not have

5   continued to administer the case because no creditors were going to be paid.  Motion,

6   Docket No. 812-6 at 21-41, Docket No. 812-8 at 1-15 and Docket No. 812-9 at 1-39 and

7   Docket No. 812-10 at 1 (internal page citation at 220-255 and 320-360).

8          On April 15, 2024, the trustee filed his opposition to the motions (Docket No.

9   864). [4] The trustee argues that the motions to remove him is improper reconsideration

10  of a similar motion made by Debtor in 2023, which was denied by the court's order filed

11  and entered on August 23, 2023 (Docket No. 783).  Opposition, Docket No. 864 at 2.

12  The trustee also argues that the motion to remove him is moot because the court

13  approved the trustee's final report and the final fee applications of the trustee and his

14  professionals by its order filed and entered on September 21, 2022 (Docket No. 654)

15  and the trustee filed his final account and distribution report on December 1, 2022

16  (Docket No. 692), certifying that the estate has been fully administered, and Debtor's

17  appeal of the court's order approving the final fee applications of the trustee and his

18  professionals was dismissed by the District Court by order filed and entered on October

19  27, 2023  (Docket No 811).  Opposition, Docket No. 864 at 3.  The trustee additionally

20  argues that the motions must be denied because they do not meet the pleading

21  standards of Federal Rule of Civil Procedure 8(a).  *Id.* at 2.  The trustee further argues

22  that the motions are "unintelligible and are nothing more than twaddle." *Id.* at 1.

23         Removal of a bankruptcy trustee is governed by 11 U.S.C. § 324(a), which states

24  as follows: "(a) The court, after notice and a hearing, may remove a trustee, other than

25  the United States trustee, or an examiner, for cause."  11 U.S.C. § 324(a). [5]  Regarding

26

27  [4]  On November 29, 2023, the trustee filed his initial opposition to the motions (Docket No. 823).  The
    arguments in both of the trustee's oppositions are substantially the same, and the court assumes that his

28  later opposition supersedes his initial opposition.

    [5]  Debtor in his motion does not cite 11 U.S.C. § 324(a) as the legal authority for removal of a trustee in a

1   cause for removal of a bankruptcy trustee under 11 U.S.C. § 324(a), the United States

2   Court of Appeals for the Ninth Circuit has stated:

3           Once assigned to a particular case, a panel trustee can be removed from
        a pending case only if the bankruptcy court finds "cause" after notice and a
4       hearing. *Brooks v. United States*, 127 F.3d 1192, 1193 (9th Cir.1997); 11 U.S.C.
        § 324(a). "[A]lthough sufficient cause is not defined in the Bankruptcy Code, it is
5       left for the courts to determine on a case by case basis." 3 *Collier on Bankruptcy*
        ¶ 324.02, at 324-3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.
6       2006).

7

8           It is well established that "cause" may include trustee incompetence,
        violation of the trustee's fiduciary duties, misconduct or failure to perform the
9       trustee's duties, or lack of disinterestedness or holding an interest adverse to the
        estate. Id. at 324-3 to 324-4. Such cause must be supported by specific facts,
10      *[Matter of] Schultz Mfg. Fabricating Co.*, 956 F.2d [686,] at 692 [(7th Cir. 1992)],
        and the party seeking removal has the burden to prove them. *Alexander v.*
11      *Jensen-Carter (In re Alexander),* 289 B.R. 711, 714 (8th Cir. BAP 2003), *aff'd*, 80
        Fed.Appx. 540 (8th Cir.2003). This listing is illustrative, but not exhaustive.
12

13  *In re AFI Holding, Inc.*, 530 F.3d 832, 838, 845 (9th Cir. 2008) (Ninth Circuit citing and

14  quoting opinion of the Bankruptcy Appellate Panel and adopting the lower court's

15  opinion as its own).   As discussed herein, Debtor's arguments that there is cause for

16  removal of the trustee lack merit because as the party seeking removal, he has failed to

17  meet his burden of proving specific facts showing that the trustee breached his fiduciary

18  duties or otherwise engaged in misconduct warranting his removal under the standard

19  recognized by the Ninth Circuit in *In re AFI Holding, Inc.,* 530 F.3d at 845.

20      Debtor contends that the trustee acted improperly in administering the

21  bankruptcy estate in this case after being put on notice that Debtor was "ineligible" for

22  Chapter 7 because Debtor had no enforceable unsecured debts based on expiration of

23  collection statutes of limitations.   Debtor's contention is that his declarations of June 3,

24  2016 and July 22, 2016 and his credit report attached to the June 3, 2016 declaration

25  were on the record and put the trustee on notice of the fact that he (Debtor) had no

26

27  _____
    bankruptcy case, but cites the opinion of the United States Court of Appeals for the Third Circuit in *In re*
28  *BH&P, Inc,*. 949 F.2d 1300, 1308-1318 (3rd Cir. 1991), which court applied 11 U.S.C. § 324(a) in its
    opinion determining whether cause is shown for removal of a bankruptcy trustee.  Motion, Docket No. 812
    at10-11 (internal page citation at 8-1 to 9-1).

1  enforceable unsecured debts due to expired collection statutes of limitations for all of his

2  unsecured debts, and therefore, the trustee should not have administered the case

3  because there was no purpose for the case in Chapter 7 to pay unsecured debts.[6]

4       Debtor specifically contends that the trustee was put on notice of the statute

5  expired unsecured debts by his (Debtor's) declaration filed in this case on July 22, 2016.

6  Debtor's declaration filed on July 22, 2016 (Docket No. 131) consisted of a five-page

7  declaration with an attached signature page with his manual signature and an "Exhibit

8  A" consisting of a fifteen page slew of emails between Debtor and his former bankruptcy

9  attorney.  Motion, Docket No. 812-1 at 36-38 (internal page citation at 37-39).  The five-

10  page text of Debtor's declaration of July 22, 2016 addressed his intention for changing

11  his exemptions in this case to claim a homestead exemption.  In the text of his

12  declaration, Debtor stated that one of his original goals in filing this bankruptcy case

13  was "to discharge my unsecured obligations."  Debtor's Declaration, Docket No. 131 at

14  2.  In his declaration of July 22, 2016, Debtor did not state that he had no enforceable

15

16  —————————————

17  [6]  It should be made clear what is meant by a "time-barred" debt, that is, a debt based on an obligation or liability under a written contract for which an action to enforce the debt is not brought within the statute of limitations. The applicable statute of limitations for actions based on an obligation or liability from a written

18  contract is set forth in Sections 335 and 337 of the California Code of Civil Procedure as follows:

19      335.  The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:

20                      ***

21      337.  Within four years:

22          (a)  An action upon any contract, obligation or liability founded upon an instrument in writing, . . . .

23  California Code of Civil Procedure §§ 335 and 337(a).  The statute of limitations on actions to enforce

24  obligations or liability on a written contract affects the remedy of the party seeking to enforce a written contract, but does not extinguish the contractual claim as the statute of limitations is an affirmative defense that must be raised in an action to enforce the claim, or otherwise it may be forfeited for failure to

25  object or invoke a right.  *PGA West Residential Association, Inc. v. Hulven International, Inc.*, 14 Cal.App.5th 156, 175-176 and 14 (2017), *citing inter alia*, *Mitchell v. Automobile Owners Indemnity*

26  *Underwriters*, 19 Cal.2d 1, 4 (1941); *see also, Midland Funding, LLC v. Johnson*, 581 U.S. 224 (2017) (depending on state law, the statute of limitations is generally an affirmative defense that must be raised

27  to bar an action to enforce a stale contract debt).  It would be up to a debtor to raise the affirmative defense of statute of limitations in a civil action to enforce a stale claim or a bankruptcy trustee in the

28  debtor's bankruptcy case to object to a stale claim based on the statute of limitations, or otherwise, the stale claim would be valid and enforceable.  *Id.*

unsecured debts due to expiration of the collection statute of limitations; the only

references to his unsecured creditors and the debts he owed to them were that his

original goal was to discharge his unsecured debts and that he was changing his

exemptions "to further my Chapter 13 plan that I would propose by requiring a lower

payment to be made to the unsecured creditors."   Debtor's Declaration, July 22, 2016,

Docket No. 131 at 2-4.

In Debtor's bankruptcy schedules in his bankruptcy petition filed on October 5,

2015 (Docket No.1), he listed 10 creditors holding unsecured nonpriority claims with a

total value of $97,045.00 and these creditors that he listed as holding unsecured

nonpriority claims were Afni, Inc., Bank of America, N.A. Cach, LLC, Citibank, N.A.,

Discover Bank, Financial Credit Network, Southwest Credit Systems, Valley Collection

Service, Wells Fargo Bank N.A. and Western Federal Credit Union.  Docket No. 1 at 23-

25.[7]  Debtor did not indicate on these bankruptcy schedules filed with his bankruptcy

petition that any of these claims were disputed by him, such as being uncollectible due

to passage of time.  *Id.*

In the motion now before the court, Debtor points to a paragraph he wrote in his

email to his former bankruptcy attorney dated January 29, 2016 which was attached to

his declaration of July 22, 2016, stating:

> By the way, I am curious, when I went to the hearing the Trustee said, let's make
> a deal because I couldn't keep both the home and the money from the
> corporation.  My understanding was that I had to let go of 1.  My goal is to keep
> the home, here is a curious question, how much money would the corporation
> have to give?  Currently I owe no creditors on my credit report, I was able to
> remove one of the last items since the company that took over the account went

---

[7]   The court takes judicial notice of Debtor's bankruptcy schedules in this case pursuant to Federal Rule
of Evidence 201.  *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 957-958 (9th
Cir. 1989) (holding appellate court may take judicial notice of records of underlying bankruptcy case);
*United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)(stating a court may take judicial notice of its
own records, specifically in other cases before it).  As one bankruptcy evidence treatise has stated, "[i]t is
generally accepted that a bankruptcy judge may take judicial notice of the bankruptcy court's records."
Russell, *Bankruptcy Evidence Manual*, § 201:5 (online edition November 2023 update), *citing inter alia, In
re Ranieri,* 598 B.R. 450 (Bankr. N.D. Ill. 2019)(Bankruptcy court can take judicial notice of its own
records, including a debtor's bankruptcy schedules) and *In re Faulkner,* 593 B.R. 263 (Bankr. E.D. Pa.
2018) (Bankruptcy court could take judicial notice of docket entries, as well as documents filed, in chapter
13 debtor-mortgagor's prior bankruptcy cases and in state court mortgage foreclosure actions, but not of
facts stated in documents that might be in dispute).

out of business, and I disputed it and I just got a message yesterday that it was removed (see attachment).  Also, I called one of the companies I owed money to (Discover) and I asked them how come I no longer see Discover on my current credit report that I got last week, and they said it was because after 7 years they can't collect.  I also stopped paying everyone at the same time so assuming that's why they are no longer on my credit report.

Email dated January 29, 2016 from Debtor to his former bankruptcy attorney, Exhibit 1 to Debtor's Declaration, July 22, 2016, Docket No. 131 at 20.  In the Motion, Debtor refers to his email to his former attorney dated January 29, 2016 as "Key Evidence #1." Motion, Docket No. 812-1 at 36-38 (internal page citation at 37-39).  However, the credit report referenced in this email was not attached as part of Debtor's July 22, 2016 declaration, nor was the message from the creditor referenced in the email stating that an account was "removed" was attached as part of the declaration.  Debtor's Declaration, July 22, 2016, Docket No. 131.

Debtor's statements in his email to his former bankruptcy attorney that he has no enforceable unsecured debt, "Key Evidence #1," are not admissible evidence because there is no evidentiary foundation for such statements.  Debtor has not shown that he has personal knowledge as required by Federal Rule of Evidence 602 that all of his potentially dischargeable unsecured debts were time-barred due to expired collection statutes of limitations, and it appears that he does not have such personal knowledge because in his email statement, he relied upon unidentified and inadmissible hearsay statements in an undisclosed third party credit report and in alleged telephone conversations he purportedly had with unidentified representatives of two creditors, Discover and another unnamed creditor.  *See also*, Federal Rules of Evidence 801 *et seq*. (hearsay rules) and 901(a) and (b) (authentication rules).  (Debtor's statements in his email to his former bankruptcy attorney of January 29, 2016 are also inadmissible evidence as such statements are not formally part of the declaration and are otherwise unsworn.  See 28 U.S.C. § 1746.)  There is no factual basis based on admissible evidence in Debtor's email statements of January 29, 2016 to have put the trustee on notice that he (Debtor) had no enforceable unsecured debts as of the date of the filing

of the declaration on July 22, 2016.  The statements themselves in Debtor's January 29, 2016 email are general and do not specifically address all of Debtor's unsecured creditors that he listed in his bankruptcy schedules, only Discover and one other unnamed creditor.  In Debtor's declaration of July 22, 2016, there is no admissible evidence corroborating that the collection statutes of limitation had expired for all of Debtor's potentially dischargeable unsecured debts, only Debtor's say-so, which is inadequate to prove anything.

Moreover, there was insufficient notice to the trustee of such statements made by Debtor in his email of January 29, 2016 to his former bankruptcy attorney as the statements were not mentioned or referred to in the text of Debtor's declaration of July 22, 2016 itself, that is, the document that was being filed.  That is, there was no reference to Debtor's current contention that he had no enforceable unsecured debts in the body of his declaration as the only references to his unsecured debts in the declaration itself were that Debtor's goal was to discharge such debts and that he was changing his exemptions to lower the payments that he would have to make on such debts.  There was nothing in this declaration about Debtor no longer having any enforceable and potentially dischargeable unsecured debts.  Debtor's isolated unsworn statements in his email to his former bankruptcy attorney of January 29, 2016 were obscurely buried in a slew of emails made part of Exhibit A to Debtor's declaration of July 22, 2016 with nothing to draw attention to the particular email, even if there was any evidentiary value to the statements in the email, which there is none, and thus, the email was not adequate notice to the trustee that he (the trustee) was administering a bankruptcy case involving no enforceable and potentially dischargeable unsecured debts because it was only Debtor's conclusory opinion not supported by any admissible corroborating evidence.  In this regard, the court again notes that Debtor himself in his bankruptcy schedules filed with his bankruptcy petition in the case on October 5, 2015 did not list any of his unsecured debts as disputed, contingent or unliquidated. Schedule F – Creditors Holding Unsecured Nonpriority Claims, Docket No. 1 at 23-25.

If Debtor knew or believed these debts were stale claims and unenforceable based on expired collection statutes of limitations, he would have listed them as disputed on his bankruptcy schedules when he filed his bankruptcy petition.  This fact also undermines Debtor's argument that the trustee was put on notice that he (Debtor) had no collectible unsecured debts as of July 22, 2016.

Debtor further contends that his declaration of June 3, 2016 and a copy of his credit report was attached as an exhibit to his declaration filed on June 3, 2016, Docket No. 94, also put the trustee on notice that he (Debtor) had no enforceable unsecured debts for this Chapter 7 case to have a purpose.  Debtor's declaration of June 3, 2016 was submitted as his trial declaration for the contested matter of his motion to convert the case to Chapter 13, and the declaration consists of 85 pages, including an eight page declaration, 75 pages of exhibits, a signed signature page, and a one page certificate of service.  Docket No. 94.  An eleven page copy of a credit report for Debtor purportedly from Transunion dated January 27, 2016 was attached as Exhibit C to the declaration.  In the Motion, Debtor refers to the filing a copy of his credit report dated January 27, 2016 with his declaration of June 3, 2016 as "Key Evidence #2."  Motion, Docket No. 812-1 at 38-40 (internal page citation at 39-41).

Regarding the copy of his credit report attached to his June 3, 2016 declaration, Debtor stated in this declaration:

> 45. Further, in preparing for this petition, I was informed by my counsel that there were two tax liens recorded on the property.

> 46. I was aware of one tax lien, so this was a surprise to me.

> 47. However, a copy of a recent credit report demonstrates this tax lien showing up on my property.

> 48. To the best of my knowledge, there still remain two major tax liens and several minor tax liens secured to my real property.

> 49. A copy of a recent credit report is attached upon which I base my statement. This is a true and correct copy of the document in question. <u>Exhibit C.</u>

Debtor's Declaration, June 3, 2016, Docket No. 94 at 5-6.

Regarding Debtor's contention that he stated on the record in his declaration of June 3, 2016 that his debts were uncollectible, he stated in the declaration as follows:

> 5.  At the time of filing of my BK Case, I was approximately 1 year behind on the mortgage payments.

> 6. In approaching the filing of the BK Case I always intended to keep my house.

> 7. The mortgage company's actions necessitated the BK Case. I believed that I could make a deal with the taxing authorities to payoff the tax liens owed, and that the other debts I owed were uncollectible due to the age of the debts.

Debtor's Declaration, June 3, 2016, Docket No. 94 at 2.

The above two passages from Debtor's declaration of June 3, 2016 were the only references to his credit report and his unsecured debts.  The credit report was only referenced in Debtor's declaration of June 3, 2016 as to the existence of a second tax lien that Debtor said that he had not known about, and Debtor did not refer to his credit report in his declaration with respect to his unsecured debts.  Debtor in the one reference to his unsecured debts in this declaration stated that the other debts he owed were uncollectible due to their age, but did not cite or submit in his declaration any admissible evidence in support of this statement.

Debtor's June 3, 2016 declaration did not put the trustee on notice of any purported fact that Debtor had no enforceable, or collectible, unsecured debts as Debtor only stated his beliefs that he could make a deal with the taxing authorities to pay off the tax liens that he owed and that the other debts he owed were uncollectible due to their age.  Debtor in stating his belief that his other debts were uncollectible due to age cited no evidence in support of such belief, and in his declaration, he never referred to his credit report in stating such belief.  Debtor in this declaration only referred to his credit report because it showed a second tax lien that he was not previously aware of.  Debtor's saying that his other debts were uncollectible due to age was conclusory and nonspecific as he did not identify which specific debts were uncollectible in his

declaration, which is in contrast to his bankruptcy schedules on which he listed his specific debts and did not indicate that any of those listed debts were disputed, unliquidated or contingent due to age.  If Debtor considered his debts to be uncollectible due to age, he could have amended his bankruptcy schedules to indicate that he disputed them based on age, which he had not as of the date of his declaration of June 3, 2016.  Debtor stated his belief in his declaration to address the issue then presented by his change of claimed exemptions, and not because as he now argues, the case "demanded" dismissal because there was no purpose to it due to his other debts being uncollectible.  Debtor did not state in this declaration that the case should be dismissed because he had no collectible unsecured debts.  These circumstances indicate that Debtor's declaration and the copy of a credit report exhibit filed on June 3, 2016 did not put the trustee on notice of a purported fact that Debtor had no enforceable and potentially dischargeable unsecured debts to be paid as claims in a Chapter 7 bankruptcy case.

Significantly, Debtor's argument that the trustee was put on notice that he had no enforceable and potentially dischargeable unsecured debts due to the expiration of the collection statutes of limitation for all of his unsecured debts lacks merit because there is no evidentiary support for such contention.  Debtor has not shown that he has personal knowledge as required by Federal Rule of Evidence 602 that all of his unsecured debts are time-barred due to expired collection statutes of limitation, and it appears that he does not have personal knowledge because he apparently relies upon unauthenticated and inadmissible hearsay statements in a third party credit report.  *See also*, Federal Rules of Evidence 801 *et seq*. (hearsay rules) and 901(a) and (b) (authentication rules).  Debtor cannot authenticate the credit report because he did not prepare it and it is not his business record; rather the credit report was the business record of a third party prepared by unknown and unsworn persons.  *Id*.  There is no factual basis based on admissible evidence in Debtor's June 3, 2016 declaration to have put the trustee on notice that he (Debtor) has no enforceable unsecured debts.

1  Debtor's statement in his June 3, 2016 declaration that his other debts were

2  uncollectible itself was general and did not specifically address all of Debtor's

3  unsecured creditors that he listed in his bankruptcy schedules.  In Debtor's declaration

4  of June 3, 2016, there is no admissible evidence corroborating that the collection

5  statutes of limitations had expired for all of Debtor's potentially dischargeable unsecured

6  debts, only Debtor's say-so, which is inadequate to prove anything.

7  Regarding Debtor's credit report attached to his June 3, 2016 declaration, the

8  notice provided by it is limited as Debtor only offered it to show that he had not

9  previously known of a second tax lien, which was shown on the credit report.  Debtor's

10  Declaration, June 3, 2016, Docket No. 94 at 5-6 and Exhibit C attached thereto.

11  Nowhere in Debtor's declaration of June 3, 2016 is any statement by him indicating that

12  he was relying upon the credit report to show that he had no collectible unsecured

13  debts.  Debtor's Declaration, June 3, 2016, at 1-8.  Thus, Debtor in his June 3, 2016

14  declaration was not asking the trustee to look at the credit report to show that he

15  (Debtor) had no collectible unsecured debts. *Id.*  The probative value of the credit

16  report is limited as it was the statement of unknown persons who purportedly made an

17  unspecified investigation of Debtor's outstanding debts, which report makes

18  unauthenticated out-of-court statements being offered for the truth of the matters stated

19  therein, which have not been shown to be based on personal knowledge of such

20  persons placed under oath, but which appear to be inadmissible hearsay lacking the

21  foundation of personal knowledge as required by Federal Rules of Evidence 602, 801,

22  802 and 901.  Moreover, the credit report does not address all of the unsecured debts

23  that Debtor listed on his bankruptcy schedules, which indicates the lack of

24  completeness. The lack of admissible evidence undermines Debtor's reliance on the

25  credit report as providing notice to the trustee.

26  The evidence admissible in this case shows that Debtor had enforceable and

27  potentially dischargeable unsecured debts as shown by his bankruptcy schedules listing

28  unsecured nonpriority debts owed to creditors for which the collection statutes of

1  limitations had not expired as of the date that he filed his bankruptcy petition on October

2  5, 2015.  In California, the statute of limitations for filing a lawsuit to enforce and collect

3  a debt from an obligation or liability based upon a written agreement is generally four

4  years under California Code of Civil Procedure § 337 from the accrual of the obligation

5  or liability, presumably from a failure to make payment as promised in the written

6  agreement.

7      Debtor in his bankruptcy schedules listed unsecured nonpriority debts incurred

8  within four years of the petition date of October 5, 2015, including consumer debt owed

9  to Afni, Inc., incurred in 2014 for utility collection in the amounts of $134.00 and

10  $122.00, consumer debt owed to Southwest Credit Systems incurred in 2013 for utility

11  collection in the amount of $123.00 and consumer debt owed to Valley Collection

12  Service incurred in 2012 in the amount of $194.00.  Schedule F – Creditors Holding

13  Unsecured Nonpriority Claims, Docket No. 1 at 23-24.  Debtor's listings of these

14  unsecured creditors and his debts owed to them incurred during the four-year collection

15  statute of limitations, which were not marked as disputed, contingent or unliquidated, on

16  his bankruptcy schedules are evidentiary admissions.  *Suter v. Goedert*, 396 B.R. 535,

17  541 (D. Nev. 2008) (citation omitted; statements made in bankruptcy schedules are

18  executed under penalty of perjury and, when offered against debtor, are eligible for

19  treatment as evidentiary admissions), *cited in,* Russell, *Bankruptcy Evidence Manual*, §

20  801:12 (online edition November 2023 update).  Debtor has not shown with admissible

21  evidence that these potentially dischargeable unsecured debts were unenforceable

22  based on expiration of the collection statutes of limitations.

23      Moreover, Debtor on his bankruptcy schedules listed the Internal Revenue

24  Service (IRS) as having a partially secured claim of $34,798.00, of which $7,966.00 was

25  unsecured, for a debt incurred in 2011.  Schedule D – Creditors Holding Secured

26  Claims, Docket No. 1 at 21.  Debtor has made no showing that the collection statute of

27  limitations on the IRS unsecured claim had expired, which is normally 10 years from the

28  date of assessment under 26 U.S.C. § 6502, and was thus uncollectible.

Also, because as indicated on Debtor's statement of related cases filed on October 5, 2015 (Docket No. 5), he had two prior pending bankruptcy cases that he filed in 2011 and 2012, the four year collection statute of limitations under California Code of Civil Procedure § 337 was tolled, or suspended, during the time that these bankruptcy cases were pending pursuant to 11 U.S.C. § 108(c), which for each bankruptcy case tolled the statute of limitations during the time the automatic stay was in effect, plus 30 days.  Debtor filed a Chapter 13 bankruptcy case, *In re Arturo Gonzalez,* No. 2:11-bk-52799-NB Chapter 13 (Bankr. C.D. Cal.) on October 13, 2011, which was dismissed and closed on October 29, 2012, and the automatic stay was in place during this time period pursuant to 11 U.S.C. § 362, and thus, the four year collection statute of limitations was tolled, or suspended, for one year and 16 days, plus 30 days, under 11 U.S.C.§ 108(c).  Debtor also filed a Chapter 13 bankruptcy case, *In re Arturo Gonzalez,* No. 2:12-bk-20930-VZ Chapter 13 (Bankr. C.D. Cal.) on March 27, 2012, which was dismissed and closed on July 31, 2013, and the automatic stay was in place during this time period pursuant to 11 U.S.C. § 362, and thus, the four year collection statute of limitations was tolled, or suspended, for another one year, four months and 4 days, plus 30 days, under 11 U.S.C.§ 108(c). *See* Federal Rule of Evidence 201.[8]  Without tolling, the four year collection statute of limitations would have expired for debts from written contractual obligations or liabilities incurred on or before the petition date of October 5, 2015, that is, incurred on or before October 5, 2011, but with tolling from Debtor's two Chapter 11 bankruptcy cases pending in 2011 through 2013, the tolling would be approximately two years and six months, meaning the collection statute of limitations would have only expired for a debt from an obligation or liability arising from a written contract on or before April 5, 2009.

---

[8]  Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of docket entries and documents filed in Debtor's prior bankruptcy cases filed in this court, indicating the filing and dismissal dates of these cases.  *See In re E.R. Fegert, Inc.*, 887 F.2d at 957-958; *United States v. Wilson*, 631 F.2d at 119 (9th Cir. 1980); Russell, *Bankruptcy Evidence Manual*, § 201:5, *citing inter alia, In re Ranieri,* 598 B.R. at 452-453 and n. 1 (citations omitted) and *In re Faulkner,* 593 B.R. at 273 and n.2 (citations omitted).

1    Debtor on his bankruptcy schedules filed on October 5, 2015 listed creditors

2 holding unsecured nonpriority claims incurred after April 5, 2009 for which the collection

3 statute of limitations would not have expired before the filing of Debtor's bankruptcy

4 petition in this case on October 5, 2015, and these creditors include the business debt

5 owed to Citibank, N.A., incurred in April 2011 (i.e., more than four years before the

6 petition date of October 5, 2015) in the amount of $50,953.00, the utility debt owed to

7 Financial Credit Network incurred in 2010 in the amount of $77.00 and the business

8 debt owed to Wells Fargo Bank N.A. incurred in 2010 in the amount of $22,742.00.

9 Schedule F – Creditors Holding Unsecured Nonpriority Claims, Docket No. 1 at 23-24.

10 Debtor's bankruptcy schedules listing these debts put the trustee on notice of these

11 debts when Debtor filed this bankruptcy case, and these creditors remained on his

12 bankruptcy schedules until Debtor filed amended schedules on May 21, 2019 to delete

13 them (Docket No. 393 at 15). [9]

14    While Debtor in his bankruptcy schedules listed creditors holding unsecured

15 nonpriority claims incurred before April 5, 2009, which may have been beyond the tolled

16 collection statute of limitations, including consumer debts owed to Discover Bank

17 incurred in 2002 in the amounts of $7,562.00 and $866.00 and consumer debt to

18 Western Federal Credit Union (now Unify Financial Credit Union) in the amount of

19 $1,472.00, most of Debtor's potentially dischargeable unsecured debts that he

20 scheduled in his bankruptcy petition were not unenforceable due to expired statutes of

21 limitation as the evidentiary record shows.  That is, the evidentiary record in this case

22 indicates that eight listed unsecured creditors (not including Discover or Unify) held

23 unsecured nonpriority claims of over $90,000 as scheduled by Debtor on his bankruptcy

24 petition.  Only the unsecured debts owed to Discover Bank and Western Federal Credit

25 Union may have been time-barred by the collection statutes of limitation based on this

26

27   [9] As discussed herein, Debtor apparently deleted these creditors from his amended bankruptcy schedules
of May 21, 2019 as time-barred, but this would have been incorrect, given the tolling of the collection

28 statutes of limitation from Debtor's prior bankruptcy cases.  Debtor does not explain why he deleted these
debts from his amended schedules, and if they were not owed by him, why he listed them on his original
bankruptcy schedules in the first place.

record.  Debtor's unsworn email statement of January 29, 2016, which was attached as part of his July 22, 2016 declaration, referred to only two unsecured creditors, Discover and one other unnamed creditor, which may have been Western (or Unify) Federal Credit Union, and not his other creditors.

While Discover Card and Western (or Unify) Federal Credit Union were two of the only unsecured nonpriority creditors which filed proofs of claim in this case by the claims bar date, which they later withdrew, apparently because of the expired collection statutes of limitation, other unsecured creditors could have legally filed proofs of claims after the claims bar date and could have still received a distribution with timely filed claims if such creditors had not been given notice of the bankruptcy case under 11 U.S.C. § 726(a)(2)(C) or if such creditors had notice of the bankruptcy case, their distributions would be subject to a subordinated priority for filing late claims after the bar date pursuant to 11 U.S.C. 726(a)(3).  Just because there were no other unsecured creditors which timely filed claims does not necessarily mean that there were no other unsecured creditors to pay, or that all of Debtor's potentially dischargeable unsecured debts were statute-barred.  Debtor never filed any document in the case supported by admissible evidence showing that the potentially dischargeable debts of all of the unsecured creditors listed on his bankruptcy schedules were time-barred by the collection statutes of limitations, so it is incorrect for him to assert that he had no potentially dischargeable unsecured debts as he has not shown that to be the case here.  It appears that Debtor had potentially dischargeable unsecured debts owed to creditors which for one reason or another chose not to file a proof of claim in the case, but he has not shown that for each of these creditors, they chose not to do so because the collection statute of limitations had expired.

Regarding the scheduling of unsecured debts totaling $97,000, Debtor argues that it was his former bankruptcy attorney's doing that so much debt was scheduled, and not him:

> The fact that Debtor's Attorney scheduled $97k in unsecured debt, this debt
> doesn't come into play as Mr. Altman understood that it was time barred and the

fact that he wanted to pay off the Trustee meant that the unsecured creditors were no longer material.  Based on the equity scenarios, the case demanded dismissal.

Motion, Docket No. 812-18 at 3-4 (internal page citation at 43-44).  This argument of Debtor lacks merit because the potentially dischargeable unsecured debts on his bankruptcy schedules of approximately $97,000 was his representation of the amount of unsecured debt that he owed as of the petition date, which was scheduled as undisputed, liquidated and noncontingent and was his evidentiary admission that he had these potentially dischargeable debts as evidenced by his electronic filing declaration which he manually signed acknowledging under penalty of perjury that he read and understood that his electronically filed bankruptcy petition and schedules were true, correct and complete.  Docket No. 3, filed on October 5, 2015.  Debtor may not thus repudiate that the scheduling of his unsecured debts as not his representation on the record, giving notice of what his debts he owed were to the trustee, upon which the trustee could rely upon in administering the bankruptcy estate in this case.  Debtor listed these debts on his bankruptcy schedules because he thought that he owed them and that such debts would be discharged through his bankruptcy case.  Debtor has not shown otherwise on this record.

As set forth in the trustee's final report filed on July 26, 2022  (Docket No. 611), the unsecured claims filed in this case included the unsecured priority claim of the California Franchise Tax Board filed in the amount of $3,976.14 and its unsecured nonpriority claim of $1,974.03 and the unsecured priority claim of the Internal Revenue Service in the amount of $765.76, which might have been entitled to a distribution if there had been sufficient funds after payment of administrative expense claims.  Unfortunately for the creditors in the case, the bankruptcy estate was administratively insolvent due to the high cost of litigation on behalf of the trustee resulting in substantial administrative expense claims, which were also unsecured claims to have been allowed and paid to the extent possible pursuant to 11 U.S.C. § 502.  The court has already ruled upon the reasonableness of the administrative expense claims consisting of the

1    trustee's statutory compensation under 11 U.S.C. § 326 and the compensation of his

2    professionals, his attorneys and his accountants, under 11 U.S.C. § 330, to which

3    Debtor objected, and the court had approved the administrative expense claims over

4    Debtor's objection, Debtor had moved for reconsideration, which was denied, and

5    Debtor appealed the court's rulings to the United States District Court, which later

6    dismissed his appeal.  Docket Nos. 594, 595, 597, 611, 612, 650, 654, 657, 659, 668,

7    677, 680, 681, 688, 811 (final fee applications of the trustee's professionals, the

8    trustee's final report, Debtor's objections thereto, Debtor's motion for reconsideration

9    and related papers, Debtor's notice of appeal and District Court's order dismissing

10    appeal).  Implicit in the court's rulings approving the trustee's final report and final fee

11    applications of the trustee and his professionals was the court determination that the

12    administration of this bankruptcy case by the trustee was reasonable and appropriate,

13    though Debtor disagrees.  Debtor filed this voluntary Chapter 7 bankruptcy case, and in

14    accordance with statutory procedures, the trustee was appointed to serve as the

15    Chapter 7 trustee, and as the Chapter 7 trustee, the trustee was required to administer

16    the bankruptcy estate and carry out his duties as prescribed by the Bankruptcy Code,

17    11 U.S.C. § 704, which he did satisfactorily, meriting the approval of his final report and

18    the fee applications of the trustee and the professionals who assisted him.

19        Based on Debtor's arguments in his motion, the trustee was allegedly put on

20    notice that there were no collectible unsecured debts by Debtor's declarations of June

21    3, 2016 and July 22, 2016, though Debtor argues that his email dated January 29, 2016

22    gave notice, but that was only notice to his former bankruptcy attorney before Debtor's

23    declaration of June 3, 2016 was filed.  By June 3, 2016, the trustee had incurred

24    substantial legal expense in litigating contested matters with Debtor, including the filing

25    and prosecuting of the adversary proceeding filed on January 21, 2016 for turnover of

26    the real estate sales commissions which were assets of the bankruptcy estate and

27    revocation of discharge based on misrepresentations made by Debtor on his bankruptcy

28    schedules, filing objections to Debtor's claimed personal property exemptions, which the

trustee contended were excessive and filing opposition to Debtor's motion to convert the

case to Chapter 13, which the trustee contended was in bad faith, and these contested

matters proceeded to trial, which resulted in substantial expense to the estate as

administrative expense claims.  The trustee substantially prevailed in these contested

matters as the court granting the trustee's claims for relief for turnover of the real estate

sales commissions as estate assets, which had been excessively claimed as exempt,

for revocation of Debtor's discharge based on misrepresentations made on his

bankruptcy schedules and sustaining the trustee's opposition to Debtor's motion to

convert the case to Chapter 13 on grounds that Debtor did not have evidence of regular

income to fund a Chapter 13 plan.  As discussed above, Debtor's declarations of June

3, 2016 and July 22, 2016 did not sufficiently put the trustee on notice that Debtor's

scheduled unsecured debts were stale or uncollectible based on the expiration of the

collection statutes of limitations.  Even if Debtor's June 3, 2016 and July 22, 2016

declaration had given such notice, unfortunately, the trustee had to engage in this

substantial litigation, resulting in enormous legal expense by this time.

Regarding Debtor's argument that the trustee also acted improperly in persisting

in administering the case after he was "defanged," again citing and quoting his former

bankruptcy attorney, when Debtor filed his motion to convert the case on January 15,

2016 (Docket No. 27), *citing Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365

(2007), meaning in Debtor's view that authority over the bankruptcy estate passed to

Debtor from the trustee when the motion to convert was filed, the court has addressed

and rejected this argument made by Debtor several times.

Regarding the trustee's objection to Debtor's claimed homestead exemption,

Debtor argued that the filing of his motion to convert the case constituted an order for

relief, which ousted the trustee from further administration of the bankruptcy estate in

the case.  Debtor's Amended Brief, Docket No. 362 at 9-10, filed on November 9, 2018.

The court addressed and rejected this argument in its memorandum decision filed and

entered on March 27, 2019 (Docket No. 364) because a Chapter 7 bankruptcy case is

not converted to Chapter 7 until such conversion is approved by the court in an order on a motion pursuant to 11 U.S.C. § 706(a) and Federal Rules of Bankruptcy Procedure 1017(f)(1) and (2) and 9013 (conversion under 11 U.S.C. § 706(a) requires a motion and an order); *see also, Marrama v. Citizens Bank of Massachusetts,* 549 U.S. at 367-373 (a Chapter 7 debtor does not have the absolute right to convert a case to Chapter 13 if he has engaged in prepetition bad faith conduct or is otherwise ineligible for relief under that chapter).  The court's reasoning was set forth in its memorandum decision (Docket No. 364) and is incorporated by reference here (but will not be repeated here).  Afterwards, Debtor filed a motion to amend or alter judgment on July 8, 2019 (Docket No. 419), which was denied by the court's order filed and entered on August 23, 2019 (Docket No. 449).  Debtor filed a notice of appeal of the denial of reconsideration on September 9, 2019 (Docket No. 462), but the United States District Court dismissed his appeal for failure to prosecute by order filed and entered on June 26, 2020 (see Docket No. 490 dated July 10, 2020).

In the adversary proceeding in this bankruptcy case, *Avery v. Gonzalez*, Adv. No. 2:16-ap-01037 RK, in his motion to vacate a turnover order filed on April 15, 2023 (Docket No. 222) , Debtor made the argument that language in the Supreme Court's opinion in *Marrama v. Citizens Bank of Massachusetts* demonstrated that his filing of the motion to convert deprived the trustee of the authority to administer the bankruptcy estate and transferred such authority to Debtor. The court addressed and rejected this argument in its memorandum decision in the adversary proceeding filed and entered on May 26, 2023 (Docket No. 230) because the language cited by Debtor referred to the court's approval of conversion of a case from Chapter 7 to Chapter 13 meant that authority over the bankruptcy estate transferred from the Chapter 7 trustee to the Chapter 13 debtor, which is not the case here as the court never approved conversion to Chapter 13 by granting Debtor's motion to convert; rather, the court denied the motion to convert, so there was no approval of conversion.  The court's reasoning was set forth in its memorandum decision (Docket No. 230) and is incorporated by reference

here (but will not be repeated here).  On June 10, 2023, Debtor filed a motion for
reconsideration (Docket No. 237), which the court denied by its order filed and entered
on March 28, 2024 (Docket No. 281) after the motion to recuse the undersigned judge
was denied.  Based on the foregoing, Debtor has not shown that the trustee acted
improperly in continuing to administer the bankruptcy estate after the motion to convert
was filed.

As discussed herein, the court has held that this bankruptcy case remained
under the trustee's administration while the case remained in Chapter 7 and did not
change as the court never approved conversion of the case to Chapter 13, denying
Debtor's motion to convert for lack of eligibility due to insufficient proof of regular income
to fund a Chapter 13 plan.  *See also,* Memorandum Decision and Order Denying
Debtor's Motion to Convert Case, Docket No. 127, filed and entered on July 19, 2016.
Debtor's argument that the trustee was "defanged" and lost his authority to administer
the estate upon filing of the motion to convert the case simply lacks merit.

Debtor argues that the trustee failed in its statutory duties as a trustee in failing to
examine the claims of creditors and objecting to the debts as time-barred debts.  The
court has already addressed this argument before in the case in ruling upon Debtor's
motion to amend or alter judgment regarding his claimed homestead exemption (Docket
No. 364):

Debtor first argues that creditors in this case knowingly filed time-barred
claims, which is against the Bankruptcy Code, and Trustee failed to perform his
statutory duties as the Chapter 7 trustee in not objecting to the time-barred
creditor claims, which resulted in "damage" to the case. Brief, filed October 3,
2018, ECF 350 at 9-13. According to Debtor, the bankruptcy estate in this case
was solvent as of January 15, 2016. Id. at 12-13. Because the case proceeded
"in error," Debtor argues that the case should be evaluated based on what "any
ordinary ethical professional person would have proceeded." Id. at 13. In support
of this argument, Debtor cites to 11 U.S.C. § 704(a)(5) and the Trustee
Handbook. The statute cited by Debtor, 11 U.S.C. § 704(a)(5), provides that a
Chapter 7 bankruptcy trustee "if a purpose would be served, [shall] examine
proofs of claim and object to the allowance of any claim that is improper." 11
U.S.C. § 704(a)(5). The Handbook for Chapter 7 Trustees states that "Section
704(a)(5) requires a trustee to examine proofs of claim and object to the
allowance of any claim that is improper." Handbook for Chapter 7 Trustees at 4-

26. The Handbook for Chapter 7 Trustees further describes the timeframe for reviewing claims as follows: "The claims review process commences after the trustee is certain that there will be a distribution to creditors and as soon as possible following the expiration of the bar date for filing claims.  The trustee may not submit the final report (TFR) for a case prior to completion of the claims examination and determination process." Id. Also, with respect to timing of review of claims, the Handbook for Chapter 7 Trustees further states, "The trustee should perform a second review for new, tardy, amended or assigned claims prior to distribution.  See, especially, section 726(a)(1) regarding tardily filed priority claims. Tardily filed claims may be paid under certain circumstances and should not be barred from payment on that basis alone." Id. at 4-28.

Memorandum Decision Amending Prior Decisions After Trial on Contested Matter of the Chapter 7 Trustee's Motion Objecting to the Debtor's Claimed Homestead Exemption in Real Property Located at 329 Hawaiian Avenue, Wilmington, CA, and Ruling on Contested Matter of Chapter 7 Trustee's Motion Objecting to Debtor's Amended Claimed Homestead Exemption on Same Property and Tools of the Trade Exemption, Docket No. 364, filed on March 27, 2019, at 45-46 and n. 4, *citing, Handbook for Chapter 7 Trustees* issued by the Executive Office of United States Trustees. [10]

As discussed above, the applicable statute, 11 U.S.C. § 704 only requires the trustee to examine claims if there is a purpose to be served.  Any creditors wanting a distribution from the bankruptcy estate in a Chapter 7 case must file a proof of claim in order for them to receive a distribution pursuant to Federal Rule of Bankruptcy Procedure 3002(a), and if a creditor does not file a proof of claim, generally that creditor is not entitled to an allowed distribution from the estate.  The Chapter 7 claims distribution statute, 11 U.S.C. § 726 distinguishes between timely filed claims and untimely filed claims, and in this case, a general claims bar date for nongovernmental

---

[10]   The "Trustee Handbook" referred to by Debtor is the Handbook for Chapter 7 Trustees issued by the Executive Office of United States Trustees (EOUSA), United States Department of Justice (October 2012 as revised).  The EOUSA is the delegate of the Attorney General in supervising United States Trustees, who in turn appoint and supervise Chapter 7 trustees in their respective districts.  28 U.S.C. § 581 *et seq.* The Handbook for Chapter 7 Trustees is to provide guidance to trustees reflecting the official views of the United States Trustee Program on the duties of trustees to debtors, creditors, other parties in interest and the United States Trustees, and the Handbook for Chapter 7 Trustees  is available on the United States Department of Justice website at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-referencematerials.  Handbook for Chapter 7 Trustees at 1.

creditors was set for March 21, 2016.  The trustee need not examine filed claims until

he is ready to make a distribution to creditors who have filed proofs of claim.  There is

no reason for the trustee to examine debts of creditors listed on Debtor's bankruptcy

schedules if such creditors have not filed a proof of claim since such creditors are not

entitled to a distribution from the estate.  This is validated by the statute, 11 U.S.C. §

704(a)(5) that states that "(5) if a purpose would be served, examine proofs of claim and

object to the allowance of any claim that is improper."  If Debtor listed on his bankruptcy

schedules a creditor as having a claim, there is no statutory duty on the trustee to

examine such claim until a proof of claim is filed.  The trustee acted in this case

consistent with the guidance in the Handbook for Chapter 7 Trustees, and unfortunately,

he was not in a position to make distributions in this case and complete administration

of the estate because he was busily and constantly litigating with Debtor over Debtor's

amended bankruptcy schedules, Debtor's various claims of exemption, and Debtor's

numerous challenges to the trustee's authority and actions in this case.  See Case

Dockets for Main Bankruptcy Case and Related Adversary Proceedings.  These

challenges to the trustee's authority and actions in this case including four adversary

complaints filed by Debtor against the trustee for damages, all of which have been

ordered dismissed by this court, and appeals filed by Debtor of these dismissal orders

have also been dismissed by the United States District Court. *Gonzalez v. Avery,* Adv.

No. 2:19--ap-01126-RK (Bankr. C.D. Cal. July 19, 2019), Adv. No. 2:19-ap-01483-RK

(Bankr. C.D. Cal.  Dec. 20, 2019), appeal dismissed, No. 2:20-cv-00766-VAP (C.D. Cal.

May 4, 2020), Adv. No. 2:20-ap-01657-RK  Bankr. C.D. Cal. Mar. 4, 2021), appeal

dismissed, No. 2:21-03100-JVS (C.D. Cal. July 21, 2021), and Adv. No. 2:24-ap-01010-

VZ (Bankr. C.D. Cal. Mar. 22, 2024).  *Id.*  In a number of these adversary proceedings,

Debtor moved for reconsideration, which was also denied.  *Id.*

Debtor's argument that the trustee should be removed because the case

"demanded" dismissal lacks merit.  Debtor's argument is premised on the assumption

that he had no collectible unsecured debts and that the trustee had been put on notice

of this assumed fact.  As discussed above, the circumstances of this case did not put the trustee on notice that Debtor had no collectible unsecured debts based on Debtor's June 5, 2016 and July 22, 2016 declarations and the copy of the credit report attached to the June 5, 2016 declaration.  Even so, dismissal of a Chapter 7 bankruptcy case requires notice and a hearing, which presumes the filing of the appropriate motion by a party in interest or on the court's own motion.  11 U.S.C. § 707(a) and (b); Federal Rule of Bankruptcy Procedure 9013.  Pursuant to 11 U.S.C. § 707(a), the court may dismiss a Chapter 7 bankruptcy case after notice and a hearing only for cause, including unreasonable delay by the debtor that is prejudicial to creditors.  Pursuant to 11 U.S.C. § 707(b), the court on its own motion or upon motion of the United States Trustee or a party in interest may dismiss a Chapter 7 bankruptcy case filed by an individual debtor whose debts are primarily consumer debts if granting relief would be an abuse of Chapter 7, including whether the debtor filed the petition in bad faith or the totality of the circumstances of the debtor's financial condition demonstrates abuse.

Debtor contends that the case "demanded" dismissal because as he says, he had no collectible unsecured debt to pay or discharge, and as such, continuation of the bankruptcy case was an abuse under the Bankruptcy Code, and the trustee should be removed because he continued to administer the case, knowing this.  Debtor's statement that the case "demanded" dismissal implies that some party in interest had an obligation to move to dismiss the case, but cites no proper authority showing that any party had such an obligation.  However, no party in interest, including Debtor, ever filed a motion to dismiss this case.

If Debtor felt that the case "demanded" dismissal on grounds that the case was an abuse of the Bankruptcy Code because he had no collectible unsecured debts, he could have filed such a motion.  Debtor never did.   Debtor would have had to have shown dismissal would not have prejudiced creditors, including the trustee and his professionals as administrative expense creditors.  *In re Bartee,* 317 B.R. 362, 365 (9th Cir. BAP 2004); *In re Kaur,* 510 B.R. 281, 286-287 (Bankr. E.D. Cal. 2014); Local

1    Bankruptcy Rule 1017-2(e)(3) (the court may condition dismissal of case upon payment

2    of administrative fees and expenses).  Apparently, Debtor feels that the case should

3    have been dismissed without any provision for payment of creditors, which would have

4    been prejudicial to them, including the trustee and his professionals incurring expense

5    because they had to litigate in this bankruptcy case and related adversary proceedings

6    in carrying out their duties in administering the bankruptcy estate in this case.  *Id.*

7          Debtor's citation of *In re Mitchell* does not support his argument that the case

8    "demanded" dismissal as in that case, unlike this case, there was a party who filed a

9    motion to dismiss, the United States Trustee, and there is nothing in the opinion in

10   *Mitchell,* stating that there was an obligation on a party in interest to file a motion to

11   dismiss because the case "demanded" it as Debtor argues here.  *In re Mitchell,* 357

12   B.R. at 145-158.  The court in *Mitchell* did not find cause for dismissal of the Chapter 7

13   bankruptcy case for abuse because the debtor did not have any unsecured debts as

14   contended by Debtor in this case.  *Id.*  The court in *Mitchell* granted the United States

15   Trustee's motion to dismiss the debtor's Chapter 7 bankruptcy case for abuse of the

16   Bankruptcy Code from filing her bankruptcy petition in bad faith because the debtor was

17   seeking relief to discharge her debts, much of which were unsecured credit card debts

18   she incurred for purchases right before filing for bankruptcy when she lacked the

19   income and ability to pay for her purchases when she made them.  *Id.* at 152-158.

20   *Mitchell* did not involve a situation that the debtor had no collectible unsecured debts as

21   Debtor argues in this case.  *Id.*

22         Dismissal of the bankruptcy case was not warranted for the reasons argued by

23   Debtor that he had no collectible unsecured debts and that the trustee acted improperly

24   by continuing his administration of the bankruptcy estate after being put on notice of

25   such alleged fact.  First, as discussed above, Debtor has not shown with admissible

26   evidence that he did not have any collectible unsecured debts.  Second, as discussed

27   above, Debtor has not shown that he sufficiently gave notice of such alleged fact to the

28   trustee as Debtor argues now through his June 3, 2016 and July 22, 2016 declarations

filed in this case.  Third, the trustee acted properly in carrying out his statutory duties

under the Bankruptcy Code in administering the bankruptcy estate in this case.

Pursuant to 11 U.S.C. § 704(a)(4), the trustee had the duty to investigate the financial

affairs of Debtor, and at the meetings of creditors in November and December 2015, he

inquired about Debtor's real estate sales commissions, personal property assets of the

estate, which were not completely and accurately disclosed on Debtor's bankruptcy

schedules, and when the trustee suspected that Debtor might be spending the

commissions for personal expenses, which were not listed at the time as exempt

property, he instructed Debtor not to dissipate these personal property assets.

Pursuant to 11 U.S.C. § 704(a)(1), the trustee had the duty to collect the property of the

bankruptcy estate, and he learned despite his instructions that Debtor was spending the

real estate sales commissions, personal property assets of the estate. for personal

expenses, dissipating property of the estate to the detriment of creditors, he brought the

adversary proceeding for an accounting and turnover of this estate property from Debtor

in January 2016.  The trustee filed an objection to excessive claimed exemptions in the

personal property assets of the real estate sales commissions that Debtor later filed in

February 2016, and in June 2016, the trustee filed an objection to Debtor's amended

exemptions claiming a homestead exemption after fully litigating the alternative personal

property exemptions.  Pursuant to 11 U.S.C. § 704(a)(6), the trustee in his adversary

proceeding against Debtor filed in January 2016 opposed Debtor's discharge through

claims to revoke the discharge on grounds that Debtor did not accurately and

completely list his assets on his bankruptcy schedules.  Also, in February 2016,

Debtor's secured lender on his residence, a real property asset of the estate, filed a

motion for relief from the automatic stay to foreclose on the residence because Debtor

was delinquent fourteen monthly loan payments (Docket No. 53).  Pursuant to his duty

to collect and reduce to money property of the estate under 11 U.S.C. § 704(a)(1), the

trustee had to deal with the lender's stay relief motion and to realize value of the equity

in the residence, an estate asset, through a sale by motion filed in June 2016 (Docket

Nos. 100-102), and opposed by Debtor, which sale resulted in net sales proceeds of

$85,792.95 to the estate (Docket No. 611, Trustee's Final Report, reporting net sales

proceeds of $105,734.36, minus payment of $19,941.41 on the lien of the Internal

Revenue Service).  In January 2016, Debtor filed a motion to convert the case to

Chapter 13, which the trustee opposed successfully as Debtor had not proven sufficient

income to prove eligibility for Chapter 13.  As reflected in the case dockets in the main

bankruptcy case and in the related adversary proceedings, the case was extensively

litigated as shown, for example, by the multiple trials conducted on the contested

matters of the trustee's motion for preliminary injunction on turnover of real estate sales

commissions as personal property assets of the estate, Debtor's motion to convert the

case and the trustee's objection to Debtor's claimed personal property exemptions and

the trustee's claims to revoke Debtor's discharge, and the trustee's positions in these

contested matters were substantially vindicated in each of these matters (the court's

decisions in these matters after trial are set forth in Docket Nos. 118, 119, 127, 203, 204

and 364 in the main bankruptcy case and Docket Nos. 19 and 123 in the adversary

proceeding of *Avery v. Gonzalez,* Adv. No. 2:16-ap-01037-RK).  Substantial litigation

was required of the trustee before the alleged notice to him by Debtor's declarations of

June 3, 2016 and July 22, 2016.  Based on this record, the trustee acted reasonably

and diligently in administering the bankruptcy estate in this case based on the

knowledge of the debts listed on Debtor's bankruptcy schedules and the lack of

admissible evidence indicating that any of these potentially dischargeable debts were

unenforceable.

Unfortunately, the extensive litigation in this case and related adversary

proceedings took a heavy toll on the resources of the bankruptcy estate as reflected in

the trustee's final report (Docket No. 611), showing that while the estate realized gross

receipts of $398,098.01, after the payment of creditors holding liens of $ 232,042.47 and

$19,941.41, and other costs, only $98,373.57 was available for distribution to creditors,

all of which went to Chapter 7 administrative expenses, including the trustee's statutory

compensation and fees and costs for services of the trustee's professionals, his attorney and his accountant, who are not being fully compensated for the work they performed on this case.  The trustee's professionals are receiving a small percentage of the compensation that the court allowed in this case, roughly 21 percent, which means that they have suffered a loss of about 79 percent of the income for the work they performed in this case.  No funds were available for distribution to the allowed unsecured creditors, including the priority claim of the Internal Revenue Service in the amount of $765.76, the priority claim of the California Franchise Tax Board in the amount of $3,976.14 and the general unsecured claim of the Franchise Tax Board in the amount of $1,974.03.  While there were no distributions on these unsecured claims, based on the court's order granting the trustee's claims for revocation of discharge, these creditor claims will be protected from an unwarranted discharge in this case and are otherwise collectible, subject to the applicable collection statute of limitations.  Furthermore, while there were no distributions on claims of unsecured creditors who did not file proofs of claim in the case, their claims will also be protected from an unwarranted discharge in this case and are otherwise collectible, so long as the applicable statute of limitations has not expired.  Based on the court's analysis described herein, these claims would include the potentially dischargeable claims of other unsecured creditors who had been scheduled by Debtor on his original bankruptcy schedules, except Discover and Unify Federal Credit Union.

Perhaps if the parties in interest could have considered the economic consequences of this case, which they may now do in hindsight, they may have come to a different decision on how the case was handled, but in the court's view, the trustee reasonably and diligently handled the administration of the bankruptcy estate in accordance with his statutory duties under the Bankruptcy Code and vindicated the purposes of the Code as reflected in the court's decisions on his claims to revoke the discharge in this case, his objections to the claimed exemptions, his opposition to the motion to convert and his motion for sale of real property.

1    Alternatively, the court agrees with the argument of the trustee that the motions

2   to remove him seek improper reconsideration of the court's order of August 23, 2023

3   denying Debtor's prior motion to remove the trustee.  Debtor's prior motion to remove

4   the trustee was on grounds that the trustee did not have "clean hands," and his current

5   motions make essentially the same argument that the trustee should not have

6   administered the case, or did not have "clean hands" in doing so.   Regarding orders

7   before final judgment, "reconsideration is an 'extraordinary remedy, to be used

8   sparingly.'  Absent highly unusual circumstances, a motion for reconsideration will not

9   be granted "unless the district court is presented with *newly discovered evidence,*

10  *committed clear error, or if there is an intervening change in the controlling law*.'"

11  Stevenson and Fitzgerald, *Rutter Group Practice Guide: Federal Civil Procedure Before*

12  *Trial, California and Ninth Circuit Edition*, ¶ 12:158 (online edition April 2024 update),

13  *citing and quoting, Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th

14  Cir. 2000) (emphasis added; internal quotation marks omitted).  "[R]eargument should

15  not be used as a means to argue new facts or issues that inexcusably were not

16  presented to the court in the matter previously decided." *Id., citing and quoting,*

17  *Bhatnagar v. Surrendra Overseas Ltd*., 52 F3d 1220, 1231 (3rd Cir. 1995)(citation and

18  internal quotation marks omitted).  There is no cause for reconsideration here as there

19  is no newly discovered evidence, commission of clear error or an intervening change in

20  the controlling law; it is just Debtor making arguments that he did not make in his prior

21  motion, but is now making them in his new motions that he should have made the first

22  time in his prior motion.   Debtor may not make the same motions again and again

23  because he has thought of new arguments.

24    Regarding the trustee's argument that the motions to remove him should be

25  denied as moot because the court approved the trustee's final report and the final fee

26  applications of the trustee and his professionals by its order filed and entered on

27  September 21, 2022 (Docket No. 654) and the trustee filed his final account and

28  distribution report on December 1, 2022 (Docket No. 692), certifying that the estate has

1  been fully administered, and Debtor's appeal of the court's order approving the final fee

2  applications of the trustee and his professionals was dismissed by the District Court by

3  order filed and entered on October 27, 2023  (Docket No 811), the court agrees.

4  Alternatively, the motions should be denied as moot because the estate has been fully

5  administered and the trustee has completed his duties in the case.  Since the case has

6  been fully administered, there is no point of removal of the trustee who satisfactorily

7  completed his statutory duties as the Chapter 7 trustee.

8      Regarding the trustee's argument that the motions to remove him should be

9  denied on grounds that the motions are "unintelligible" and "nothing more than twaddle."

10  The Merriam-Webster Dictionary defines "unintelligible," an adjective, as follows:

11  "unable to be understood or comprehended.  Merriam-Webster Online Dictionary

12  (accessed on April 16, 2024 at  https://www.merriam-

13  webster.com/dictionary/unintelligible).  The Merriam-Webster Dictionary defines

14  "twaddle," a noun as follows: "a: silly idle talk: DRIVEL; b: something insignificant or

15  worthless : NONSENSE - that idea is pure twaddle."  *Id.* (accessed on April 16, 2024 at

16  https://www.merriam-webster.com/dictionary/twaddle).  Having reviewed Debtor's

17  motions, the court does not consider them to be completely unintelligible as the court

18  could make out the meaning of Debtor's contentions.  Having reviewed Debtor's

19  motions, the court also does not consider them to be twaddle or drivel, just based on

20  erroneous reasoning as discussed above.  What is concerning to the court is that

21  Debtor keeps making arguments that he made before which the court determined to be

22  erroneous.  While perhaps not twaddle, Debtor's arguments are erroneous as the court

23  has previously determined and now determines to be erroneous, and if he makes them

24  again in future documents that he files with the court in this case and related adversary

25  proceedings, they will be considered frivolous and sanctionable pursuant to Federal

26  Rule of Bankruptcy Procedure 9011.  The court will deny the motions not because they

27  are unintelligible and are twaddle, but simply because they are based on erroneous

28  arguments as discussed above.

1    Regarding the trustee's other opposition arguments, the court agrees with the

2    trustee that the motions should be denied because they are without evidentiary

3    foundation for the reasons discussed above in this memorandum decision.  However,

4    the court disagrees with the trustee's argument that the motions should be denied

5    because they do not meet the pleading standards of Federal Rule of Civil Procedure

6    8(a) since except in limited circumstances, motions are not regarded as pleadings, and

7    thus, Rule 8(a) is inapplicable to motions.  *Parker v. United States,* 110 F.3d 678, 682

8    and n. 9 (9th Cir. 1997) (citation omitted).

9    For the foregoing reasons, the court determines that Debtor has failed to meet

10    his burden of proving cause to remove the trustee under 11 U.S.C. § 324(a) and will

11    deny the motions to remove the trustee by a separate order being filed and entered

12    concurrently herewith.

13    IT IS SO ORDERED.

14                                    ###

15

16

17

18

19

20

21

22

23

24

25    Date: May 1, 2024

26                                    _____
                                     Robert Kwan
                                     United States Bankruptcy Judge

27

28

-32-