

FILED & ENTERED

MAY 10 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

|  |  |
|---|---|
| In re:<br><br>ARTURO GONZALEZ,<br><br><div align="right">Debtor.</div> | Case No. 2:15-bk-25283-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON DEBTOR ARTURO GONZALEZ'S REVISED MOTION TO VACATE THE FOLLOWING JUDGMENTS OR ORDERS FOR "FRAUDS UPON THE COURT:" DOCKET 51, ADVERSARY DOCKET 19, DOCKET 84, DOCKET 125, DOCKET 127, DOCKET 137, DOCKET 393, DOCKET 443, DOCKET 504, DOCKET 520**<br><br>**<u>Vacated Hearing</u>**<br><br>Date: April 30, 2024<br>Time: 1:30 p.m. |

Pending before the court is the revised motion of Debtor Arturo Gonzalez to vacate the following judgments or orders for "Frauds Upon the Court:" Docket 51, Adversary Docket 19, Docket 81, Docket 84, Docket 125, Docket 127, Docket 137, Docket 393, Docket 443, Docket 504, Docket 520 in the above-captioned bankruptcy case (Docket No. 844) and in the related adversary proceeding, *Avery v. Gonzalez,*

Adv. No. 2:16-ap-01037-RK, filed on February 6, 2024.  In the motion, Debtor alleges

that the motion is brought under Federal Rules of Civil Procedure 60(b)(3), 60(b)(6) and

60(d)(3) incorporated in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure

9024.  Motion, Docket Nos. 844 at 3 (internal page citation at 1) and 844-1 at 44

(internal page citation at 92).

**Legal Standards for Relief from Judgment under Federal Rule of
Bankruptcy Procedure 9024, Making Applicable Federal Rule of Civil
Procedure 60(b)(3), (b)(6), (d)(1) and (d)(3) in Bankruptcy Cases**

Federal Rule of Bankruptcy Procedure 9024 states:

> Rule 60 F.R.C.P. applies in cases under the [Bankruptcy] Code except
> that (1) a motion to reopen a case under the Code or for reconsideration of an
> order allowing or disallowing a claim against the estate entered without a contest
> is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint
> to revoke a discharge in a chapter 7 liquidation case may be filed only within the
> time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order
> confirming a plan may be filed only within the time allowed by §1144, § 1230, or
> § 1330.  In some circumstances, Rule 8008 governs postjudgment motion
> practice after an appeal has been docketed and is pending.

The general rule of Federal Rule of Bankruptcy Procedure 9024 making Federal

Rule of Civil Procedure 60 in cases under the Bankruptcy Code applies to Debtor's

motions as the express exceptions in Rule 9024 do not apply.

Federal Rule of Civil Procedure 60(b)(3) and (6) states in relevant part:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the following
> reasons:

> ***

> (3)     fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;

> ***

> (6)     any other reason that justifies relief.

Debtor argues that the basis for his motion for relief from judgment under Federal

Rule of Civil Procedure 60(b)(3) and 60(b)(6) is "fraud on the court."  Motion, Docket

Nos. 844, 844-1 and 844-2.  The United States Court of Appeals for the Ninth Circuit

(Ninth Circuit) has recognized that a federal court may vacate a judgment for fraud on

the court based on its inherent powers to protect its integrity.  *In re Levander,* 180 F.3d

1114, 1118-1119 (9th Cir. 1999).  The Ninth Circuit in *Levander* observed: "When a court

vacates a judgment obtained by fraud, it not only rids itself of the defilement caused by

the fraud, but also restores the balance and fairness between the parties by removing

the benefit gained by the party that committed the fraud."  *Id.* at 1119.  To determine

whether there has been fraud on the court, the Ninth Circuit has adopted the following

test:

> "Fraud upon the court" should, we believe, embrace only that species of fraud
> which does or attempts to, defile the court itself, or is a fraud perpetrated by
> officers of the court so that the judicial machinery can not perform in the usual
> manner its impartial task of adjudging cases that are presented for adjudication.

*In re Levander,* 180 F.3d at 1119 (citations omitted).

Regarding the burden of proof for a Federal Rule of Civil Procedure 60(b)(3)

motion for fraud, the Ninth Circuit has stated:

> "To prevail, the moving party must prove by clear and convincing evidence
> that the verdict was obtained through fraud, misrepresentation, or other
> misconduct and the conduct complained of prevented the losing party from fully
> and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc*.,
> 206 F.3d 874, 880 (9th Cir.2000). "Federal Rule of Civil Procedure 60(b)(3)
> require[s] that fraud ... not be discoverable by due diligence before or during the
> proceedings." *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952
> F.2d 1144, 1148 (9th Cir.1991).

*Casey v. Albertson's Inc.,* 362 F.3d 1254, 1260 (9th Cir. 2004).

Moreover, pursuant to Federal Rule of Civil Procedure 60(c)(1), motions under

Federal Rule of Civil Procedure 60(b)(3) must be made within a reasonable time and no

more than a year after the entry or judgment or order or the date of the proceeding.

Regarding a motion for relief from judgment under the "catch-all" provision of

Federal Rule of Civil Procedure 60(b)(6), the Ninth Circuit has that the "has been used

1   sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only

2   where extraordinary circumstances prevented a party from taking timely action to

3   prevent or correct an erroneous judgment." *Fantasyland Video, Inc. v. County of San*

4   *Diego*, 505 F.3d 996, 1005 (9th Cir. 2007), *citing and quoting, United States v. Alpine*

5   *Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993). There is no set time limit for

6   a Rule 60(b)(6) motion as for motions under Rule 60(b)(1), 60(b)(2) and 60(b)(3).

7   Federal Rule of Civil Procedure 60(c)(1).

8        Federal Rule of Civil Procedure 60(d)(1) and (3) provide in relevant part:

9           This rule does not limit a court's power to:

10           (1) entertain an independent action to relieve a party from a judgment,

11              order, or proceeding;

12                  ***

13           (2)  set aside a judgment for fraud on the court.

14        Regarding an independent action for relief from judgment under Rule 60(d)(1),

15   the United States Supreme Court in *United States v. Beggerly*, 524 U.S. 38 (1998)

16   stated that there is no time limit for such independent actions, but they "must, if Rule

17   60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices

18   which, in certain instances, are deemed sufficiently gross to demand a departure' from

19   rigid adherence to the doctrine of res judicata. *Id.* at 46, *citing and quoting, Hazel-Atlas*

20   *Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250

21   (1944).

22        **<u>Alleged Judgments and Orders for which Debtor Seeks Relief from</u>**

23        Docket No. 51 is the court's order approving the application to employ Brett B.

24   Curlee as counsel to the Chapter 7 Trustee, filed and entered in this bankruptcy case on

25   February 16, 2016.

26        Adversary Docket No. 19 is the court's Order on Motion by the Plaintiff and

27   Chapter 7 Trustee for Turnover of Brokerage Commissions and for Preliminary

28   Injunction Pending Disposition of Litigation filed and entered in the related adversary

proceeding of *Avery v. Gonzalez,* Adv. No. 2:16-ap-01037-RK on February 19, 2016.

Docket No. 81 is the court's order approving the application to employ Menchaca & Company LLP as accountant to the Chapter 7 Trustee, filed and entered in this bankruptcy case on May 2, 2016.

Docket No. 84 is Debtor's amended bankruptcy schedule, specifically, an amended Schedule D, Creditors Who Have Claims Secured by Property, filed in this bankruptcy case on May 9, 2016.

Docket No. 125 is the Bankruptcy Noticing Center's certificate of notice of the court's findings of fact and conclusions of law re: motion by the Chapter 7 Trustee objecting to the Debtor's claimed exemption for certain personal property assets, filed and entered on July 14, 2016.  The court's findings of fact and conclusions of law were filed and entered on July 12, 2016 (Docket No. 119), and the order on the motion was filed and entered on the same date, July 12, 2016 (Docket No. 118).

Docket No. 127 is the court's memorandum decision and order denying Debtor's motion to convert the case from Chapter 7 to Chapter 13, filed and entered in this bankruptcy case on July 19, 2016.

Docket No. 137 is the Bankruptcy Noticing Center's certificate of notice of the court's order after hearing on motion of the Chapter 7 Trustee to approve: (1) real property sale (329 Hawaiian Avenue, Wilmington, CA  90744) free and clear of liens and interests; (2) overbid procedure; (3) real estate agent compensation; (4) directing turnover of real property; and (5) distribution of sales proceeds, filed and entered on July 31, 2016.  The order for sale free and clear of lien was Docket No. 135, which was filed and entered on July 29, 2016.

Docket No. 393 are Debtor's amended bankruptcy schedules, specifically, Amended Summary of Assets and Liabilities, Amended Schedule A/B: Property, Amended Schedule C: The Property You Claim as Exempt, Amended Schedule D, Creditors Who Have Claims Secured by Property, Amended Schedule E/F: Creditors Who Have Unsecured Claims, filed in this bankruptcy case on May 21, 2016.

1    Docket No. 443 is the court's memorandum decision and order on the Chapter 7

2    Trustee's motion objecting to exemptions claimed in Debtor's amended schedules filed

3    on May 21, 2016, filed and entered in this bankruptcy case on August 21, 2019.

4    Docket No. 504 are Debtor's amended bankruptcy schedules, specifically,

5    Amended Schedule A/B: Property, Amended Schedule C: The Property You Claim as

6    Exempt, Amended Schedule D, Creditors Who Have Claims Secured by Property,

7    Amended Schedule G: Executory Contracts and Unexpired Leases, filed in this

8    bankruptcy case on May 27, 2021.

9    Docket No. 520 is the court's memorandum decision and order on the Chapter 7

10    Trustee's motion objecting to Debtor's amended schedules filed on May 27, 2021 to

11    claim a homestead exemption in real property at 329 Hawaiian Avenue, Wilmington,

12    CA, and to claim a "tools of the trade" exemption in commissions, filed and entered in

13    this bankruptcy case on September 9, 2021.

14    **Debtor's Motion**

15    Debtor now moves pursuant to Federal Rule of Bankruptcy Procedure 9024,

16    making applicable to this bankruptcy case Federal Rules of Civil Procedure 60(b)(3),

17    60(b)(6) and 60(d)(3), to vacate the orders and documents described above which were

18    filed in this bankruptcy case and in the related adversary proceeding on grounds of

19    "Frauds upon the Court" and of denial of due process by Debtor's former bankruptcy

20    attorney, the Chapter 7 Trustee and his professionals, his attorney and his accountant,

21    and the court itself.   Motion, Docket No. 844 at 3-50, 844-1 at 1-50 and 844-2 at 1-14

22    (internal page citation at 1-146).

23    **Trustee's Opposition**

24    On April 15, 2024, the Chapter 7 Trustee Wesley H. Avery filed his opposition to

25    the motion to vacate various orders and documents in the case and related motions to

26    remove him as the Chapter 7 trustee   Opposition, Docket No. 864.  The trustee argues

27    that Debtor's motions, including the motion to vacate various orders and documents,

28    "are unintelligible and are nothing more than twaddle."  *Id.* at 2.  The trustee also argues

that the motions seek reconsideration of final orders without cause.  *Id.* at 2.  The

trustee also argues that the motion to vacate various orders and documents for his

alleged "frauds upon the court" is based on allegations brought and decided by the court

in the related adversary proceeding of *Gonzalez v. Avery,* Adv. No. 2:24-ap-01010-VZ,

dismissing the claims against the trustee by order filed and entered on March 22, 2024,

with the trustee arguing that the dismissal was a final order which may not be

collaterally attacked in this proceeding of the main bankruptcy case.  *Id.*  The trustee

further argues that the motion to vacate various orders and documents must be denied

for violation of the pleading standards of Federal Rule of Civil Procedure 8(a) and for

lack of evidentiary foundation.  *Id.* at 2-3.  Finally, the trustee argues that the motion to

vacate orders and documents is moot because the bankruptcy estate is presumed to

have been fully administered based on the trustee's final account and distribution report

(TDR) filed on December 1, 2022 and the bankruptcy case may be closed as a

ministerial act by the Clerk of the Court without the review of the judge presiding over

the case.  *Id.* at 3.

### **Analysis and Rulings**

Having considered this motion of Debtor and the trustee's opposition thereto,

pursuant to Local Bankruptcy Rule 9013-1(j)(3), the court issued an order determining

that oral argument on the motion was not necessary and dispensed with oral argument,

vacated the hearing on the motion which had been rescheduled for April 30, 2024 and

took the motion under submission (Docket No. 865).  Having taken the motion under

submission, the court now rules as follows.

The court first observes that not all of the orders and documents for which Debtor

seeks relief from finality of judgment under Federal Rule of Civil Procedure 60 are final

orders or judgments.  Federal Rule of Civil Procedure 60(b) specifically provides in

relevant part that "the court may relieve a party or its legal representative from a final

judgment, order or proceeding" for the reasons listed in Rule 60(b).  Rule 60(b) does not

apply to judgments, orders or proceedings that are not final or to documents that are not

1    judgments, orders or proceedings.

2         Docket Nos. 84, 393 and 504 are Debtor's amended bankruptcy schedules,

3    which were filed either by his former bankruptcy attorney on Debtor's behalf or by

4    Debtor himself as a self-represented litigation.  These documents are not orders,

5    judgments or proceedings of the court, let alone, final judgments, orders or proceedings

6    of the court, and therefore, they are outside the purview of Federal Rule of Civil

7    Procedure 60(b), which provides in relevant part that "the court may relieve a party or its

8    legal representative from a final judgment, order or proceeding" for the reasons listed in

9    Rule 60(b).  Accordingly, the court will deny Debtor's motion as to these documents

10   since Rule 60(b) does not apply to them.

11        Adversary Docket 19, which is the court's order granting in part and denying in

12   part the trustee's motion for preliminary injunction, ordering partial turnover of real

13   estate sales commissions by Debtor to the trustee is not a final judgment or order in the

14   adversary proceeding, *Avery v. Gonzalez,* Adv. No. 2:16-ap-01037-RK, and Federal

15   Rule of Civil Procedure 60(b) is not applicable to such an interlocutory order and the

16   motion should be denied with respect to this order or docket entry.  *Prudential Real*

17   *Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (citations

18   omitted).  However, the court has addressed Debtor's challenges to the court's turnover

19   orders in the adversary proceeding in ruling upon his motions to revise or vacate Docket

20   124 in a memorandum decision which was filed and entered on May 1, 2024 as

21   Adversary Docket No. 287.[1]  Accordingly, the court will deny the motion as to Adversary

22   Docket 19 because Rule 60(b) does not apply to an interlocutory order such as

23   Adversary Docket 19, but also incorporates by reference its analysis in its memorandum

24   decision on Debtor's motions to revise or vacate Docket 124 (Adversary Docket No.

25   287), which addresses Debtor's challenges to the court's turnover orders on the merits,

26   such as Adversary Docket 19.

27

28   _____
     [1]   The citation for the memorandum decision on Westlaw is *Avery v. Gonzalez (In re Gonzalez,* 2024 WL
     1925542 (Bankr. C.D. Cal. May 1, 2024).

1    Docket Nos. 19 and 81, which are the court's orders approving the applications

2  of the trustee to employ his attorney and his accountant as professional persons to

3  assist him in the administration of the bankruptcy estate are not final judgments or

4  orders.  *In re S.S. Retail Stores Corp.,* 162 F.3d 1230, 1231-1232 (9th Cir. 1998).

5  Federal Rule of Civil Procedure 60(b) is not applicable to such interlocutory orders and

6  the motion should be denied with respect to these orders or docket entries.

7  Accordingly, the court will deny the motion as to Docket Nos. 19 and 81 because Rule

8  60(b) does not apply to these interlocutory orders.  Alternatively, to the extent that these

9  orders are considered final judgments or orders within the meaning of Rule 60(b), the

10  court will deny the motion because Debtor has failed to show that such orders were

11  timely filed within the one year filing period as required by Rule 60(c)(1), and on the

12  merits, such orders were fraud on the court as discussed in this memorandum decision.

13    Docket No. 127 is the court's memorandum decision and order denying Debtor's

14  motion to convert case, filed and entered on July 19, 2016.  The case law is divided as

15  to whether an order denying a motion for conversion is a final order or judgment.

16  Courts disagree whether an order denying a motion to convert a bankruptcy case to

17  another chapter is a final appealable order.  *United States Bakery v. Svenhard's*

18  *Swedish Bakery*, 632 B.R. 312, 318-320 (E.D. Cal. 2021) (order denying motion to

19  convert is interlocutory, not final); *In re Fox,* 241 B.R. 224, 229-230 (10th Cir. BAP

20  1999); *contra, In re Daughtrey* (11th Cir. 2018) 896 F3d 1255, 1273-1274 (11th Cir.

21  2018) (order denying conversion motion treated as final appealable order).  The court

22  does not take a position on the issue whether an order denying conversion is a final

23  order, but if the order was interlocutory, then Federal Rule of Civil Procedure 60(b) does

24  not apply.  If the order was final, the motion for relief from judgment under Rule 60(b) is

25  time-barred by Rule 60(c)(1) requiring that such a motion be filed within one year of the

26  date of entry of the final order in 2016, but here the motion filed in 2024 would have

27  been over seven years from the date of entry of the order, and the order was not a fraud

28  on the court for the reasons discussed in this memorandum decision.

Docket Nos. 125, 443 and 520 relating to the court's orders denying Debtor's claimed exemptions filed and entered on or about July 12, 2016, August 21, 2019 and May 27, 2021 are, or relate to, final orders for purposes of Federal Rule of Civil Procedure 60(b*). In re Gilman,* 887 F.3d 956, 961-962 (9th Cir. 2018). [2]

Docket No. 137 is the certificate of notice of the court's order for sale of Debtor's real property free and clear of lien, and the order itself (Docket No. 135) filed and entered on July 2, 2016, August 21, 2019 and May 27, 2021 was a final order for purposes of Federal Rule of Civil Procedure 60(b). *In re Lyons*, 995 F.2d 923 (9th Cir. 1993)

As discussed above, not all of the orders and documents for which Debtor seeks relief from finality in his motion are final judgments for purposes of Federal Rule of Civil Procedure 60(b), and therefore, the motion as to the orders and documents filed in the bankruptcy case and related adversary proceeding which are not final orders or judgments, the court will deny the motion because Rule 60(b) does not apply to such orders and documents.

In his motion to vacate judgments and orders, Debtor cites Federal Rule of Civil Procedure 60(b)(3), 60(b)(6) and 60(d)(3) as his legal authority for his motion. Motion, Docket No. 844 at 3 (internal page citation at 1). As discussed below, the court will consider Debtor's motion under these rules for judgments and orders which are final for purposes of Rule 60(b), that is, the orders denying Debtor's exemptions, the order for sale of real property and the order denying Debtor's motion for conversion.

To the extent that Debtor in his motion is moving for relief from judgment under Federal Rule of Civil Procedure 60(b)(3) for fraud, the motion will be denied because it was not timely made within the one year time limit for Rule 60(b)(3) motions set forth in Rule 60(c)(1). Debtor's motion seeking relief under Rule 60(b)(3) (Docket No. 844) was filed February 6, 2024. None of the final judgments and orders in Debtor's motion, that

---

[2] As discussed above, Docket No. 125 was the certificate of notice of the court's findings of fact and conclusions of law relating to disallowance of Debtor's claimed exemptions for the final order in Docket No. 119.

1   is, the orders denying Debtor's exemptions, the order for sale of real property and the

2   order denying Debtor's motion for conversation, were filed and entered within the one

3   year period prescribed under Rule 60(c)(1) before he filed the motion as the final

4   judgments and orders were filed in 2016, 2019 and 2021.

5           As there are no time limits on motions for relief from final judgment or order

6   under Federal Rules of Civil Procedure 60(b)(6) and 60(d)(1) and (3), the court will

7   address Debtor's motion on the merits.  In his motion, Debtor argues that the final

8   judgments and orders that he has identified in his motion should be set aside for "fraud

9   on the court" and/or for denial of due process.  Although Debtor's motion is convoluted

10  and hard to understand, the court discerns that he raises three arguments why the final

11  judgments and orders should be set aside for "fraud on the court" by the trustee,

12  Debtor's former bankruptcy attorney and the court:  (1) the trustee continued to

13  administer the bankruptcy estate, including seeking asset turnover relief against Debtor,

14  after he (the trustee) was "defanged" when Debtor filed his motion to convert the case

15  from Chapter 7 to Chapter 13, Motion, Docket No. 844-1 at 3-9 (internal page citation at

16  51-57 and 97-99); (2) the continuation of the bankruptcy case, including assertion of

17  unnecessary exemptions and the bankruptcy sale of the residence, was an abuse of the

18  Bankruptcy Code after Debtor's former bankruptcy attorney, the trustee and the court

19  were put on notice that Debtor had no enforceable and potentially dischargeable debts

20  due to the expiration of the collection statutes of limitations, Motion, Docket No. 844 at

21  17 and 50 (internal page citation at 15 and 48), 844-1 at 1-50  (internal page citation at

22  49-98), 844-2 at 1-31 and 35-47 (internal page citation at 99-129 and 133-145); and (3)

23  the real estate sales commissions that the court ordered turnover at the trustee's

24  request and that Debtor's former bankruptcy attorney had claimed exemptions to on

25  behalf of Debtor was not property of the bankruptcy estate because they belonged to

26  Debtor's California S corporation, a separate legal entity, Motion, Docket No. 844 at 34-

27  49 (internal page citation at 32-47).   None of these arguments have merit.

28          The court has extensively addressed Debtor's first argument for fraud on the

court that his conversion motion "defanged" the trustee, transferring control over the

bankruptcy estate to Debtor in its memorandum decision on Debtor's motion to remove

the trustee, Docket No. 867 at 20-22, filed and entered on May 1, 2024, which is

incorporated herein by reference for the sake of brevity. [3]  Debtor's first argument that

there was fraud on the court lacks merit because the trustee never lost any authority to

administer the bankruptcy estate as the court denied Debtor's motion for conversion

and the mere filing of a motion to convert does not deprive the trustee of his authority to

administer the estate.  *Id*. [4]

        The court has also extensively addressed Debtor's second argument for fraud on

the court that the case was an abuse of the Bankruptcy Code based on alleged lack of

enforceable and potentially dischargeable debts in its memorandum decision on

Debtor's motion to remove the trustee, Docket No. 867 at 5-20, filed and entered on

May 1, 2024, which is incorporated herein by reference for the sake of brevity.  Debtor's

second argument that there was fraud on the court lacks merit because he has failed to

show with admissible evidence that all of his potentially dischargeable debts that he

listed on his bankruptcy schedules were unenforceable due to expiration of the

collection statutes of limitations and thus, he did not and could not show that the trustee

and the court were put on notice of such alleged fact.  *Id.*

        The court has also extensively addressed Debtor's third argument for fraud on

---

[3]  The citation for the memorandum decision on Westlaw is *In re Gonzalez,* 2024 WL 1927725 (Bankr.
C.D. Cal. May 1, 2024).

[4]  The cases cited in Debtor's motion, Docket No. 844 at 22-24 (internal page citation at 20-22), *In re
Jennings*, No. 12-32615, 2013 WL 1137052 (Bankr. W.D.N.C. Mar. 19, 2013); *In re Porter*, 276 B.R. 32
(Bankr. D. Mass. 2002) and *In re Ponzini*, 277 B.R. 399 (Bankr. E.D. Ark. 2002) do not support his
argument as the debtors' motions to convert their cases from Chapter 7 to Chapter 13 were denied for
lack of eligibility for insufficient income to fund a plan and/or for engaging in bad faith misconduct.  The
court in the *Jennings* case referred to "defanging" the trustee as that court observed that is what the
debtors in that case wanted to do by converting their Chapter 7 case to Chapter 13, but did not hold that
the debtors were able to do that. *In re Jennings*, No. 12-32615, 2013 WL 1137052, slip op. at *4.  The
trustee was never "defanged" through conversion to Chapter 13 in that case because the court denied
debtors' motion to convert. *Id.,* slip op. at *4-6. Furthermore, another case cited in Debtor's motion,
Docket No. 844-1 at 50 (internal page citation at 98), *In re Calder*, 973 F.2d 862 (10th Cir. 1992) expressly
refutes Debtor's argument that his filing of the motion to convert the case "defanged" the trustee because
the Tenth Circuit in that case held that conversion from Chapter 7 to Chapter 13 is not effective until an
order of the court is entered granting conversion, and not upon the debtor's filing of the motion to convert.

1   the court that the bankruptcy estate improperly included his real estate sales

2   commissions in its memorandum decision on Debtor's earlier motion to remove the

3   trustee, Docket No. 449 at 8 n.1, filed and entered on August 23, 2019, which is

4   incorporated herein by reference for the sake of brevity.  Debtor's third argument that

5   there was fraud on the court lacks merit because the prepetition real estate sales

6   commissions were property of the bankruptcy estate because he had the right to the

7   income because he was the broker/agent who generated and earned the commissions

8   and whatever such income passed through his California S corporation, a pass-through

9   entity, to him as the shareholder or paid to him as the employee or independent

10   contractor who generated and earned the commissions.  *Id.*

11        Regarding Debtor's argument that his real estate sales commissions were not

12   property of the bankruptcy estate, the court's discussion of the issue was set forth in its

13   footnote 1 in the memorandum decision, Docket No. 449, which is quoted as follows:

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> A California S Corporation (with the "S" referring to Subchapter S of the Internal Revenue Code, 26 U.S.C.) is a corporation incorporated under California law which is treated like a partnership for federal and state income tax purposes whereby each item of income and expense is "passed through" directly to the shareholder(s) and is not taxed at the corporate level. Fotenos and Rybka, *Rutter Group California Practice Guide: Corporations*, ¶¶119 and 120 (online ed., February 2019 update), citing inter alia, California Revenue & Taxation Code, §§23801(a); Subchapter S of the Internal Revenue Code, 26 U.S.C. §§1361-1379; *Valentino v. Franchise Tax Board*, 87 Cal.App.4th 1284, 1288-1289 (2001); *Handlery Hotels, Inc. v. Franchise Tax Board*, 39 Cal.App.4th 1360, 1363 (1995). As one California corporate law treatise has observed, "[t]his gives the owners of closely-held corporations the advantages of the corporate form (e.g., centralized management, limited personal liability), while avoiding the double-taxation of corporate profits." *Id.* While California imposes a 1.5% franchise tax on the S corporation's net taxable income, the profits and losses of a California S corporation are "passed through" to the shareholders for state and federal income tax purposes.  *Id.* The income and expenses of Long Beach Realty, Inc., Debtor's wholly owned California S corporation "passed through" and are attributable to him and reportable on his state and federal income tax returns. Thus, the income from the real estate sales commissions paid to Long Beach Realty, Inc., "passed through" to Debtor as its sole shareholder, and while it may have a business deduction for paying compensation to its broker and salesperson whose services generated the commissions, who was Debtor anyway, the net income from the commissions paid to the S corporation are attributable to Debtor, and the compensation from the S corporation to its broker

and salesperson, Debtor, are reportable by Debtor on his state and federal income tax returns. Debtor had prepetition accounts receivable from the commissions generated by his prepetition services as a broker and salesperson either way attributable to him as the sole shareholder of his S corporation, Long Beach Realty, Inc., and/or its broker and salesperson.

Docket No. 449 at 8 n. 1.

As stated above, to determine whether there has been fraud on the court, the Ninth Circuit has adopted the following test:

"Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*In re Levander,* 180 F.3d at 1119 (citations omitted).  As discussed above, Debtor's arguments that there was fraud on the court in this case lack merit as he has not shown fraud on the court that there was some fraud that did or attempted to defile the court or perpetrated by officers of the court, including the trustee, Debtor's former bankruptcy counsel or the court itself, by clear and convincing evidence as required under Rule 60(b)(3) as to the final judgments and orders made in this case listed above.  That is, Debtor has failed to show that the trustee improperly administered the bankruptcy estate because Debtor had no collectible and potentially dischargeable unsecured debtors.  Debtor has failed to show that the trustee improperly administered the bankruptcy estate because the trustee was "defanged" when Debtor filed his motion to convert.  Debtor has failed to show that the trustee improperly administered Debtor's real estate sales commissions as property of the bankruptcy estate in this case.

To the extent that Debtor's motion is considered on the merits under Rule 60(b)(3), as discussed herein, the motion will be denied because it was not timely filed within one year of the entry of the final judgments or orders as required by Rule 60(c)(1) and on the merits, because Debtor has failed to meet his burden to prove fraud by clear and convincing evidence under the standard recognized by the Ninth Circuit in *Casey v. Albertson's Inc.,* 362 F.3d at 1260 as cited previously.

1

2      **Due Process**

3          Debtor made one specific allegation that he was denied due process by the court

4  by allowing his former bankruptcy attorney to appear by telephone for final closing

5  arguments during the trial of the contested matter of Debtor's motion to convert the case

6  on July 15, 2016 and not allowing Debtor to speak during final closing arguments.

7  Motion, Docket No. 844-1 at 37-48 (internal page citation at 85-96).  Debtor argues that

8  if he had been allowed to speak, he would have argued that the case "demanded"

9  dismissal as an abuse of the Bankruptcy Code on grounds that he had no enforceable

10 and potentially dischargeable unsecured debts.  *Id*.  Debtor argues that during final

11 closing arguments at the hearing on July 15, 2016, he sent emails to his attorney at the

12 time asking the attorney why he could not speak.  *Id*. and Docket No. 844-3 at 44-49

13 (Exhibit 11).  However, these attorney-client communications between Debtor and his

14 attorney were not shared with the court during the hearing on July 15, 2016 as such

15 communications were not reflected on the record in the audio recording of the hearing,

16 and counsel for Debtor did not request the court with his consent for Debtor to speak on

17 his own behalf during closing arguments.  Audio Recording, Trial, July 15, 2016.  Debtor

18 argues that the court and his attorney deprived him of the opportunity to speak causing

19 a fraud on the court and denied him his rights under the Fifth and Fourteenth

20 Amendment of the United States Constitution.  Motion, Docket No. 844-1 at 43 (internal

21 page citation at 91)

22          Regarding Debtor's former bankruptcy attorney's telephonic appearance at the

23 hearing on July 15, 2016, it was and is the policy and procedure of the court to allow

24 counsel to appear by telephone in lieu of appearing in person for hearings which are not

25 evidentiary hearings at which witness testimony is taken as an accommodation to

26 counsel for cost and convenience, and in this case, Debtor's former bankruptcy attorney

27 chose to appear by telephone to make his final closing arguments for the trial at the

28 hearing on the contested matter of Debtor's motion to convert the case on July 15,

2016.  The court was not involved in the making of counsel's choice to appear by telephone for final closing arguments on July 15, 2016 other than to allow him and other counsel to make such a choice.

Witness testimony and other evidence were taken at the first day of trial of the contested matter of Debtor's motion to convert on June 23, 2016, including the testimony of Debtor as a witness, and the court closed the evidence and heard preliminary closing arguments on the matter that day and scheduled final closing arguments for July 15, 2016.  Audio Recording, Trial, June 23, 2016. [5]  On the second day of trial on July 15, 2016, counsel were to make final closing arguments with no witness testimony or other evidence to be received as the evidence on the matter had been closed.  Audio Recording, Trial, July 15, 2016.  Debtor appeared in court in person for both trial days on June 23, 2016 and July 15, 2016, and he was represented by his former bankruptcy attorney at the hearings on both days of trial.  *Id*.  That is, Debtor's former bankruptcy attorney was Debtor's counsel of record during the trial and in the bankruptcy case at that time. *Id.* [6]  In this capacity, Debtor's former bankruptcy attorney was primarily responsible for handling the subject contested matter of Debtor's motion to convert the case as counsel prepared and filed all of the moving and reply papers as well as Debtor's trial declaration, an original trial brief and a supplemental trial brief, and counsel handled the trial of the matter on behalf of Debtor, including the making of opening and closing arguments, the examination of witnesses and the presentation of evidence and the making of evidentiary objections.  Debtor's Notice of Motion and Motion to Convert, Docket Nos. 27 and 28, filed on January 15, 2016; Debtor's Reply to Trustee's Opposition to Motion to Convert, Docket No. 66, filed on March 25, 2016;

---

[5]  The references to the Audio Recordings, Trial, on June 23, 2016 and July 15, 2016 are to the official audio recordings of the trial proceedings before the court which had been made by official court recorders employed by the court and such audio recordings are maintained in the regular course of business by the Office of the Court Clerk, which are available to the public.

[6]  Debtor's former bankruptcy counsel formally withdrew from representation of Debtor through a substitution of attorney filed on November 6, 2016 (Docket No. 158) wherein Debtor substituted in the case as a self-represented party.

1 | Debtor's Trial Declaration, Docket No. 94, filed on June 3, 2016; Debtor's Trial Brief,

2 | Docket No. 103, filed on June 16, 2016; Debtor's Supplemental Trial Brief, Docket No.

3 | 122, July 12, 2016.

4 |      During final closing arguments on the second day of trial on July 15, 2016, while

5 | the court was addressing counsel, Debtor raised his hand to interrupt the closing

6 | arguments and speak on his own directly to the court and opposing counsel, but the

7 | court did not allow him to speak on his own because as the court told Debtor, he was a

8 | party represented by counsel.  Audio Recording, Trial, July 15, 2016.  Because Debtor

9 | was a party represented by counsel who was also appearing for him at the hearing, the

10 | court did not allow Debtor to speak and interrupt the closing arguments which were

11 | being handled on his behalf by his counsel and especially without his counsel's consent.

12 | See California Rule of Professional Conduct 2-100 [7] (now California Rule of

13 | Professional Conduct 4.2) (California ethical rule providing that an attorney generally

14 | may not communicate about the subject of the representation with a party known to be

15 | represented by another attorney without that other attorney's consent).  Debtor's former

16 | bankruptcy attorney as Debtor's counsel of record was representing Debtor at the

17 | hearing on July 15, 2016 and did not give his consent to have Debtor speak on his own

18 | directly to the court and opposing counsel during the hearing on July 15, 2016.  Audio

19 | Recording, Trial, July 15, 2016.  It now appears based on the emails that Debtor sent to

20 | his attorney during the final closing arguments on July 15, 2016, counsel did not allow

21 | his client, Debtor, to speak directly to the court and opposing counsel, which confirms

22 | the lack of counsel's consent to allow Debtor as a represented party to address the

23 |

24 | [7]   Rule 2-100 Communication With a Represented Party, which was in effect in 2016 stated: "(A) While

25 | representing a client, a member [of the State Bar of California] shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."  The California Supreme

26 | Court in *Abeles v. State Bar,* 9 Cal.3d 603 (1973), commented about a predecessor rule as follows: "Rule 12 prohibits communication 'upon a subject of controversy' with 'a party represented by counsel' in the

27 | absence and without the consent of such counsel. (*See Turner v. State Bar,* 36 Cal.2d 155, 158, 222 P.2d 857.) This rule 'is necessary to the preservation of the attorney-client relationship and the proper

28 | functioning of the administration of justice . . .. It shields the opposing party not only from an attorney's approaches which are intentionally improper, but, in addition, from approaches which are well intended but misguided."  *Id.* at 609.

court and opposing counsel representing the trustee.

In the case of *Geders v. United States*, 425 U.S. 80 (1976), the United States

Supreme Court commented on the role of the trial judge in federal justice system, and

while the comments in the specific case before the Supreme Court were about the

cases in the federal criminal justice system, the comments are applicable in cases in the

federal civil justice system, such as this one:

> Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice. "(T)he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321, 1324 (1933). A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion. *Goldsby v. United States*, 160 U.S. 70, 74, 16 S.Ct. 216, 218, 40 L.Ed. 343, 345 (1895); *United States v. Martinez-Villanueva*, 463 F.2d 1336 (CA9 1972); *Nelson v. United States*, 415 F.2d 483, 487 (CA5 1969), *cert. denied*, 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970). Within limits, the judge may control the scope of rebuttal testimony, *United States v. Chrzanowski*, 502 F.2d 573, 575-576 (CA3 1974); *United States v. Perez*, 491 F.2d 167, 173 (CA9), *cert. denied Sub nom., Lombera v. United States*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974); may refuse to allow cumulative, repetitive, or irrelevant testimony, *Hamling v. United States*, 418 U.S. 87, 127, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590, 626 (1974); *County of Macon v. Shores*, 97 U.S. 272, 24 L.Ed. 889 (1877); and may control the scope of examination of witnesses, *United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141, 149 (1975); *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680, 706 (1942). If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.

*Id.* at 86-87; *see also,* 75 American Jurisprudence (Am. Jur.) 2d, Trial, § 117 (Court's

control over conduct of trial, Generally) (online edition May 2024 update), *citing and*

*quoting, Geders v. United States, supra,* for the general proposition that in all court

cases, "[t]he judge is not a mere moderator, but is the governor of the trial for the

purpose of assuring its proper conduct and of determining questions of law."

As the trial judge, the undersigned exercised his supervisory authority and

control over the trial proceedings relating to the contested matter of Debtor's motion to

convert on June 23, 2016 and July 15, 2016.  As recognized above in the case law,

> "(T)he judge is not a mere moderator, but is the governor of the trial for the
> purpose of assuring its proper conduct and of determining questions of law." A
> [civil] trial does not unfold like a play with actors following a script; there is no
> scenario and can be none. The trial judge must meet situations as they arise and
> to do this must have broad power to cope with the complexities and
> contingencies inherent in the adversary process. To this end, he may determine
> generally the order in which parties will adduce proof; his determination will be
> reviewed only for abuse of discretion. Within limits, the judge may control the
> scope of rebuttal testimony, may refuse to allow cumulative, repetitive, or
> irrelevant testimony, and may control the scope of examination of witnesses.. If
> truth and fairness are not to be sacrificed, the judge must exert substantial
> control over the proceedings.

*Geders v. United States,* 425 U.S. at 86-87 (citations omitted).

In exercising supervisory control over the trial proceedings, the undersigned was

"not a mere moderator, but the governor of the trial for the purpose of assuring its

proper conduct and of determining questions of law."  *Id.*  As the Supreme Court

recognized in *Geders v. United States*, "A [civil] trial does not unfold like a play with

actors following a script; there is no scenario and can be none" and "The trial judge

must meet situations as they arise and to do this must have broad power to cope with

the complexities and contingencies inherent in the adversary process."  *Id.*

Debtor complains that he was denied due process because the court allowed his

counsel to appear by telephone for final closing arguments on July 15, 2016 and the

court would not allow Debtor to speak during final closing arguments on July 15, 2016.

Motion, Docket No. 844-1 at 37-48 (internal page citation at 85-96).  Debtor argues that

if he had been allowed to speak, he would have made the argument that the case

"demanded" dismissal because no unsecured creditors remained to be paid.  *Id.*

Debtor's specific due process argument is as follows:

> Judge Kwan understood that the case demanded dismissal, he
> **intentionally** kept Debtor from speaking and depriving Debtor his constitutional
> rights under the 5th and 14th Amendment.  Judge Kwan understood that the
> Debtor could start "spouting off" stuff that might not have been helpful to
> Trustee's case.  The Supreme Court case **Matthews v. Eldridge, 424 US 319**

**stated,** "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  Debtor was not allowed to speak, had Debtor been allowed to speak the case would have demanded dismissal.  Both Judge Kwan and Debtor's Attorney intentionally deprived Debtor the opportunity to speak causing a "Fraud upon the Court" and violated the Constitution's 5th and 14[th] Amendment.

Debtor's Debt was time-barred and as proven, Debtor clearly communicated to his Attorney that the unsecured debt was time barred and his Attorney demonstrated that he understood that the unsecured debt was time barred based on the declaration that he wrote on behalf of Debtor.  This evidence demonstrates that Debtor's Attorney was unwilling to adequately represent the case because based on this evidence, Debtor's case demanded dismissal.  Debtor's Attorney by failing to present and stress Debtor's evidence, Debtor's Attorney's actions constitute a "Fraud upon the Court."

\*\*\*\*

Motion, Docket No. 844-1 at 43-44 (internal page citation at 91-92) (emphasis in original).

The court properly exercised its supervisory authority over the trial proceedings in this case as to Debtor's motion to convert to conduct an orderly trial by allowing Debtor's counsel to appear and argue telephonically and by not allowing Debtor, a represented party, to interrupt closing arguments of counsel to speak on his own directly to the court and opposing counsel without his counsel's consent.  With respect to the court's allowance of Debtor's counsel to appear for final closing arguments by telephone on July 15, 2016, the decision to appear by telephone was counsel's choice, not the court's, and Debtor was not deprived of due process as Debtor had a full and fair opportunity to litigate and be heard on the contested matter of Debtor's motion to convert.  Debtor through counsel filed the motion to convert, a reply brief in response to the trustee's opposition to the motion and two trial briefs, raising the arguments on his behalf why his motion to convert should be granted, as shown on the case docket.  Debtor who was represented by counsel had a full and fair opportunity in his written papers relating to the motion to advance whatever argument he wanted to raise as shown by these papers.  Debtor now argues that he was not able to raise an argument

because of counsel's failings, which is a matter between them as the court was not privy

to Debtor's perceptions of such failings.  Debtor through counsel had a full and fair

opportunity to call witnesses to testify during the trial of the contested matter, and

Debtor had a full and fair opportunity to testify at trial as he did at the evidentiary phase

of the trial on the first day of trial as shown in the trial record as reflected in the audio

recordings of the trial proceedings.  Debtor through counsel had a full and fair

opportunity to present documentary evidence at trial and examine the witnesses who

testified during the trial also as shown in the trial record as reflected in the audio

recordings of the trial proceedings.  Debtor through counsel had a full and fair

opportunity to make oral arguments during trial, which were made preliminarily during

the first day of trial on June 23, 2016 and on a final basis during the second day of trial

on July 15, 2016 as shown in the trial record as reflected in the audio recordings of the

trial proceedings.

Debtor's complaint is that the court would not allow him to argue in addition to his

counsel during final closing arguments on the second day of trial on July 15, 2016.  The

court in exercising its supervisory authority and control over the trial proceedings

declined to allow Debtor to interrupt the final closing arguments of counsel and speak

on his own without his counsel's consent.  This was a proper exercise of the court's

supervisory authority and control over the trial proceedings because: (1) the court was

concerned that Debtor, a witness who testified during the evidentiary phase of the trial,

would attempt to give further testimony during closing arguments after the evidence had

been closed; (2) Debtor was represented by counsel who had been and was

responsible for conducting the trial on behalf of Debtor as counsel had prepared and

filed all of the written briefs on behalf of Debtor, setting forth Debtor's arguments in

support of the motion, had represented Debtor in all trial proceedings, including

examination of witnesses, presentation of evidence and making oral arguments, and it

was counsel's responsibility to make the final arguments on behalf of Debtor, and not

Debtor as a represented party, and it would have been unfair to allow both counsel and

1  the client to argue for Debtor when the court had not allowed both counsel and the client

2  to argue for the opposing party, the trustee, and no one requested leave of court to

3  allow both counsel and the client to argue for Debtor; (3) Debtor was a represented

4  party whose counsel who had not given consent for the client, Debtor, to speak directly

5  to the court and the opposing counsel about the contested matter, the subject of the

6  representation, and the court allowing Debtor to speak directly to the court and

7  opposing counsel without his counsel's consent would run afoul of the spirit, if not, the

8  letter of California Rule of Professional Conduct 2-100 and would have interfered with

9  the attorney-client relationship as Debtor might have made uncounseled statements in

10  open court which may have been damaging to his case and counsel would not have

11  been able to prevent; (4)  Debtor's argument that the case "demanded" dismissal that

12  he would have made if he had been allowed by the court to speak during final closing

13  arguments was meritless as discussed herein, and if Debtor and his counsel thought

14  such argument had any merit, such argument should have and could have been made

15  in the numerous written briefs filed on behalf of Debtor before trial or orally by counsel

16  during trial; (5) Debtor's argument that the case "demanded" dismissal that he would

17  have made if he had been allowed to speak during final closing arguments  was not

18  relevant to the matter before the court at trial, that is, Debtor's motion to convert, and

19  dismissal was not before the court as no party had filed a motion for dismissal of the

20  case, and (6) the court having considered the evidence at trial and the written and oral

21  arguments of the parties before and during trial issued a written decision explaining its

22  reasons for denial of Debtor's motion to convert.

23      Additionally, the court notes that Debtor was accorded a full and fair opportunity

24  to litigate and be heard on his motion to convert because based on the court's review of

25  the moving and opposing papers, including the trial briefs, and the audio recordings of

26  the trial proceedings, counsel for Debtor engaged in vigorous advocacy for his client,

27  making colorable arguments for relief in the written papers filed on behalf of Debtor

28  before trial and in oral arguments at trial, though ultimately unsuccessful because the

1    evidence indicated that Debtor was ineligible for conversion to Chapter 13 because he

2    had insufficient proof of regular income to fund a plan as his bankruptcy schedules

3    showed that he did not have positive regular income to fund a plan.  Memorandum

4    Decision and Order on Motion to Convert Case, Docket No. 127.  In Debtor's reply to

5    the trustee's opposition to the motion to convert, Docket No. 66, counsel argued that

6    Debtor should be allowed to exercise his right to convert the case to Chapter 13 under

7    11 U.S.C. § 706(a) because Debtor could propose a plan by selling his residence if

8    income was insufficient and the motion was in good faith addressing the trustee's

9    arguments that it was not in good faith for failure of Debtor to file timely income tax

10   returns, failure of Debtor to cure his residential loan arrearages and Debtor's use of his

11   California S corporation assets for personal living expenses.  Docket No. 66 at 2-12.  In

12   Debtor's trial brief, Docket No. 103, counsel argued that Debtor was eligible for Chapter

13   13, looking at his income "holistically," that is, he could sell his residence for a gain to

14   supplement his business income to fund a plan, and that he did not act in bad faith by

15   knowingly undervaluing his residential property, failing to disclose his prepetition sales

16   commission income and commingling his corporation's and personal income and

17   expenses.  Docket No. 103 at 1-16.  In Debtor's supplemental trial brief, Docket No.

18   122, counsel argued that Debtor has not acted in bad faith as in the case of *In re*

19   *Mitchell,* 357 B.R. 142 (Bankr. C.D. Cal. 2006), a case raised by the court, that Debtor

20   has not acted in bad faith in disclosing his prepetition sales commissions on his

21   bankruptcy schedules or in cooperating with the trustee regarding turnover of sales

22   commissions as property of the estate and that he was eligible for Chapter 13 through

23   funding a plan based on the value of claims filed by the claims bar date and possible

24   sale of Debtor's residence.  Docket No. 122 at 1-9.

25        These circumstances indicate that the court had properly exercised its

26   supervisory authority and control of the trial proceedings to conduct an orderly trial

27   when it did not permit Debtor, a represented party, to interrupt the closing arguments of

28   counsel to speak on his own without his counsel's consent when he (Debtor) raised his

1   hand for permission to speak, that Debtor had a full and fair opportunity to litigate and

2   be heard on the matter before the court and that Debtor was accorded due process with

3   respect to the matter.  As previously noted, "[a civil] trial does not unfold like a play with

4   actors following a script; there is no scenario and can be none," and "[t]he trial judge

5   must meet situations as they arise and to do this must have broad power to cope with

6   the complexities and contingencies inherent in the adversary process." *Geders v.*

7   *United States,* 425 U.S. at 86 (citations omitted).  Mindful of the ethical concern about

8   allowing a represented party to speak to the matter before the court without his

9   counsel's consent and of the trial judge's duty as the governor of the trial to assure its

10   proper conduct, the undersigned met the situation of Debtor wanting to interrupt closing

11   arguments of counsel to speak on his own behalf as it arose and exercised the broad

12   power of the court to cope with the complexities and contingencies inherent in the

13   adversary process by declining to allow Debtor to interrupt closing arguments of counsel

14   to speak on his own, knowing that Debtor, a represented party, was being vigorously

15   represented at trial by his counsel in the matter and that his counsel had not given his

16   consent for Debtor to speak directly to make uncounseled statements to the court and

17   opposing counsel in open court at that time as discussed above.  Accordingly, Debtor

18   has failed to show that there was any due process violation to warrant relief from the

19   court's order on his motion to convert under Rule 60(b)(3) for fraud on the court.

20       **Rule 60(b)(6) and 60(d)(1) and (3)**

21       To the extent that Debtor's motion to vacate various orders and documents is

22   considered on the merits under Rule 60(b)(6), as discussed herein, Debtor has failed to

23   meet his burden to show "extraordinary circumstances prevented [him as] a party from

24   taking timely action to prevent or correct an erroneous judgment." *Fantasyland Video,*

25   *Inc. v. County of San Diego*, 505 F.3d at 1005.  Debtor has not shown that there were

26   erroneous judgments or orders here, let alone extraordinary circumstances that

27   prevented him from taking timely action to prevent or correct such erroneous judgments.

28   Rule 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest injustice."

*Id*.  The standard is not met here.

To the extent that Debtor's motion is considered an independent action for relief based on fraud on the court pursuant to Federal Rule of Civil Procedure 60(d)(1) and (3), as discussed herein, he has not shown that this is a case of "injustices . . .sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. at 46, as he has not shown any fraud on the court by a preponderance of the evidence, let alone, by clear and convincing evidence, for the court to exercise its discretion to relieve him from the final judgments and orders that he challenges in his motion.

**Trustee's Opposing Arguments**

Regarding the trustee's argument that the motion to vacate orders and documents should be denied on grounds that the motion along with the related motions to remove him as trustee are "unintelligible" and "nothing more than twaddle."  The Merriam-Webster Dictionary defines "unintelligible," an adjective, as follows:  "unable to be understood or comprehended.  Merriam-Webster Online Dictionary (accessed on April 16, 2024 at  https://www.merriam-webster.com/dictionary/unintelligible).  The Merriam-Webster Dictionary defines "twaddle," a noun as follows: "a: silly idle talk: DRIVEL; b: something insignificant or worthless : NONSENSE - that idea is pure twaddle."  *Id*. (accessed on April 16, 2024 at https://www.merriam-webster.com/dictionary/twaddle).  Having reviewed Debtor's motion to vacate various orders and documents, the court does not consider it o be completely unintelligible as the court could make out the meaning of Debtor's contentions.  Having reviewed Debtor's motion, the court also does not consider it to be twaddle or drivel, just based on erroneous reasoning as discussed above.  What is concerning to the court is that Debtor keeps making arguments that he made before which the court determined to be erroneous.  While perhaps not twaddle, Debtor's arguments are erroneous as the court has previously determined and now determines to be erroneous, and if he makes them again in future documents that he files with the court in this case and related adversary

proceedings, they will be considered frivolous and sanctionable pursuant to Federal

Rule of Bankruptcy Procedure 9011.  The court will deny the motion to vacate orders

and documents not because it is unintelligible and twaddle, but simply because it is

based on erroneous arguments as discussed above.

Regarding the trustee's opposition argument that the motion to vacate orders and

documents should be denied as moot because the bankruptcy estate is presumed to

have been fully administered based on the trustee's final account and distribution report

(TDR) filed on December 1, 2022 and the case may be closed as a ministerial act.  In

this regard, the trustee had commented: "Simply put, the Bankruptcy Case should be

closed, yet inexplicably the Clerk of the Court has not done so."  Opposition, Docket No.

864 at 3.  Regarding the trustee's comment about the case not being closed, the court

understands that the Clerk's Office kept the case open because Debtor's appeal of the

court's order approving final fee applications was pending before the United States

District Court until the appeal was dismissed by the District Court on October 27, 2023

(Docket No. 811 in the main bankruptcy case) and Debtor's motion for reconsideration

denied by the District Court by order entered on January 3, 2024.  See District Court

case docket in *In re Arturo Gonzalez,* No. 2:22-cv-08785-JVS (C.D. Cal. Jan. 3, 2024).

In the court's view, keeping the case open and not closing the case during the

pendency of Debtor's appeal of the court's fee approval order was appropriate because

the District Court's decision could have had a substantive effect on the merits of the

case as to whether the court's fee awards were correct, and the District Court's action

on the appeal was not complete until it denied Debtor's motion for reconsideration of

dismissal of the appeal on January 4, 2024, which was not too long ago.  But arguably,

to address the trustee's mootness argument, it would have been premature for the court

to discharge the trustee and close the case while Debtor's appeal of the fee approval

order was pending, so in the court's view, the motion is not moot since the case is still

open and theoretically, the court has jurisdiction to fashion some relief for a fraud on the

court by ordering disgorgement of final compensation to the trustee and the

1  professionals.  However, the court is not inclined to do so based on the lack of evidence

2  for Debtor's allegations of fraud on the court.  Thus, the court is not inclined to deny the

3  motion on mootness grounds.

4          Regarding the trustee's argument that the court's order in the related adversary

5  proceeding in *Gonzalez v. Avery,* Adv. No. 2:24-ap-01010-VZ, dismissing the claims

6  against the trustee by order entered on March 22, 2024, was a final order which may

7  not be collaterally attacked in this proceeding of the main bankruptcy case, the court

8  takes judicial notice pursuant to Federal Rule of Evidence 201 that not all of the claims

9  in Debtor's adversary complaint have been adjudicated by the orders for dismissal of

10  the undersigned, the trustee and his professionals as claims against other defendants

11  remain, including against Debtor's former bankruptcy attorney and two of his creditors,

12  and thus, therefore, any dismissal order as to some of the parties is not final pursuant to

13  Federal Rule of Bankruptcy Procedure 7054, making Federal Rule of Civil Procedure

14  54(b) applicable to that adversary proceeding, which provides that an order that

15  adjudicates fewer than all of the claims or the rights or the liabilities of fewer than all of

16  the parties does not end the action as to any of the claims or parties and may be

17  revised at any time before the entry of judgment adjudicating all the claims and all the

18  parties' rights and liabilities.  Complaint, Docket No. 1, filed on January 17, 2024, Order

19  Granting Motion to Dismiss Judiciary Defendant, Docket No. 28, filed and entered on

20  March 21, 2024, Order Granting Motion to Dismiss Trustee and Estate Professionals,

21  Docket No. 29, filed and entered on March 22, 2024, *Gonzalez v. Avery,* Adv. No. 2:24-

22  ap-01010-VZ.  Thus, the court cannot deny the motion based on this argument because

23  the order dismissing the trustee in the related adversary proceeding is not yet final.

24          Regarding the trustee's other opposition arguments, the court agrees with the

25  trustee that the motion to vacate various orders and documents should be denied

26  because it seeks reconsideration of orders without cause and the motion is without

27  evidentiary foundation for the reasons discussed above in this memorandum decision.

28  However, the court disagrees with the trustee's argument that the motion should be

denied because they do not meet the pleading standard of Federal Rule of Civil

Procedure 8(a) because except in limited circumstances, motions are not regarded as

pleadings, and Rule 8(a) is inapplicable to motions such as this one. *Parker v. United

States,* 110 F.3d 678, 682 (9th Cir. 1997) (citation omitted).

### Conclusion

For the foregoing reasons, the court will deny Debtor's motion to vacate

judgments and orders (Docket No. 844) for "fraud on the court" and denial of due

process for lack of merit.  A separate order denying the motion will be filed and entered

concurrently herewith.

IT IS SO ORDERED.

### 

Date: May 10, 2024

_____
Robert Kwan
United States Bankruptcy Judge